Max Weinstein, Mass. Bar No. 600982
(Application for *Pro Hac Vice* Admission Pending)
Email: max.weinstein@cfpb.gov
CONSUMER FINANCIAL PROTECTION BUREAU
1700 G Street, NW
Washington, DC 20552
Phone: 202-435-9172
Fax: (202) 435-5468

Colin Hector, Cal. Bar No. 281795
Email: colin.hector@cfpb.gov
CONSUMER FINANCIAL PROTECTION BUREAU
301 Howard St., Suite 1200
San Francisco, CA 94105
Phone: (681) 326-7093
Fax: (202) 435-5468

*Attorneys for Plaintiff*
*Consumer Financial Protection Bureau*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| Consumer Financial Protection Bureau, )<br><br>*Plaintiff*, )<br><br>vs. )<br><br>Experian Information Solutions, Inc., )<br><br>*Defendant*. ) | Case Number: 8:25-cv-24<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF, REDRESS, DISGORGEMENT, AND CIVIL MONEY PENALTIES**<br><br>**ACTION SEEKING NATIONWIDE RELIEF** |

## INTRODUCTION

1.     The Consumer Financial Protection Bureau ("Bureau") brings this action against Experian Information Solutions, Inc. ("Experian" or "the Company") under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., and the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C.

§§ 5536(a)(1)(a)–(b), 5564, and 5565. This action alleges that Experian violated both Acts by failing to reasonably reinvestigate consumer disputes challenging the accuracy or completeness of information in consumer reports, including by failing to forward all relevant information to furnishers, failing to provide adequate or accurate notice to consumers of the outcome of their disputes, and failing to utilize reasonable procedures to ensure the accuracy and completeness of information in consumers' files.

2.    Experian is one of the largest consumer reporting agencies ("CRAs") in the country. A primary aspect of its business is collecting and organizing data on most adult Americans to generate consumer reports, consumer file disclosures, and credit scores that reflect consumers' credit activity and history. As Experian acknowledges, its consumer reporting services "play an integral part in the financial lives of millions of people."

3.    This is because Experian sells its consumer reports to creditors and businesses who are evaluating whether to offer a consumer various products, services, and opportunities, such as a loan, a job, or housing.

4.    Information reflected in consumer reports is provided to CRAs by data furnishers, such as banks, credit card companies, or debt collectors, and other sources. Errors in consumer reports can be significant for consumers, resulting in the denial of credit, employment, or housing, or being offered less favorable credit terms.

5.    Recognizing the serious consequences borne by consumers when their consumer reports contain inaccurate information, Congress enacted the FCRA in 1970 to, in part, "[e]nsure that consumer reporting agencies [like Experian]

exercise their grave responsibilities with fairness, impartiality and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(1)-(4).

6.    The FCRA demands that CRAs use reasonable procedures to assure maximum possible accuracy of information contained in consumer reports, 15 U.S.C. § 1681e(b), and provides a mechanism for consumers to dispute any incomplete or inaccurate information in their report. 15 U.S.C. § 1681i.

7.    When a consumer disputes the accuracy or completeness of information in their consumer report, the FCRA requires Experian to conduct a "reasonable reinvestigation" of the disputed information and report the results of the reinvestigation to the consumer, all within certain timelines. 15 U.S.C. § 1681i(a). At the conclusion of the reinvestigation, Experian must modify or delete any item of information found to be inaccurate or incomplete, or that it could not verify. 15 U.S.C. § 1681i(a)(5). For any information deleted as a result of a dispute, the FCRA imposes specific obligations on Experian that must be satisfied before that information may be reinserted into a consumer's file. 15 U.S.C. § 1681i(a)(5)(C).

8.    Despite its obligations under the FCRA, Experian fails consumers who dispute information in their consumer reports at every stage of the dispute process.

9.    First, Experian's faulty intake procedures fail to accurately convey all relevant information regarding the dispute to the original furnisher of the disputed information, and, at times, Experian simply fails to provide furnishers with consumer-submitted documentation that supports the dispute.

10.     Second, Experian uncritically accepts the original furnisher's response to the disputed information, even when that response was improbable or illogical on its face or when Experian has other information in its possession that alerts or should alert Experian to the possibility that the furnisher might be unreliable.

11.     Third, at the conclusion of its reinvestigation, Experian sends consumers notices that fail to inform them of the reinvestigation results, and instead provides information that is confusing, ambiguous, incorrect, and internally inconsistent.

12.     Additionally, Experian's problematic dispute resolution processes have resulted in several other issues, including Experian's outright failure to reinvestigate a significant number of disputes within the timeline required by the FCRA, its ongoing refusal to reinvestigate hard inquiry disputes, and its routine failure to ensure that previously deleted tradelines are not improperly reinserted into a consumer's file.

13.     Experian's faulty dispute intake procedures and failure to provide furnishers with consumer-submitted documentation, uncritical deference to furnishers' response to the disputed information, and failure to inform consumers of the results of reinvestigations also violate the CFPA's prohibition on unfair acts or practices. 12 U.S.C. § 5531(c)(1).

14.     Experian's failures are an abdication of its obligations under the FCRA and the CFPA, and the Bureau brings this action to rectify these failings and impose civil money penalties.

**VENUE**

15.    Venue is proper in this district because the Defendant resides and does business in this district. 12 U.S.C. § 5564(f).

**PARTIES**

16.    The Bureau is an independent agency of the United States created by the CFPA. 12 U.S.C. § 5491(a). The Bureau has independent litigating authority and is authorized to initiate civil actions in federal district court to secure appropriate relief for violations of Federal consumer financial law, 12 U.S.C. §§ 5564(a)-(b) and 5565, including the FCRA and the CFPA, 12 U.S.C. § 5481(12)(F) and (14).

17.    Experian is a nationwide consumer reporting agency with its North American Headquarters in Costa Mesa, California. At all times material to this Complaint, Experian transacted business in this district and nationwide.

18.    Experian collects, analyzes, maintains, or provides consumer report information or other account information, including information related to the credit history of consumers. This information is used or expected to be used in connection with any decision regarding the offering or provision of a consumer financial product or service. These products or services are consumer financial products or services covered by the CFPA. 12 U.S.C. § 5481(5) and (15)(A)(ix).

19.    Further, Experian offers consumer reports, consumer file disclosures and credit scores, which are consumer financial products or services because they are or relate to consumer reports or other account information, including information relating to the credit history of consumers that Experian collects and maintains about a consumer's account. Experian offers or provides these financial

products and services to consumers primarily for personal, family, or household purposes, and delivers, offers, and provides them in connection with consumer financial products or services such as consumer credit. These products or services are therefore consumer financial products or services covered by the CFPA. 12 U.S.C. § 5481(5) and (15)(A)(ix).

20.    Because Experian engages in offering or providing a consumer financial product or service, Experian is a "covered person" under the CFPA. 12 U.S.C. § 5481(6).

21.    Experian is a "consumer reporting agency" as defined by the FCRA. *See* 15 U.S.C. § 1681a(f). Experian compiles and maintains files on consumers on a nationwide basis as that term is defined in the FCRA, 15 U.S.C. § 1681a(p). Experian is therefore subject to the FCRA.

## BACKGROUND

22.    The FCRA imposes a variety of obligations on CRAs like Experian to ensure that they report accurate information in consumer reports.

23.    A core obligation is that if a consumer disputes the completeness or accuracy of information in their consumer report, the CRA must "conduct a reasonable reinvestigation" to determine whether the disputed information is accurate. 15 U.S.C. § 1681i(a)(1)(A).

24.    Within five business days of receiving the dispute, the CRA must provide notice of the dispute to the furnisher of the disputed information. A furnisher is any entity that provides financial information about a consumer to a CRA, such as a bank, credit card company, or debt collector. The notice to the

furnisher must include all relevant information received by the CRA regarding the dispute. 15 U.S.C. § 1681i(a)(2)(A).

25.     The CRA must complete the reinvestigation within 30 days after the dispute is received unless an extension is sought. 15 U.S.C. § 1681i(a)(1)(A).

26.     After the reinvestigation, the CRA must provide the consumer "written notice" of the "results of the reinvestigation" no later than five business days after its completion. 15 U.S.C. § 1681i(a)(6)(A).

27.     The FCRA further requires that the furnisher maintain reasonable procedures to prevent the reinsertion of previously deleted information, notify consumers within five business days if previously deleted information was reinserted, and ensure maximum possible accuracy of consumer reports. 15 U.S.C. §§ 1681i(a)(5)(B), (C), 1681e(b).

### e-OSCAR and the ACDV Process

28.     When a CRA receives a consumer dispute, the primary way information about the dispute is communicated to furnishers is on a web-based platform called e-OSCAR. Information about the disputed information is transmitted over the e-OSCAR platform via an Automated Credit Dispute Verification form ("ACDV").

29.     The ACDV is a one-page form that contains identifying information about the consumer such as name, address, social security, and date of birth. The ACDV also reflects the disputed account (also known as a tradeline) as it is currently reported. The ACDV provides limited information about the consumer's dispute, including a three-digit "dispute code" that indicates the basis of the dispute. There is sometimes a short free-form description of the dispute, based on

information provided by the consumer. The ACDV may also have other relevant information attached to it, including consumer-submitted documentation supporting the dispute.

30.    Below is a reproduction of an Experian ACDV:



31.    After the furnisher reviews the information provided in and attached to the ACDV, it returns the ACDV to the CRA, indicating with a two-digit "response code" whether the disputed information is accurate or should be modified or deleted.

32.    The ACDV is typically the only way CRAs and furnishers communicate during a reinvestigation.

# FACTUAL ALLEGATIONS

## Experian Fails to Adequately Convey All Relevant Information to Furnishers

33.     Consumers who identify inaccurate or incomplete information in their Experian consumer report can submit disputes to Experian by mail, over the telephone, or electronically through Experian's website (its "Online Dispute Center") or mobile application. Experian typically processes over a million consumer disputes per month.

34.     When submitting a dispute, consumers can, and frequently do, support their disputes by submitting relevant documentation, such as bank statements, canceled checks, or settlement agreements, among other things. Consumers can submit supporting documents via mail or electronically.

35.     For disputes accompanied by consumer-submitted documentation, Experian's policies require that its agents determine whether the documents are sufficiently conclusive for Experian to make the change requested by the consumer. Experian refers to this as making an "internal update."

36.     Experian resolves a minority of disputes via an internal update. If Experian does not make an internal update, it prepares an ACDV to transmit to the furnisher through e-OSCAR. Experian's policy directs its agents to attach any consumer-submitted documentation that contains additional relevant information to the ACDV, although in some cases its agents fail to do so.

37.     The dispute codes included in the ACDV are integral to the dispute resolution process. As explained above, dispute codes are used by Experian to communicate the underlying basis of the dispute to the furnisher.

38.     Because Experian relies on the ACDV to communicate with furnishers about consumer disputes, it is important that Experian's selected dispute code accurately conveys the basis of the dispute to the furnisher. But Experian routinely sends dispute codes to furnishers that mischaracterize or fail to convey highly relevant information about consumers' disputes.

39.     Many of these failures stem from Experian's Online Dispute Center. When consumers submit a dispute on the Online Dispute Center, they select a dispute description from a prepopulated list to categorize the nature of their dispute, which Experian then translates into a formal e-OSCAR dispute code that it inputs into the ACDV. Experian's Online Dispute Center presents consumers with a significantly smaller set of dispute descriptions than Experian uses when consumers have submitted mail and telephone disputes. On the Online Dispute Center, for example, there are no dispute descriptions that correspond to formal e-OSCAR codes for account settled, date of first delinquency disputed, paid by insurance, consumer stated company will delete, and consumer stated company will change.

40.     As an illustration, Experian's Online Dispute Center instructs consumers to select a dispute description of "Account paid in full" if consumers "believe [they] have paid the account in full or that it was paid in settlement." A separate dispute description for account settled is not available to consumers on the Online Dispute Center, even though it would more precisely describe the nature of the dispute.

41.     When Experian then notifies the furnisher about these disputes via an ACDV, it translates the dispute description selected by the consumer to the formal

e-OSCAR dispute code indicating that the consumer is disputing the account's status (i.e., whether the lender or creditor considers the account current or in collections), even though a separate, more precise e-OSCAR dispute code exists that would indicate to the furnisher that the consumer is claiming the disputed account has been settled. Indeed, Experian makes no use of the e-OSCAR settlement dispute code for disputes received through the Online Dispute Center.

42.    This is just one example of how furnishers receive either a mischaracterization or a less precise description of the basis for disputes submitted via the Online Dispute Center.

43.    Other failures stem from Experian's frequent use of an inaccurate or confusing dispute code when processing disputes submitted via telephone or mail. For example, when a consumer lodges a dispute claiming that an account was paid, Experian inserts into the ACDV the e-OSCAR dispute code labeled "Claims account closed" instead of an appropriate dispute code for paid accounts.

44.    As another example, Experian inserts into the ACDV the intentionally generic e-OSCAR dispute code labeled "Claims inaccurate information. Did not provide specific dispute." even where the consumer provides specific information pertaining to the dispute, such as disputing the date of first delinquency or the payment of an account, and for which a more specific dispute code, such as "Disputes Date of First Delinquency" and "Disputes present/previous Account Status, History" is available and appropriate.

45.    And as another example, Experian agents apply dispute codes requesting updates that are already reflected on consumers' tradelines and therefore do not correspond to the actual substance of consumers' disputes. As one

illustration, agents apply the "Claims account closed" dispute code to tradelines that *already display as closed*. The fact that the update requested is already reflected on the tradeline suggests that the basis for the underlying dispute differs from the dispute code selected by Experian, and that Experian has not accurately described the nature of the dispute to the furnisher.

46.    By failing to select appropriate dispute codes, Experian fails to accurately convey the basis of the consumers' disputes to furnishers in what is usually the *only* communication Experian has with the furnisher during its reinvestigation. By using inaccurate or misleading dispute codes, Experian fails to provide the furnisher with all relevant information about the consumer's dispute and fails to fulfill its reasonable reinvestigation obligations.

47.    In addition to transmitting misleading, confusing, or inaccurate dispute codes to furnishers, Experian also fails to always include relevant consumer submitted documentation with the ACDV transmitted to the furnisher, despite Company policy requiring agents to do so. Relevant consumer documentation often contains information that is not conveyed elsewhere on the ACDV, including probative evidence that supports the merits of the consumer's dispute. As a result, Experian fails to provide the furnisher with all relevant information about the consumer's dispute and fails to fulfill its reasonable reinvestigation obligations.

48.    These failures hinder the reinvestigation.

49.    As a result of the above, Experian fails to conduct a reasonable reinvestigation and convey all relevant information to furnishers, which causes or increases the risk that inaccurate information remains in consumers' files.

1

2

3

**Experian Over-relies on Furnishers' ACDV Responses During its
Reinvestigation Even When Presented with Information Suggesting that the
Furnisher is Unreliable**

4          50.    Experian regularly over-relies on furnishers' ACDV responses when

5    conducting a reinvestigation, even when Experian possesses information that alerts

6    or should alert Experian to the possibility that the furnisher of the disputed

7    information might be unreliable. As a result, Experian permits inaccurate

8    information to remain in consumers' files. Experian does so even though cost-

9    effective measures exist to resolve any outstanding factual issues.

10         51.    Experian's over-reliance on furnishers' ACDV responses occurs in at

11   least three categories of disputes: disputes where consumer documentation

12   provides highly probative evidence about the dispute, disputes where Experian

13   itself possesses relevant information about the dispute in its own consumer files,

14   and disputes where Experian receives illogical and inconsistent ACDV responses

15   from furnishers.

16         52.    Consumers often provide documentation that, at a minimum, should

17   put Experian on notice that reinvestigation beyond the furnisher's ACDV response

18   is necessary. For example, consumers frequently provide Experian with the date or

19   case number of a bankruptcy petition discharging a particular debt that is still being

20   reported on their consumer report, or documents reflecting an agreement to settle a

21   debt for a certain amount. In other instances, consumers provide Experian

22   documentation showing that the furnisher had previously agreed to delete or

23   correct information in the disputed tradeline.

24

53.     Such documents are sufficient to put Experian on notice that the furnisher may have transmitted unreliable information. Yet, Experian regularly gives the supporting documents no weight in resolving the dispute and routinely conducts no further reinvestigation of the dispute beyond the furnisher's ACDV response.

54.     Next, Experian frequently possesses relevant supporting information in *its own consumer files* that should alert it to a furnisher's unreliability. For example, Experian often possesses information confirming the existence of a bankruptcy fitting the description in the consumer's dispute, or information confirming that a consumer has made a settlement payment. Often this information alerts or should alert Experian to the possibility that the tradeline disputed by the consumer might be inaccurate and the furnisher might be unreliable. Yet, Experian routinely conducts no additional reinvestigation based on this information, and instead relies solely on the furnisher's ACDV response to resolve the dispute.

55.     Finally, Experian frequently receives furnisher responses that contain data that is either illogical or facially and internally inconsistent, but it still accepts the furnisher's response without further reinvestigation into the dispute.

56.     For example, Experian receives ACDV responses with inconsistent information, such as indicating a consumer's overdue balance is *greater* than the total amount due. Other ACDV responses state that a consumer first became delinquent on an installment debt a month *after* the consumer had paid the account to a zero-dollar balance.

57.     Receiving an ACDV with illogical or inconsistent data is alerts or should alert Experian to the possibility that the original furnisher of the disputed

information might be unreliable and the disputed information may be inaccurate. Yet, Experian regularly accepts the ACDV response in those circumstances and ignores the fact that it contains illogical or inconsistent information.

58.    In some instances where Experian receives illogical responses from furnishers, Experian partially implements the furnisher's ACDV response on the consumer's tradeline, but also unilaterally alters the information in the ACDV to make it appear logical and consistent. In doing so, Experian does not take steps to ensure that the changed tradeline is in fact complete and accurate; Experian simply changes the tradeline by applying predetermined business rules. Experian does not, for example, verify the changes with the furnisher, base the changes on another reliable source of information, or confront the furnisher with the apparent error.

59.    To the detriment of consumers, in all of the above-described scenarios, Experian routinely does nothing more than send an ACDV to the furnisher and implement its response.

60.    Experian does so without consulting readily available, inexpensive third-party sources of information, such as bankruptcy court records, that could accurately and definitively resolve the consumer's dispute. And Experian routinely does not pose any queries to the furnisher for specific factual information, such as the authenticity of a document, the existence of a settlement agreement, or why the furnisher's response appears to be internally illogical and inconsistent.

61.    Experian's failures to conduct reasonable reinvestigations negatively impact consumers.

62.    First, Experian's over-reliance on furnishers' ACDV responses results in consumer reports maintaining inaccurate information, such as a tradeline with an

inaccurate status or balance. This inaccurate information can have deleterious impacts on consumers, including lowering their credit score, the denial of credit, housing, employment, or other goods or services, or causing consumers to obtain less favorable credit terms.

63.     Additionally, consumers waste their time and resources submitting disputes that are not adequately reinvestigated and gathering and submitting documents that are given no consideration in the dispute process.

**Experian Fails to Inform Consumers of Reinvestigation Results**

64.     At the conclusion of a reinvestigation, Experian sends consumers written "results letters" intended to fulfill its statutory obligation to report the results of the reinvestigation.

65.     Experian's results letters include an initial section labeled "How to Read Your Results" which lists the possible reinvestigation outcomes of "Deleted," "Remains," "Updated," and "Processed" and their accompanying definitions. Notably, Experian defines "Updated" four different ways, some of which indicate information *other* than the disputed information was updated.

66.     Below is an example of the relevant portion of an Experian results letter:

## How to Read Your Results

Deleted - This item was removed from your credit report.  **Remains** - The company that reported the information has certified to Experian that the information is accurate. This item was not changed as a result of our processing of your dispute.  **Updated**  (Your results will indicate which one of the following applies.) – a) The information you disputed has been updated. Please review your report for the details.  b) The item you disputed has been updated, which may include an update to the disputed information. Please review your report for the details.  c) The information you disputed has been verified as accurate, however, information unrelated to your dispute has been updated. Please review your report for the details.  d) Information on this item has been updated. Please review your report for the details.  **Processed** - This item was either updated or deleted; Please review your report for the details.

67.     Directly below that, Experian lists the disputed accounts and the reinvestigation outcome for each.

68.    On subsequent pages, Experian typically displays a snapshot of how the disputed account appears before and after the reinvestigation. However, the "after" snapshot of the account often looks nearly identical to the "before" snapshot, and the results letter does not explicitly identify what information was updated or changed. Instead, consumers are required to deduce that on their own. In cases of deleted tradelines, no snapshots are provided.

69.    Below is an example of a "before" and "after" snapshot from a letter that informed the consumer that their information was updated. The consumer was left to deduce what information was updated. This snapshot was not accompanied by any explanation of what information changed.



70.    Experian's results letters often provide inaccurate, contradictory, ambiguous, or confusing information to consumers regarding the outcome of their

reinvestigation, and fail to inform them of what, if anything, changed on their consumer report as a result of the dispute.

71.   For example, a number of Experian results letters state the result of a reinvestigation as "Outcome: Processed – This item was either updated or deleted; Please review your report for the details."

72.   Although a typical results letter includes the before and after snapshots of an updated tradeline, these letters only display how the tradeline appears *before* the dispute.

73.   In addition, these results letters use three of the four potential dispute outcomes to describe the results of the investigation (processed, updated, and deleted), including two potentially inconsistent outcomes– updated and deleted.

74.   Below is an example of the relevant portion of an Experian results letter:



75.    These results letters do not provide the result of the reinvestigation. They are confusing and contradictory, and do not adequately inform consumers of the outcome of the reinvestigation. The letters do not identify what information was updated or deleted or even provide an updated credit report or an "after" snapshot for the consumer to attempt to self-identify the update or deletion. They also fail to clearly identify whether information was updated, or deleted, or both.

76.    Another subset of Experian results letters pairs a reinvestigation result of "Outcome: Updated" with before and after snapshots of the tradeline *that show no change*.

77.    Below is an example of the relevant portion of an Experian results letter:



78.     This subset of results letters fails to describe the results of the reinvestigation to the consumer. They do not identify what information was updated and they do not depict any updates in the accompanying tradeline snapshots. Consumers receiving such a notice have no way of deciphering what information was updated and why, or whether the disputed information itself was updated. Consumers also cannot determine if the update was the result of the reinvestigation, or due to some other reason.

79.     A third subset of Experian's results letters describe the outcome of a reinvestigation as "Updated" and provided the following definition: "Information on this item has been updated. Please review your report for the details."

80.    Below is an example of the relevant portion of an Experian results letter:



81.    These letters fail to convey the outcome of the reinvestigation to consumers, because they do not identify what, if anything, has changed regarding the disputed information. It is unclear from these results letters whether the disputed information remained, but other information changed, or whether the disputed information itself was updated. It is also unclear whether the updated information changed as a result of the reinvestigation or some other reason.

**Experian's Problematic Dispute Resolution Processes Resulted in Experian Failing to Initiate Reinvestigations into Certain Disputes and Caused Other Errors in Consumers' Files**

82.    Experian failed to properly initiate reinvestigations in certain circumstances. These failures include at least three discrete types of conduct, including failure to forward disputes within the timeline required by the FCRA, simply deleting tradelines without any reinvestigation and then, on occasion, subsequently reinserting that information, and failing to reinvestigate hard inquiry disputes.

83.    First, between January 2018 and October 2021, Experian failed to forward more than 2 million disputes to furnishers within five business days, as required by the FCRA.

84.    Second, between February 2019 and February 2020, Experian deleted more than 100,000 disputed tradelines instead of initiating and completing a reinvestigation within 30 days, as required by the FCRA. Then, sometime after the 30-day window, Experian processed the disputes and reinserted some of the deleted information.

85.    Third, Experian routinely fails to reinvestigate when a consumer makes a dispute about a hard inquiry.

86.    A "hard inquiry" is a notation that a creditor or entity has requested to access a consumer's file. The appearance of a hard inquiry on a consumer's file indicates that a consumer applied for credit.  A hard inquiry often impacts a consumer's credit score.

87.    A dispute about a hard inquiry may assert that the creditor or entity lacked a permissible purpose for accessing the consumer report and therefore the inquiry should not be reflected on the consumer report. In situations where the consumer did not apply for credit, but a hard inquiry is reflected on their consumer

report, the accuracy of their consumer report is distorted because it falsely appears that the consumer applied for credit.

88.   As a matter of policy, Experian does not investigate hard inquiry disputes unless the consumer's allegation meets narrow criteria, such as an allegation that the inquiry was a byproduct of fraud or identity theft.

89.   Absent such allegations, Experian will not conduct a reinvestigation and instead simply sends a notice to the consumer explaining the nature of inquiries and inviting consumers to provide additional information, such as allegations of identity theft or fraud, to support the dispute.

90.   As a result, the hard inquiry remains on the individual's consumer report, even if the inquiry was not permissible and even if the consumer did not actually apply for the account.

91.   In addition to failing to initiate reinvestigations, Experian's faulty processes also caused other errors in consumers' files.

92.   For example, the FCRA requires Experian to maintain reasonable procedures to assure maximum possible accuracy of the credit information it reports, and to prevent reinsertion of previously deleted information. 15 U.S.C. §§ 1681i(a)(5)(C), 1681e(b).

93.   "Reinsertion" occurs when information in a consumer's file that was deleted because it was found to be inaccurate, incomplete, or unverifiable during a reinvestigation reappears in the consumer's file. 15 U.S.C. § 1681i(a)(5).

94.   Experian's procedures for preventing reinsertions are limited and only prevent the same furnisher from re-furnishing a previously deleted tradeline.

95.     These procedures do not prevent a new furnisher from reinserting a previously deleted tradeline. Reinsertion may occur, for example, when a furnisher deletes a disputed tradeline as a result of a dispute and then sells the account to a debt buyer that re-furnishes it.

96.     Experian has failed to implement basic matching tools that prevent or greatly reduce the likelihood of reinsertion by a new furnisher of a previously deleted tradeline.

97.     For example, Experian has not implemented procedures to compare dates of first delinquencies, recent credit balance amounts, high credit balances, or the names of original creditors, to ascertain whether a newly reported tradeline constitutes a reinsertion.

98.     When Experian allows new furnishers to reinsert previously deleted information, Experian does not require the furnishers to certify that the information is complete and accurate. Experian also does not notify consumers within five business days that the previously deleted information was reinserted, provide the identity and contact information of furnishers contacted in connection with the reinsertion, or inform consumers of their right to add a statement to their consumer file disputing the accuracy or completeness of the disputed information.

99.     As a result, consumers who have disputed the accuracy of an account and thought that their consumer report had been corrected, instead see the same inaccurate information reappear on their consumer report without explanation under the name of a new furnisher.

100. Additionally, the FCRA requires Experian to remove any information that is found to be inaccurate as a result of a reinvestigation. 15 U.S.C. § 1681i(a)(5).

101. Between June 2020 and December 2020, furnishers identified many accounts that inaccurately reflected joint user status. However, Experian's automated systems rejected certain furnishers' attempts to remove a joint user from an account in response to a dispute.

102. Although these disputes triggered manual review by Experian agents, the agents still did not remove the joint user status.

103. These errors resulted in more than 1,700 consumer files inaccurately continuing to reflect joint user status.

## FCRA VIOLATIONS

### COUNT I
### Failure to Forward Disputes
### in Violation of the FCRA, 15 U.S.C. § 1681i(a)(2)(A)

104. The allegations in paragraphs 1 through 103 are incorporated herein by reference.

105. After receiving notice that a consumer disputes any item of information contained in his or her consumer file, a CRA has five business days to notify the furnisher of the information disputed by the consumer. 15 U.S.C. § 1681i(a)(2)(A).

106. Between January 2018 and October 2021, Experian did not forward more than 2 million disputes to furnishers within five business days.

107. Therefore, Experian violated the FCRA, 15 U.S.C. § 1681i(a)(2)(A).

## COUNT II
### Failure to Conduct a Reasonable Reinvestigation and Failure to Provide Furnishers with All Relevant Information in Violation of the FCRA, 15 U.S.C. § 1681i(a)(1)(A), (2)

108.   The allegations in paragraphs 1 through 103 are incorporated herein by reference.

109.   The FCRA requires a CRA to conduct a reasonable reinvestigation and to notify and provide all relevant information regarding a dispute that it received from the consumer to the furnisher of the disputed information. 15 U.S.C. § 1681i(a)(1)(A), (2).

110.   Experian does not conduct a reasonable reinvestigation or convey to furnishers all relevant information it receives from consumers when it incorrectly applies generic dispute codes despite more specific codes being available, uses dispute codes that inaccurately describe consumers' disputes, and applies dispute codes requesting updates that are already reflected on consumers' tradelines.

111.   Experian does not conduct a reasonable reinvestigation or convey to furnishers all relevant information it receives from consumers when it fails to forward relevant consumer documentation.

112.   Therefore, Experian's actions violated and continue to violate the FCRA, 15 U.S.C. § 1681i(a)(1)(A), (2).

## COUNT III
### Failure to Reinvestigate Disputes About Hard Inquiries in Violation of the FCRA, 15 U.S.C. § 1681i(a)(1)(A), (2)

113.   The allegations in paragraphs 1 through 103 are incorporated herein by reference.

114.   Whenever a consumer disputes the completeness or accuracy of any item contained in his or her consumer file, a CRA is required to "conduct a

COMPLAINT                                27

1    reasonable reinvestigation to determine whether the disputed information is

2    inaccurate." 15 U.S.C. § 1681i(a)(1)(A).

3    115.    After receiving notice that a consumer disputes any item of

4    information contained in his or her consumer file, a CRA has five business days to

5    notify the furnisher of the information disputed by the consumer and provide all

6    relevant information regarding the dispute. 15 U.S.C. § 1681i(a)(2).

7    116.    Experian only investigates hard inquiry disputes in limited

8    circumstances, such as when the consumer alleges that the inquiry was a byproduct

9    of fraud or identify theft. If a consumer disputes the accuracy of a hard inquiry

10    without such allegations, however, Experian does not reinvestigate the dispute.

11    117.    By not conducting a reasonable reinvestigation after consumers

12    dispute the accuracy of a hard inquiry, which is an item of information in their

13    consumer files, Experian violated and continues to violate the FCRA, 15 U.S.C.

14    § 1681i(a)(1)(A).

15    118.    By not informing the furnisher of a consumer's hard inquiry dispute,

16    Experian violated and continues to violate the FCRA, 15 U.S.C. § 1681i(a)(2).

17    **COUNT IV**
**Deleting Tradelines Without an Investigation in Violation of the FCRA, 15**

18    **U.S.C. § 1681i(a)(1)(A)**

19    119.    The allegations in paragraphs 1 through 103 are incorporated herein

20    by reference.

21    120.    Whenever a consumer disputes the completeness or accuracy of any

22    item contained in his or her consumer file, a CRA is required to "conduct a

23    reasonable reinvestigation to determine whether the disputed information is

24

inaccurate, and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5)." 15 U.S.C. § 1681i(a)(1)(A).

121.   On more than 100,000 occasions, Experian received a dispute and failed to complete a reinvestigation within 30 days.

122.   Therefore, Experian violated the FCRA, 15 U.S.C. § 1681i(a)(1)(A).

## COUNT V
### Unreasonable Over-Reliance on a Furnisher's ACDV Response in Violation of the FCRA, 15 U.S.C. § 1681i(a)(1)(A)

123.   The allegations in paragraphs 1 through 103 are incorporated herein by reference.

124.   Whenever a consumer disputes the completeness or accuracy of any item contained in his or her consumer file, a CRA is required to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate, and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5)." 15 U.S.C. § 1681i(a)(1)(A).

125.   Rather than undertaking a reasonable reinvestigation, Experian unreasonably relies on furnishers' ACDV responses in at least three categories of disputes: (1) disputes where the consumer provided information that alerted or should have alerted Experian to the possibility that the furnisher might be unreliable,  (2) disputes where Experian already had information that alerted or should have alerted Experian to the possibility that the furnisher might be unreliable  and (3) disputes where Experian received illogical and inconsistent ACDV responses from furnishers that alerted or should have alerted Experian to the possibility that the furnisher might be unreliable. In each of these instances,

Experian had affirmative notice that the information received from the furnisher may be suspect.

126.   In such disputes, Experian possesses information that the disputed consumer data is inaccurate, and thus the original source of the disputed data – namely, the furnisher – is unreliable. Nevertheless, Experian uncritically accepts and implements furnishers' ACDV responses.

127.   When Experian's reinvestigation consists solely of sending an ACDV to a furnisher and implementing the furnisher's response despite (1) having or receiving evidence of that furnisher's unreliability, and (2) the existence of readily available, cost-effective additional investigative measures, Experian fails to conduct a reasonable reinvestigation.

128.   Therefore, Experian's actions violated and continue to violate the FCRA, 15 U.S.C. § 1681i(a)(1)(A).

## COUNT VI
### Failure to Delete Inaccurate, Incomplete, or Unverified Information in Violation of the FCRA, 15 U.S.C. § 1681i(a)(5)(A)

129.   The allegations in paragraphs 1 through 103 are incorporated herein by reference.

130.   The FCRA requires a CRA to delete any information found to be inaccurate, incomplete, or unverified after a reinvestigation. 15 U.S.C. § 1681i(a)(5)(A).

131.   Experian did not delete more than 1,700 erroneous "joint user" statuses from consumers' files despite the fact that the furnishers identified those statuses as inaccurate and requested their deletion.

132.   Therefore, Experian violated the FCRA, 15 U.S.C. § 1681i(a)(5)(A).

## COUNT VII
### Failure to Provide Notice of the Results of the Reinvestigation in Violation of the FCRA, 15 U.S.C. § 1681i(a)(6)(A)

133.    The allegations in paragraphs 1 through 103 are incorporated herein by reference.

134.    The FCRA requires a CRA to provide written notice to a consumer of the results of a reinvestigation. 15 U.S.C. § 1681i(a)(6)(A).

135.    Experian's notices routinely fail to disclose the results of a reinvestigation because the notices state two contradictory results, are incomplete, or are unintelligible.

136.    Therefore, Experian's actions violated and continue to violate the FCRA, 15 U.S.C. § 1681i(a)(6)(A).

## COUNT VIII
### Failure to Maintain Reasonable Procedures Designed to Prevent Reinsertion and Unlawful Reinsertion of Previously Deleted Information in Violation of the FCRA, 15 U.S.C. § 1681i(a)(5)(B), (C)

137.    The allegations in paragraphs 1 through 103 are incorporated herein by reference.

138.    Under the FCRA, "[i]f any information is deleted from a consumer's file pursuant to [§ 1681i(a)(5)(A)], the information may not be reinserted in the file by the consumer reporting agency unless the person who furnishes the information certifies that the information is complete and accurate … ." 15 U.S.C. § 1681i(a)(5)(B)(i). The CRA must then "notify the consumer of the reinsertion . . . not later than 5 business days after the reinsertion …, " 15 U.S.C. § 1681i(a)(5)(B)(ii), and "provide to a consumer in writing not later than 5 business days after the date of reinsertion (I) a statement that the disputed information has been reinserted; (II) the business name and address of any

furnisher of information contacted and the telephone number of such furnisher, if reasonably available, or of any furnisher of information that contacted the consumer reporting agency, in connection with the reinsertion of such information; and (III) a notice that the consumer has the right to add a statement to the consumer's file disputing the accuracy or completeness of the disputed information." 15 U.S.C. § 1681i(a)(5)(B)(iii).

139.   Consumer reporting agencies are further required to maintain reasonable procedures to prevent reinsertion of information previously deleted as the result of a dispute. 15 U.S.C. § 1681i(a)(5)(C).

140.   Experian's procedures for preventing reinsertion are limited to preventing the same furnisher from reinserting a tradeline that had been previously deleted. The procedures do not prevent a different furnisher from reinserting that same tradeline.

141.   Because Experian does not prevent new furnishers from reinserting tradelines that Experian had deleted in response to a consumer dispute, Experian fails to maintain reasonable procedures to prevent reinsertion of previously deleted information.

142.   Experian also reinserts information into consumers' files without obtaining a furnisher certification and without notifying consumers within five business days or otherwise adhering to the requirements of 15 U.S.C. § 1681i(a)(5)(B).

143.   Therefore, Experian's actions violated and continue to violate the FCRA, 15 U.S.C. § 1681i(a)(5)(B), (C).

## COUNT IX
### Failure to Implement and Follow Reasonable Procedures to Assure Maximum Possible Accuracy in Violation of the FCRA, 15 U.S.C. § 1681e(b)

144.    The allegations in paragraphs 1 through 103 are incorporated herein by reference.

145.    The FCRA requires a CRA to follow reasonable procedures to assure maximum possible accuracy of the credit information they report on consumers. 15 U.S.C. § 1681e(b).

146.    Because Experian does not prevent new furnishers from reinserting tradelines that Experian had previously deleted in response to a consumer dispute, Experian fails to follow reasonable procedures to assure maximum possible accuracy of the credit information it reports on consumers.

147.    Therefore, Experian's actions violated and continue to violate the FCRA, 15 U.S.C. § 1681ie(b).

## CFPA VIOLATIONS

148.    The CFPA prohibits covered persons from offering or providing to a consumer any financial product or service not in conformity with Federal consumer financial law, otherwise committing any act or omission in violation of a Federal consumer financial law, or engaging in any unfair, deceptive, or abusive act or practice. 12 U.S.C. §§ 5531(a), 5536(a)(1).

149.    Under the CFPA, an act or practice is unfair when it "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers; and … such substantial injury is not outweighed by countervailing benefits to consumers or to competition." 12 U.S.C. § 5531(c)(1).

## COUNT X
**Unfair Acts or Practices: Failing to Convey Consumers' Disputes to Furnishers Fully and Accurately**

150. The allegations in paragraphs 1 through 103 are incorporated herein by reference.

151. When communicating with furnishers, Experian distorts, truncates, and mischaracterizes consumers' disputes by applying dispute codes that inaccurately describe consumers' disputes, incorrectly using generic dispute codes despite more specific codes being available, applying dispute codes requesting updates that are already reflected on consumers' tradelines, and failing to forward relevant consumer documentation.

152. Experian commits unfair acts and practices by failing to convey consumers' disputes to furnishers in an accurate and complete fashion.

153. Experian's conduct is likely to cause substantial injury because it fails to accurately convey the nature of disputes to furnishers, which prevents furnishers from understanding and addressing the substance of the consumers' intended dispute, and thereby increases the likelihood that inaccurate information remains on consumer reports.

154. Consumers cannot reasonably avoid the injury because consumers cannot control what information Experian sends to the furnisher and Experian never discloses to consumers what information it sent to the furnisher.

155. No countervailing benefits to consumers or to competition exist. Neither consumers nor competition benefit from Experian's practice of mischaracterizing the nature or factual basis of a dispute.

156.    Therefore, Experian has engaged, and continues to engage, in unfair acts and practices in violation of the CFPA. 12 U.S.C. §§ 5531(c), 5536(a)(1)(B).

**COUNT XI**
**Unfair Acts or Practices: Excessive and Unreasonable Reliance on a Furnisher's ACDV Response**

157.    The allegations in paragraphs 1 through 103 are incorporated herein by reference.

158.    Experian's practice of conducting an investigation by doing nothing more than sending an ACDV to a furnisher and implementing the furnisher's response, and not seeking or taking into account additional, relevant information as part of its reinvestigation, despite having or receiving evidence of that furnisher's unreliability, is unfair.

159.    This practice causes or is likely to cause inaccurate reporting to remain on consumer reports and thereby causes or is likely to cause substantial injury.

160.    Consumers cannot reasonably avoid the injury because Experian controls the dispute process and what items appear on consumer reports. The dispute and reinvestigation process—particularly the details of how Experian handles disputes and conducts reinvestigations—is largely unknown to consumers.

161.    The practice does not provide countervailing benefits to consumers or to competition. Neither consumers nor competition benefit from Experian's inadequate reinvestigation procedures.

162.    Therefore, Experian has engaged, and continues to engage, in unfair acts and practices in violation of the CFPA. 12 U.S.C. §§ 5531(c), 5536(a)(1)(B).

## COUNT XII
### Unfair Acts or Practices: Failing to Prevent Improper Tradeline Reinsertions

163.    The allegations in paragraphs 1 through 103 are incorporated herein by reference.

164.    Experian improperly reinserts tradelines into consumer reports due to its practice of not attempting to match newly reported tradelines to tradelines that were previously deleted as a result of a dispute if the subsequent furnishing was from a new furnisher.

165.    This practice causes or is likely to cause substantial injury by increasing the likelihood that previously deleted and erroneous information reappears in a consumer's file. Moreover, because Experian fails to notify consumers that new furnishers reinserted previously deleted information, consumers are unaware that they should file a dispute to challenge such information, thereby increasing the amount of time that erroneous information appears on consumer files.

166.    Consumers cannot reasonably avoid the injury because they cannot control what Experian puts on their consumer reports.

167.    No countervailing benefits to consumers or to competition exist. There is no consumer benefit to Experian's failure to prevent the reinsertion of deleted tradelines, and no legitimate benefit to competition.

168.    Therefore, Experian has engaged and continues to engage in unfair acts and practices, in violation of the CFPA. 12 U.S.C. §§ 5531(c), 5536(a)(1)(B).

### COUNT XIII
### Violations of the CFPA Arising From FCRA Violations

169.    The allegations in paragraphs 1 through 103 are incorporated herein by reference.

170.    Section 1036(a)(1)(A) of the CFPA prohibits a covered person from offering or providing to a consumer any financial product or service not in conformity with "Federal consumer financial law" or otherwise committing any act or omission in violation of a "Federal consumer financial law." 12 U.S.C. § 5536(a)(1)(A).

171.    The Fair Credit Reporting Act is an "enumerated consumer law," 12 U.S.C. § 5481(12)(F), and therefore a "Federal consumer financial law." 12 U.S.C. § 5481(14).

172.    Therefore, Experian's violations of the Fair Credit Reporting Act, described above in Counts I through IX, constitute violations of the CFPA, 12 U.S.C. § 5536(a)(1)(A).

## DEMAND FOR RELIEF

173.    Wherefore, the Bureau requests, under 12 U.S.C. § 5565, that the Court:

    a.    permanently enjoin Experian from committing future violations of the CFPA, FCRA, Regulation V, or any provision of "Federal consumer financial law," as defined by 12 U.S.C. § 5481(14);

    b.    grant additional injunctive relief as the Court may deem just and proper;

    c.    order Experian to pay redress to consumers harmed by its unlawful conduct, including restitution, damages, refunds, or other monetary relief;

    d.    order Experian to disgorge any ill-gotten gains;

e.      impose civil money penalties on Experian;

f.      award costs against Experian; and

g.      award additional relief as the Court may determine to be just and proper.

Dated:  January 7, 2025              Respectfully submitted,

Eric Halperin
Enforcement Director

David Rubenstein
Deputy Enforcement Director

Maureen McOwen
Assistant Deputy Enforcement Director

Max Weinstein
Enforcement Attorney

/s/ *Colin Hector*
Colin Hector, Cal. Bar No. 281795
Email: colin.hector@cfpb.gov
Phone: (681) 326-7093

Max Weinstein (*pro hac vice* pending)
Email: max.weinstein@cfpb.gov
Phone: (202) 435-9172

Alexander Johnson-Lee (*pro hac vice* forthcoming)
Email: alexander.johnson@cfpb.gov
Phone: (202) 815-8578

Daniel Cheriyan (*pro hac vice* forthcoming)
Email: daniel.cheriyan@cfpb.gov
Phone: (202) 435-7822

Elizabeth Anne Aniskevich (*pro hac vice* forthcoming)
Email: elizabeth.aniskevich@cfpb.gov
Phone: (202) 435-5278

Jennifer B. Yadoo (*pro hac vice* forthcoming)
Email: jennifer.yadoo@cfpb.gov
Phone: (202) 322-7346

*Enforcement Attorneys*

Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552

*Attorneys for Plaintiff*
*Consumer Financial Protection Bureau*