1   Richard J. Grabowski (State Bar No. 125666)
2   rgrabowski@jonesday.com
    John A. Vogt (State Bar No. 198677)
3   javogt@jonesday.com
4   Ryan D. Ball (State Bar No. 321773)
    rball@jonesday.com
5   JONES DAY
6   3161 Michelson Drive, Suite 800
    Irvine, CA  92612
7   (T) 949-851-3939
8   (F) 949-553-7539

9   Attorneys for Defendant
    Experian Information Solutions, Inc.
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, | Case No. 8:25-cv-00024-MWC-DFM |
| Plaintiff, | **MEMORANDUM OF LAW IN SUPPORT OF EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION TO DISMISS THE COMPLAINT** |
| v. | |
| EXPERIAN INFORMATION SOLUTIONS, INC., | |
| Defendant. | Date:    May 9, 2025<br>Time:    1:30 p.m.<br>Place:   Courtroom 6A |

1

# **TABLE OF CONTENTS**

2

**Page**

3    INTRODUCTION ........................................................................................... 1

4

5    BACKGROUND .............................................................................................. 4

6    LEGAL STANDARD ...................................................................................... 6

7

8    ARGUMENT.................................................................................................... 6

9        I.    The Claims Are Time-Barred .................................................... 7

10

11       II.   The Bureau Fails To Plead An Inaccuracy ............................... 8

12       III.  The Bureau's Unfairness Claims Fail ....................................... 9

13

14           A.    EIS's Practices Are Not Unfair ..................................... 10

15           B.    The Bureau Did Not Provide Fair Notice................... 11

16

17    CONCLUSION................................................................................ 13

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF LAW I/S/O
MOTION TO DISMISS
Case No. 8:25-cv-00024-MWC-DFM

1

<h1 style="text-align:center"><u>TABLE OF AUTHORITIES</u></h1>

2

**Page(s)**

3

4

CASES

5

*Aloe Vera of Am., Inc. v. U.S.*,
6
    699 F.3d 1153 (9th Cir. 2012) ............................................................................. 7

7

*Ashcroft v. Iqbal*,
8
    556 U.S. 662 (2009) ............................................................................................. 6

9

*Bagby v. Experian Info. Sols., Inc.*,
10
    162 F. App'x 600 (7th Cir. 2006) ...................................................................... 12

11

*Barron v. Equifax Info. Servs., L.L.C.*,
12
    802 F. App'x 161 (5th Cir. 2020) ...................................................................... 12

13

*Bell Atl. Corp. v. Twombly*,
14
    550 U.S. 544 (2007) ............................................................................................. 6

15

*Carvalho v. Equifax Info. Servs., LLC*,
16
    629 F.3d 876 (9th Cir. 2010) ............................................................................ 13

17

*CFPB v. D & D Mktg.*,
18
    No. 15-cv-09692, 2016 WL 8849698 (C.D. Cal. Nov. 17, 2016) ...................... 12

19

*Chuluunbat v. Experian Info. Sols., Inc.*,
20
    4 F.4th 562 (7th Cir. 2021) ............................................................................ 2, 8

21

*County of Suffolk v. First Am. Real Estate Sols.*,
22
    261 F.3d 179 (2d Cir. 2001) .............................................................................. 11

23

*Darden v. Experian Info. Sols., Inc.*,
24
    No. 22-cv-00896, 2024 WL 489442 (N.D. Ga. Jan. 4, 2024) ............................ 9

25

*F.C.C. v. Fox Television Stations, Inc.*,
26
    567 U.S. 239 (2012) ..................................................................................... 3, 11

27

*Fed. Trade Comm'n v. D-Link Sys., Inc.*,
28
    No. 17-cv-00039, 2017 WL 4150873 (N.D. Cal. Sept. 19, 2017) ........... 3, 10, 11

*Fed. Trade Comm'n v. Kochava Inc.*,
    671 F. Supp. 3d 1161 (D. Idaho 2023) ................................................ 10

*Fed. Trade Comm'n v. LendingClub Corp.*,
    No. 18-cv-02454, 2018 WL 11436309 (N.D. Cal. Oct. 3, 2018) .............. 10

*Fed. Trade Comm'n v. Neovi, Inc.*,
    604 F.3d 1150 (9th Cir. 2010) ............................................................ 10

*Fed. Trade Comm'n v. Swish Mktg.*,
    No. 09-cv-03814, 2010 WL 653486 (N.D. Cal. Feb. 22, 2010) .............. 10

*Fed. Trade Comm'n v. Wellness Support Network, Inc.*,
    No. 10-cv-04879, 2011 WL 1303419 (N.D. Cal. Apr. 4, 2011) .............. 10

*Gabelli v. S.E.C.*,
    568 U.S. 442 (2013) ............................................................................ 7

*Ghazaryan v. Equifax Info. Servs., LLC*,
    740 F. App'x 157 (9th Cir. 2018) ........................................................ 12

*In re Google Location Hist. Litig.*,
    428 F. Supp. 3d 185 (N.D. Cal. 2019) ................................................ 10

*Jackson v. Carey*,
    353 F.3d 750 (9th Cir. 2003) ............................................................... 6

*LabMD, Inc. v. Fed. Trade Comm'n*,
    894 F.3d 1221 (11th Cir. 2018) ....................................................... 3, 10

*Lee v. Experian Info. Sols.*,
    No. 02-cv-08424, 2003 WL 22287351 (N.D. Ill. Oct. 2, 2003) .............. 12

*Pulley v. Sterling Bancorp*,
    No. 20-cv-06109, 2023 WL 2692386 (E.D. Pa. Mar. 28, 2023)............. 12

*S.E.C. v. Kara*,
    No. 09-cv-01880, 2009 WL 3400662 (N.D. Cal. Oct. 20, 2009) ............ 11

*Shaw v. Experian Info. Sols., Inc.*,
    891 F.3d 749 (9th Cir. 2018) .................................................................. 2, 3, 8, 9

*U.S. ex rel. Miller v. Bill Harbert Int'l Const.*,
    505 F. Supp. 2d 1 (D.D.C. 2007) ................................................................ 7

1

## **INTRODUCTION**

2      This action arose after a multi-year investigation by the Consumer Financial

3 Protection Bureau (the "Bureau") into Experian Information Solutions, Inc.'s ("EIS")

4 compliance with its obligations under the Fair Credit Reporting Act ("FCRA"). After

5 more than three years, the Bureau's investigation turned up nothing more than a

6 narrow set of discrete issues that were largely caused by the COVID-19 pandemic.

7 These issues were not only self-identified and remediated by EIS, but the Bureau

8 made a commitment not to "bring an enforcement action against a consumer

9 reporting agency . . . making good faith efforts to investigate disputes as quickly as

10 possible" during the pandemic.[1]

11      Despite its commitment, the Bureau initiated this action, alleging a host of

12 COVID-era issues affecting a fraction of the tens of millions of disputes EIS received

13 during the pandemic. Taking it a step further, the Bureau asserted a series of

14 generalized grievances under the FCRA and the Consumer Financial Protection Act

15 ("CFPA"), relating to well-established practices that the Bureau has never taken issue

16 with while exercising its supervisory authority over EIS for the past decade. The

17 Bureau's claims are both procedurally and substantively defective and must therefore

18 be dismissed.

19      To start, the Bureau's claims are time-barred. Under the CFPA, the Bureau

20 must initiate an action within three years of discovering a violation. 12 U.S.C.

21 § 5564(g)(1). According to the Bureau, the conduct undergirding the COVID-era

22 issues occurred, at the latest, in October 2021—more than three years before the

23 Bureau initiated this action. And, because EIS has been under the Bureau's constant

24 supervision, the Bureau necessarily discovered these violations at or near the time

25 they allegedly occurred. Indeed, EIS self-reported the vast majority of these issues

26

27

28      [1] Request for Judicial Notice ("RJN"), Ex. 4 at 82.

MEMORANDUM OF LAW I/S/O
MOTION TO DISMISS
Case No. 8:25-cv-00024-MWC-DFM

1    during supervision. As such, the Bureau's COVID-era violations—which arose more

2    than three years before the filing of this action—are time-barred.

3        The same holds true for the Bureau's generalized grievances, which seek to

4    impose novel requirements under the FCRA. These claims all concern well-

5    established industry practices that the Bureau has known about for years. Indeed, the

6    Bureau has thoroughly and continuously examined every aspect of EIS's dispute

7    handling systems and processes over the course of multiple exams, even approving

8    some of the very same issues of which it now complains. And neither the FCRA nor

9    EIS's policies have materially changed during that time. The Bureau is therefore

10   foreclosed from pursuing these claims.

11       Even if the Bureau's claims were timely (they are not), the Bureau still fails to

12   state a claim. The Bureau alleges a hodgepodge of violations, claiming that EIS failed

13   to maintain reasonable procedures and reasonably reinvestigate consumer disputes in

14   violation of Sections 1681e(b) and 1681i of the FCRA. To make a *prima facie* case

15   for either violation, the Bureau must establish the "threshold requirement" of "an

16   inaccuracy." *Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 567 (7th Cir.

17   2021); *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 759 (9th Cir. 2018) (holding

18   that an inaccuracy is the plaintiff's "threshold burden" and the court "need not

19   consider whether Experian had reasonable procedures or conducted reasonable

20   reinvestigations" if the burden is not satisfied). This requires a showing that the

21   information at issue is either "'patently incorrect' or is 'misleading in such a way and

22   to such an extent that it can be expected to adversely affect credit decisions.'" *Shaw*,

23   891 F.3d at 756 (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163

24   (9th Cir. 2009)). Without such showing, courts across the country uniformly agree:

25   no inaccuracy, no claim.

26       Yet, despite an unbroken wall of precedent, the Bureau does not allege that

27   EIS reported an inaccuracy for any of the alleged violations of its accuracy or dispute

28   handling processes. That omission is fatal. Although the Bureau generally alleges

MEMORANDUM OF LAW I/S/O
MOTION TO DISMISS
Case No. 8:25-cv-00024-MWC-DFM

perceived deficiencies in EIS's processes—such as missing deadlines, over relying on the Automated Credit Dispute Verification ("ACDV") process, failing to reinvestigate hard inquiries, not considering all relevant information, or improperly communicating dispute results—absent an inaccuracy, the Court "need not consider whether Experian had reasonable procedures or conducted reasonable reinvestigations." *Id.* at 759. As such, the Bureau's generalized allegations about EIS's processes—which is all that has been alleged here—do not cut it.

Unable to establish an FCRA violation, the Bureau resorts to claiming that certain practices are "unfair" under the CFPA, including EIS's supposed failure to convey all relevant information to furnishers, its purported overreliance on the ACDV process, and its alleged failure to prevent subsequent furnishers from reporting previously deleted tradelines. But these practices are not "unfair;" nor do they contravene "a well-established legal standard, whether grounded in statute, the common law, or the Constitution." *LabMD, Inc. v. Fed. Trade Comm'n*, 894 F.3d 1221, 1229 n.24 (11th Cir. 2018). Rather, the Bureau's allegations amount to nothing more than speculation that EIS's procedures may have caused harm, which is not enough to state an unfairness claim. *See Fed. Trade Comm'n v. D-Link Sys., Inc.*, No. 17-cv-00039, 2017 WL 4150873, at *5 (N.D. Cal. Sept. 19, 2017) (recognizing that "a mere possibility of injury" is not sufficient to establish an unfairness claim). Nor do the Bureau's allegations demonstrate that EIS had "fair notice" that its processes were "forbidden." *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). As such, the Bureau's unfairness claims cannot stand.

At bottom, the Bureau's complaint should be seen for what it is: an attempt to legislate through enforcement. But the Bureau's claims are defective and fail to meet basic pleading requirements. Accordingly, they must be dismissed.

1

## BACKGROUND

EIS "is one of the largest consumer reporting agencies ('CRAs') in the country." ECF No. 1 ("Cmplt."), ¶ 2. A primary aspect of EIS's business is "collecting and organizing data on most adult Americans to generate consumer reports, consumer file disclosures, and credit scores that reflect consumers' credit activity and history." *Id.* "Information reflected in consumer reports is provided to CRAs by data furnishers, such as banks, credit card companies, or debt collectors, and other sources." *Id.*, ¶ 4.

"The FCRA demands that CRAs use reasonable procedures to assure maximum possible accuracy of information contained in consumer reports, 15 U.S.C. § 1681e(b), and provides a mechanism for consumers to dispute any incomplete or inaccurate information in their report. 15 U.S.C. § 1681i." *Id.*, ¶ 6. "When a consumer disputes the accuracy or completeness of information in their consumer report," the FCRA requires EIS "to conduct a 'reasonable reinvestigation' of the disputed information and report the results of the reinvestigation to the consumer, all within certain timelines." *Id.*, ¶ 7. At the conclusion of the reinvestigation, EIS "must modify or delete any item of information found to be inaccurate or incomplete, or that it could not verify." *Id.* "For any information deleted as a result of a dispute, the FCRA imposes specific obligations on [EIS] that must be satisfied before that information may be reinserted into a consumer's file." *Id.*

To ensure EIS's compliance with its statutory obligations, the Bureau exercises regular supervisory exams of EIS's policies and procedures. Since 2012, the Bureau has thoroughly and continuously examined every aspect of EIS's dispute handling systems and processes. *See generally* RJN Exs. 1–9. Over the past decade, the supervisory process has provided a meaningful opportunity for EIS and the Bureau to work collaboratively to address areas where EIS could update or improve its dispute handling practices. And, at nearly every turn, EIS has considered the Bureau's feedback and adopted the Bureau's recommendations. Indeed, in response

MEMORANDUM OF LAW I/S/O
MOTION TO DISMISS
Case No. 8:25-cv-00024-MWC-DFM

to various supervisory exams over the years, CRAs, like EIS, "have significantly enhanced their dispute handling systems in response to CFPB directives." RJN Ex. 2 at 39; *see also* RJN Ex. 3. In fact, for more than a decade, the Bureau never initiated an enforcement action against EIS for violating its dispute handling obligations under the FCRA. That process of cooperation unexpectedly changed in 2021, when the Bureau initiated a sweeping investigation into every aspect of EIS's dispute handling procedures.

After more than three years of intense investigation, the Bureau (unexpectedly) filed this action on January 7, 2025. Without identifying any systemic issues with EIS's processes, the Bureau's complaint seeks to overhaul EIS's dispute handling processes, including, among other things, the manner in which consumers submit online disputes, the obligation to reinvestigate hard inquiry disputes, the ACDV system as a whole, the role of CRAs to act as tribunals, and the format of dispute results sent to consumers after the completion of a reinvestigation. The Bureau's claims generally fall into three categories: (1) COVID-era violations; (2) generalized grievances; and (3) unfair practices.

The COVID-era violations concern discrete violations of EIS's obligations that predominantly occurred during the pandemic, between January 2018 and October 2021. Specifically, the Bureau alleges that EIS (1) "failed to forward more than 2 million disputes to furnishers within five business days, as required by the FCRA," (2) "deleted more than 100,000 disputed tradelines instead of initiating and completing a reinvestigation within 30 days," and (3) "inaccurately reflected joint user status" for "more than 1,700 consumer files" that had been disputed. Cmplt., ¶¶ 83–84, 101, 103.

The generalized grievances concern alleged violations of EIS's accuracy and dispute obligations under the FCRA. None of these violations, however, address a single consumer file that includes inaccurate information. Instead, the Bureau alleges that EIS procedures generally run afoul of long-standing industry practices, including

EIS's (1) reinvestigation of hard inquiry disputes, (2) consideration of all relevant information from consumers, (3) reliance on furnishers' ACDV responses, (4) descriptions of dispute results sent to consumers after the completion of a reinvestigation, and (5) reporting of previously deleted tradelines from different furnishers. *Id.*, ¶¶ 62–63, 68, 75, 84–85.

The unfair practices duplicate certain generalized grievances, including EIS's supposed "faulty dispute intake procedures and failure to provide furnishers with consumer-submitted documentation, uncritical deference to furnishers' response to the disputed information, and failure to inform consumers of the results of reinvestigations." *Id.*, ¶ 13. While the Bureau alleges that EIS's "conduct is likely to cause substantial injury" or inaccurate reporting, the Bureau does not allege that EIS's practices actually injured anyone, only that they may have injured someone. *Id.*, ¶ 153, 159, 165. Moreover, both the Bureau's generalized grievances and unfair practices claims concern EIS policies and procedures that have been subject to the Bureau's supervision for more than a decade. RJN Exs. 1–2.

## LEGAL STANDARD

Under Rule 12(b)(6), a complaint must be dismissed when a plaintiff fails to allege facts which, if true, would entitle the complainant to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007). The pleadings must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Dismissal without leave to amend is appropriate if the Court is satisfied that the deficiencies in the complaint could not be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

## ARGUMENT

The Bureau fails to state a claim under either the FCRA or the CFPA. The Bureau's claims involve discrete issues that arose during the COVID-19 pandemic or otherwise concern well-known and long-standing practices. Not only are these

claims time-barred, they fail as a matter of law. Accordingly, the Bureau's complaint should be dismissed in its entirety.

## I.    The Claims Are Time-Barred

At the threshold, the Bureau's claims are untimely. The Supreme Court has "[e]mphasiz[ed] the importance of time limits" for government enforcement actions seeking civil penalties, recognizing that "it 'would be utterly repugnant to the genius of our laws' if actions for penalties could 'be brought at any distance of time.'" *Gabelli v. S.E.C.*, 568 U.S. 442, 452 (2013) (quoting *Adams v. Woods*, 6 U.S. 336, 342 (1805)). Under the CFPA, the Bureau has three years from the "date of discovery" to bring an action—*i.e.*, when it knew or should have known of the alleged violations. 12 U.S.C. § 5564(g)(1); *see also Aloe Vera of Am., Inc. v. U.S.*, 699 F.3d 1153, 1159 (9th Cir. 2012) (interpreting the "date of discovery" language in a federal statute of limitations to mean that the "statute of limitations begins to run . . . when a plaintiff knows or reasonably should know of" the alleged violation); *U.S. ex rel. Miller v. Bill Harbert Int'l Const.*, 505 F. Supp. 2d 1, 7–8 (D.D.C. 2007) (even where the statute of limitations is tolled due to fraud, the time begins when the government, on inquiry notice, knew or should have known the basis of the lawsuit). Yet, the Bureau's claims here concern either discrete issues that arose before October 2021, or long-standing practices that the Bureau has supervised and examined for more than a decade.

Starting with the COVID-era claims, the Bureau has been on notice of these discrete issues since at least October 2021, when they began investigating EIS's dispute handling practices. By the Bureau's own admission, some of these violations even date back to January 2018. During that time, the Bureau regularly engaged with EIS in supervision, where it continuously and thoroughly examined EIS's dispute handling and accuracy procedures. *See* RJN Exs. 4–7. Indeed, the Bureau publishes annual supervisory reports on credit reporting practices of CRAs and furnishers. *See* RJN Exs. 1–3, 6–7. Thus, there can be no dispute that the Bureau knew (or should

have known) about these violations more than three years before filing this actions. As such, the COVID-era claims are time-barred.

The same holds true for the Bureau's generalized grievances and unfair practices. There can be no dispute that the Bureau has known (or should have known) about EIS's ACDV policy, hard inquiry policy, deletion policy, and reinsertion policy for ten-plus years. Yet, despite subjecting EIS to regular exams during that time, the Bureau has never taken issue with EIS's reliance on the ACDV process. And it has never been an industry practice or a legal requirement to reinvestigate hard inquiries. Nor have reinsertions ever been defined to include the reporting of an account from a different furnisher; to the contrary, a reinsertion concerns the re-reporting of a deleted account by the same furnisher. *See* 15 U.S.C. § 1681i(a)(5)(B). Similarly, the Bureau has known about the format of dispute results since 2015, after the Bureau raised issues about how information should be conveyed to consumers. RJN Ex. 2 at 39; *see also* Ex. 3 at 65.

Simply put, the Bureau's claims all concern practices and issues that the Bureau knew about more than three years before filing this suit. Accordingly, its claims are foreclosed by the statute of limitations.

## II.    The Bureau Fails To Plead An Inaccuracy

Even if the Bureau's claims were timely, they would still be subject to dismissal. A claim under Sections 1681e(b) or 1681i requires the plaintiff to satisfy the "threshold burden" of demonstrating an inaccuracy. *Shaw*, 891 F.3d at 759; *see also id.* at 756 ("[A]lthough § 1681i 'does not on its face require that an actual inaccuracy exist,' we, as with § 1681e claims, 'have imposed such a requirement.'" (quoting *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010)); *Chuluunbat*, 4 F.4th at 567 (holding that an inaccuracy is a "threshold requirement" for claims under Section 1681i and Section 1681e(b)). To meet that burden, a plaintiff must allege that the information at issue is either "'patently incorrect' or is 'misleading in such a way and to such an extent that it can be expected to adversely

affect credit decisions.'" *Shaw*, 891 F.3d at 756 (quoting *Gorman*, 584 F.3d 1163). Without such allegations, the Court "need not consider whether Experian had reasonable procedures or conducted reasonable reinvestigations." *Id.* at 759; *see also Darden v. Experian Info. Sols., Inc.*, No. 22-cv-00896, 2024 WL 489442, at *12 (N.D. Ga. Jan. 4, 2024) ("[T]he threshold question is whether the challenged credit information is accurate; if the information is accurate, no further inquiry into the reasonableness of [the CRA's] procedures is necessary." (citations omitted)).

Although the Bureau asserts nine causes of action under the FCRA, it fails to identify a single inaccuracy caused by EIS's purported violations. The closest the Bureau comes is alleging that a system glitch during the peak of COVID (June 2020-December 2020) caused 1,700 consumers to reflect a joint user status on their accounts. *See* Cmplt., ¶ 103. But even then, the Bureau does not explain how such reporting was "'misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'" *Shaw*, 891 F.3d at 756 (quoting *Gorman*, 584 F.3d at 1163). The Bureau's remaining claims are even further afield, as the Bureau does not even attempt to plead an inaccuracy. Instead, the Bureau simply asserts purely technical violations or generalized grievances about the reasonableness of EIS's procedures. *See* Cmplt., ¶¶ 104–172. But, absent an inaccuracy, the Bureau has no claim.

Accordingly, because the Bureau fails to meet its "threshold burden" of establishing an inaccuracy, its FCRA claims must be dismissed.

## III. The Bureau's Unfairness Claims Fail

Unable to establish an FCRA violation, the Bureau retreats to claiming that certain practices outlined above are "unfair" under the CFPA, including EIS's purported failure to provide furnishers with all relevant information in online disputes, its overreliance on the ACDV process, and its inability to prevent subsequent furnishers from reporting previously deleted tradelines. None of these practices is "unfair," let alone contravenes "a well-established legal standard,

whether grounded in statute, the common law, or the Constitution." *LabMD*, 894 F.3d at 1229 n.24.

### A.    **EIS's Practices Are Not Unfair**

A practice is "unfair" if it (1) "causes or is likely to cause substantial injury to consumers," (2) "is not reasonably avoidable by consumers," and (3) "is not outweighed by countervailing benefits to consumers or to competition." 12 U.S.C. § 5531(c)(1); *see also Fed. Trade Comm'n v. Neovi, Inc.*, 604 F.3d 1150, 1155 (9th Cir. 2010); *D-Link Sys., Inc.*, 2017 WL 4150873, at \*5. The Bureau not only fails to show a substantial injury, it fails to establish any injury at all. Instead, the Bureau simply speculates, without any empirical support, that EIS's procedures increased the likelihood of inaccurate reporting.

In other words, the Bureau does not claim that EIS's practices actually injured anyone, only that they may have injured someone. But "a mere possibility of injury" is not sufficient. *D-Link Sys., Inc.*, 2017 WL 4150873, at \*5; *Fed. Trade Comm'n v. Kochava Inc.*, 671 F. Supp. 3d 1161, 1172–73 (D. Idaho 2023) (granting motion to dismiss unfair practices claim because "[t]he FTC must go one step further and allege that Kochava's practices create a 'significant risk' that third parties will identify and harm consumers"). Nor are general assertions that "numerous" or "many" consumers will be affected by an unfair practice. *Fed. Trade Comm'n v. LendingClub Corp.*, No. 18-cv-02454, 2018 WL 11436309, at \*13 (N.D. Cal. Oct. 3, 2018). Indeed, courts routinely dismiss such claims where, as here, they are based on wholly conclusory allegations about potential injury. *See In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 199 (N.D. Cal. 2019) (finding allegations were "entirely speculative" about Google's tracking capabilities); *Fed. Trade Comm'n v. Wellness Support Network, Inc.*, No. 10-cv-04879, 2011 WL 1303419, at \*11 (N.D. Cal. Apr. 4, 2011) (finding that FTC's allegations were "so conclusory that they [did] not support a plausible inference that [defendant] participated directly in the alleged deceptive acts"); *Fed. Trade Comm'n v. Swish Mktg.*, No. 09-cv-03814, 2010 WL 653486, at \*5 (N.D. Cal.

Feb. 22, 2010) (dismissing claims where FTC made conclusory allegations "untethered to virtually any supporting facts"); *S.E.C. v. Kara*, No. 09-cv-01880, 2009 WL 3400662, at *2 (N.D. Cal. Oct. 20, 2009) ("[M]ere conclusions couched as factual allegations are not sufficient to state a cause of action.").

Moreover, "[t]he lack of facts indicating a likelihood of harm is all the more striking in that the [CFPB] . . . undertook a thorough [and unprecedented] investigation before" asserting claims. *D-Link Sys., Inc.*, 2017 WL 4150873, at *5. Indeed, despite engaging in a sprawling investigation lasting more than three years, the Bureau cannot show that EIS's practices caused substantial injury to anyone; it cannot show that furnishers were unable to accurately resolve disputes based on EIS's transmission of dispute codes; it cannot show that EIS's reliance on the ACDV process led to inaccurate reporting; and it cannot show that a single account reported by a subsequent furnisher was inaccurate. As such, the Bureau offers nothing more than conjecture about hypothetical risk of harm to consumers. This is not enough to establish an unfair practice.

## B. The Bureau Did Not Provide Fair Notice

Not only does the Bureau fail to establish injury, it also cannot show that EIS had fair notice that its practices were unfair. "A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *Fox Television Stations, Inc.*, 567 U.S. at 253; *see also County of Suffolk v. First Am. Real Estate Sols.*, 261 F.3d 179, 195 (2d Cir. 2001) ("Due process requires that before a . . . significant civil or administrative penalty attaches, an individual must have fair warning of the conduct prohibited by the statute or the regulation that makes such a sanction possible."). This principle applies with particular force here, where the Bureau's policy fails to provide "fair notice" that the conduct at issue will be treated as "a violation of [the statute] as interpreted and enforced by the agency." *Fox Television Stations, Inc.*, 567 U.S. at 254. Although the Bureau has consistently supervised EIS for more than ten years, it has never taken

issue with EIS's reliance on the ACDV process. In fact, just two years ago, the Bureau praised EIS's use of "automated protocols" for "reduc[ing] the cost and time to transmit relevant [dispute] information." RJN Ex. 9 at 225. And EIS has taken the Bureau's guidance "quite seriously" and crafted its policies accordingly. *CFPB v. D & D Mktg.*, No. 15-cv-09692, 2016 WL 8849698, at \*7 (C.D. Cal. Nov. 17, 2016).

The Bureau cannot now suddenly shift course and deem a practice unfair simply because it says so. This is particularly true because "district courts across the country have held that the ACDV process is an adequate and reasonable method of reinvestigation by consumer reporting agencies," *Pulley v. Sterling Bancorp*, No. 20-cv-06109, 2023 WL 2692386, at \*8 (E.D. Pa. Mar. 28, 2023), particularly in light of "the staggering amount of credit that fuels our economy and the enormous burden (and hence cost) that a general requirement of more detailed follow-up procedures would impose on the system," *Lee v. Experian Info. Sols.*, No. 02-cv-08424, 2003 WL 22287351, at \*6 (N.D. Ill. Oct. 2, 2003). Circuit courts, including in the Ninth Circuit, have reach similar conclusions. *See Ghazaryan v. Equifax Info. Servs., LLC*, 740 F. App'x 157, 158 (9th Cir. 2018) (finding that "Equifax's investigation was reasonable as a matter of law" because it "had determined Discover to be a reliable source, and . . . [thus] Equifax was entitled to rely on Discover's confirmation that [plaintiff] had missed a payment notwithstanding that this information ultimately proved to be inaccurate"); *Bagby v. Experian Info. Sols., Inc.*, 162 F. App'x 600, 606 (7th Cir. 2006) (affirming summary judgment for CRA and reasoning that an ACDV reinvestigation was reasonable and "a more in-depth investigation by Experian" was not warranted "[g]iven [plaintiff's] failure to present evidence that [the data furnishers] were unreliable sources"); *Barron v. Equifax Info. Servs., L.L.C.*, 802 F. App'x 161, 162–63 (5th Cir. 2020) (affirming that "a [CRA's] reliance on the ACDV system is generally acceptable" and that there was no reason to find a "need to go beyond the ACDV system as to this dispute"). Indeed, "credit reporting agencies are not tribunals. They simply collect and report information furnished by others."

1    *Carvalho*, 629 F.3d at 891. Accordingly, EIS could not possibly have had fair notice

2    that its reliance on the ACDV process was an unfair practice.

3         The same holds true for the Bureau's other alleged unfair practice claims. As

4    with EIS's reliance on the ACDV process, the Bureau has never taken issue with

5    reporting previously deleted accounts from a subsequent furnisher. Nor has any court

6    mandated that EIS must implement procedures to detect such accounts. And nothing

7    under the FCRA addresses this issue. To the contrary, the FCRA requires only that

8    CRAs implement procedures regarding the reinsertion of deleted accounts by the

9    *same furnisher*. See 15 U.S.C. § 1681i(a)(5)(B).

10        There is likewise no statutory, regulatory, or legal authority requiring EIS to

11   code disputes in a certain way. Nor is there any requirement that EIS present

12   consumers with the ability to code their disputes in the same granular way in which

13   dispute agents do. In fact, EIS is not even required to host the Online Dispute Center.

14   Thus, it could not have possibly had fair notice that its voluntary dispute system,

15   designed to be easily understandable to consumers, could constitute an unfair practice

16   simply because of the dispute codes provided to consumers.

17        Simply put, the Bureau fails to show that any EIS practice is substantially

18   injurious to consumers, let alone that EIS had fair notice that such practice was unfair.

19                                **CONCLUSION**

20        For the foregoing reasons, the Bureau's claims are procedurally and

21   substantively defective. The Court should dismiss this matter with prejudice.

22   Dated:  April 1, 2025                        JONES DAY

23

24                                               By: */s/ Richard J. Grabowski*
                                                    Richard J. Grabowski
25

26                                               Attorneys for Defendant
                                                 Experian Information Solutions, Inc.
27

28