Colin Hector, Cal. Bar No. 281795
Email: colin.hector@cfpb.gov
CONSUMER FINANCIAL PROTECTION BUREAU
301 Howard Street, Ste. 1200
San Francisco, CA 94105
Phone: (681) 326-7093
Fax: (202) 435-5477

*Attorney for Plaintiff*
*Consumer Financial Protection Bureau*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

Consumer Financial Protection Bureau,

*Plaintiff*,

v.

Experian Information Solutions, Inc.,

*Defendant*.

Case Number: 8:25−cv−00024−MWC−DFM

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Judge: Hon. Michelle Williams Court
Hearing Date: May 9, 2025
Time: 1:30 PM PST
Courtroom: 6A

**TABLE OF CONTENTS**

BACKGROUND .......... 3

ARGUMENT .......... 5

I. The Bureau's Claims Are Not Time-Barred .......... 5

a. Dismissal is improper because the Complaint does not establish that the Bureau's claims are untimely. .......... 5

b. All of the Bureau's claims are timely. .......... 7

II. The Bureau's FCRA Violations Are Well Pleaded .......... 10

a. The Bureau alleged credit reporting inaccuracies throughout its Complaint. .......... 10

b. The Bureau is not required to plead credit reporting inaccuracies in order to state claims in this FCRA enforcement action. .......... 12

III. The Bureau Pleaded Substantial Injury to Consumers and Experian Had Fair Notice of the Bureau's Unfairness Prohibition .......... 14

a. The Bureau adequately pleaded that Experian's unfair acts or practices "cause" or are "likely to cause substantial injury to consumers." .......... 14

b. Experian had fair notice that it was subject to the CFPA's prohibition of unfair acts and practices. .......... 17

CONCLUSION .......... 21

# TABLE OF AUTHORITIES

## CASES

*Aloe Vera of Am., Inc. v. United States*,
699 F.3d 1153 (9th Cir. 2012) .......... 6

*ASARCO, LLC v. Union Pac. R.R. Co.*,
765 F.3d 999 (9th Cir. 2014) .......... 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 10

*Bradshaw v. BAC Home Loans Servicing, LP*,
816 F. Supp. 2d 1066 (D. Or. 2011) .......... 3

*Bureau of Consumer Fin. Prot. v. Chou Team Realty LLC*,
No. 8:20-cv-00043-SB-ADS, 2021 WL 4077110 (C.D. Cal. Aug. 10, 2021) .......... 8

*Caviness v. Horizon Cmty. Learning Ctr., Inc.*,
590 F.3d 806 (9th Cir. 2010) .......... 10

*CFPB v. CashCall, Inc.*,
No. CV 15-7522-JFW (RAOx), 2016 WL 4820635 (C.D. Cal. Aug. 31, 2016) 18

*CFPB v. D & D Mktg.*,
No. CV 15-9692 PSG (Ex), 2016 WL 8849698 (C.D. Cal. Nov. 17, 2016) 18, 20

*CFPB v. Howard*,
No. 8:17-cv-00161-JLS-JEM, 2018 WL 4847015 (C.D. Cal. May 3, 2018) ... 8, 9

*CFPB v. Navient Corp.*,
No. 3:17-CV-101, 2017 WL 3380530 (M.D. Pa. Aug. 4, 2017) .......... 15, 18

*CFPB v. Nesheiwat*,
No. 21-56052, 2022 WL 17958636 (9th Cir. Dec. 27, 2022) .......... 8

*CFPB v. Ocwen Fin. Corp.*,
No. 17-80495-CIV-MARRA/MATTHEWMAN, 2019 WL 13203853 (S.D. Fla. Sept. 5, 2019) .......... 18

*CFPB v. Snap Fin. LLC*,
No. 2:23-cv-00462-JNP-JCB, 2024 WL 3625007 (D. Utah Aug. 1, 2024) .......... 6

*CFPB v. Think Fin. Inc.*,
No. CV-17-127-GF-BMM, 2018 WL 3707911 (D. Mont. Aug. 3, 2018) .......... 18

*CFPB v. TransUnion*,
641 F. Supp. 3d 474 (N.D. Ill. 2022) .......... 6

*FCC v. Fox Television Stations, Inc.*,
567 U.S. 239 (2012) .................................................................... 17, 19

*FTC v. Accusearch Inc.*,
570 F.3d 1187 (10th Cir. 2009) ........................................................15

*FTC v. Amazon.com, Inc.*,
735 F. Supp. 3d 1297 (W.D. Wash. 2024) ........................................ 18, 19

*FTC v. D-Link Sys., Inc.*,
No. 3:17-cv-00039-JD, 2017 WL 4150873 (N.D. Cal. Sept. 19, 2017)...... 16, 17

*FTC v. Kochava Inc.*,
671 F. Supp. 3d 1161 (D. Idaho 2023)...............................................15

*FTC v. Neovi, Inc.*,
604 F.3d 1150 (9th Cir. 2010) ..........................................................17

*FTC v. Sperry & Hutchinson Co.*,
405 U.S. 233 (1972)..........................................................................20

*FTC v. Wyndham Worldwide Corp.*,
10 F. Supp. 3d 602 (D.N.J. 2014) ......................................................15

*FTC v. Wyndham Worldwide Corp.*,
799 F.3d 236 (3d Cir. 2015)....................................................... 15, 18

*Grigoryan v. Experian Info. Sols.*,
84 F. Supp. 3d 1044 (C.D. Cal. 2014) ........................................... 4, 20

*Grisham v. Philip Morris, Inc.*,
670 F. Supp. 2d 1014 (C.D. Cal. 2009) ...............................................6

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018)....................................................... 7, 18

*LabMD, Inc. v. FTC*,
894 F.3d 1221 (11th Cir. 2018) ........................................................15

*Pub. Storage v. Charles D. Burrus Fam. Tr.*,
No. 8:23-cv-01190-FWS-DFM, 2024 WL 3520428 (C.D. Cal. Jan. 16, 2024)...7

*Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*,
768 F.3d 938 (9th Cir. 2014).............................................................10

*Robins v. Spokeo, Inc.*,
867 F.3d 1108 (9th Cir. 2017) ..........................................................17

*Shaw v. Experian Info. Sols., Inc.*,
49 F. Supp. 3d 702 (S.D. Cal. 2014) ...................................................1

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) .......... 10

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 13

*United States ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*,
720 F.3d 1174 (9th Cir. 2013) .......... 6

*United States v. Kivanc*,
714 F.3d 782 (4th Cir. 2013) .......... 8

*United States v. McGee*,
993 F.2d 184 (9th Cir. 1993) .......... 5, 6, 7

*United States v. Stratics Networks*,
721 F. Supp. 3d 1080 (S.D. Cal. 2024) .......... 20

*Wilkins v. United States*,
598 U.S. 152 (2023) .......... 6

*Williams v. First Advantage LNS Screening Sols., Inc.*,
155 F. Supp. 3d 1233 (N.D. Fla. 2015) .......... 20

**STATUTES**

12 U.S.C. § 5481(12)(F) .......... 13

12 U.S.C. § 5481(14) .......... 13

12 U.S.C. § 5531(c) .......... 14

12 U.S.C. § 5531(c)(1) .......... 1, 14, 15, 21

12 U.S.C. § 5531(c)(2) .......... 16

12 U.S.C. § 5536(a)(1)(A) .......... 13

12 U.S.C. § 5564(g)(1) .......... 5, 8, 9

12 U.S.C. § 5565(a)(2) .......... 13

15 U.S.C. § 1681e .......... 13

15 U.S.C. § 1681e(b) .......... 4

15 U.S.C. § 1681i .......... 13

15 U.S.C. § 1681i(a) .......... 1, 14

15 U.S.C. § 1681i(a)(1)(A) .......... 3

15 U.S.C. § 1681i(a)(2)(A) .......... 3
15 U.S.C. § 1681i(a)(5)(B) .......... 4, 20
15 U.S.C. § 1681i(a)(5)(C) .......... 4
15 U.S.C. § 1681i(a)(6) .......... 14
15 U.S.C. § 1681i(a)(6)(A) .......... 4
15 U.S.C. § 1681i(a)(6)(B)(ii) .......... 4
15 U.S.C. § 1681s .......... 14
15 U.S.C. § 1681s(b) .......... 13
15 U.S.C. § 77m .......... 8
21 U.S.C. § 335b(b)(3)(B) .......... 8
26 U.S.C. § 7431(d) .......... 6

**RULES**

Fed. R. Evid. 201 .......... 7, 18

vi

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Experian Information Solutions, Inc. ("Experian"), one of the largest credit reporting agencies in the country, violated the primary federal statute governing the credit reporting industry, the Fair Credit Reporting Act (FCRA), on millions of occasions. This matter concerns one of the most important provisions of the FCRA: the public's right to dispute inaccurate information appearing in consumer reports and Experian's duties in response to such disputes. 15 U.S.C. § 1681i(a). Experian systematically violated this provision of the FCRA at every stage of disputes made by consumers. Experian mischaracterized consumers' disputes when it forwarded them to the furnisher[1] of the disputed information; Experian rubber-stamped furnisher responses to disputes, even when these responses contained facially inconsistent or illogical information, or were contradicted by documentation provided by the consumer or by information in Experian's own files; and Experian then sent contradictory, incorrect, or unintelligible notices to consumers about the results of Experian's reinvestigations of their disputes. Even when consumers successfully disputed and obtained the deletion of inaccurate information, Experian allowed new furnishers to reinsert that same information back into the consumer's credit file. As a result of these violations, Experian permitted inaccurate and harmful information to remain in consumers' credit files. These violations are not novel, but are violations of the plain text of the FCRA and longstanding precedent. They occurred before, during, and after the COVID-19 pandemic, largely continue up to the present day, and in some instances separately violate the Consumer Financial Protection Act (CFPA) as unfair acts or practices. 12 U.S.C. § 5531(c)(1).

---

[1] "A 'furnisher of information' is ... 'an entity which transmits information concerning a particular debt [or other information about] … a particular consumer to consumer reporting agencies such as Equifax, Experian, MCCA, and Trans Union.'" *Shaw v. Experian Info. Sols., Inc.*, 49 F. Supp. 3d 702, 704 n.1 (S.D. Cal. 2014) (citation omitted).

Experian now moves to dismiss the Bureau's Complaint and, in doing so, grossly mischaracterizes the Complaint's allegations. Experian inaccurately claims that this case concerns only its COVID-era failings and "generalized grievances." Experian argues that the Bureau's complaint should be dismissed because the Bureau's Supervision Division has supposedly been aware of Experian's violations of the FCRA for some time and, as a result, the Bureau's claims are not timely. Experian further argues that the complaint should be dismissed because (Experian inaccurately claims) the Bureau has only alleged that Experian engaged in widespread and systematic violations of the FCRA, not that Experian permitted inaccurate information to remain in consumers' credit files. Finally, Experian argues for dismissal of the Bureau's CFPA claims because the Bureau has purportedly not shown that Experian's conduct caused "substantial injury" and Experian did not have fair notice that its conduct was unfair.

Experian's arguments are wholly without merit. The Bureau alleges that the bulk of Experian's practices at issue in this case continues to the present day. Every new instance of a practice that violates the FCRA starts a new limitations period. The statute of limitations on a violation of the law that occurred today has, of course, not run. As to the minority of the Bureau's claims that concern violations that are not continuing, Experian simply has not demonstrated that the statute of limitations has expired. Experian's second argument, that this case should be dismissed because the Bureau has not alleged inaccuracy, fails because the Bureau *has* in fact repeatedly alleged that Experian allowed inaccurate information to remain on consumers' credit reports. And in any case, the rule Experian relies on applies to private plaintiffs, who must demonstrate damages to maintain a viable case, not to government agencies charged with enforcing a company's compliance with the statute. This requirement has never been applied to a government agency such as the Bureau. Finally, the Bureau has in fact alleged that Experian's violations of law caused or are likely to cause substantial injury to consumers, and

Experian had fair notice that its conduct — its gross mishandling of consumer disputes — was subject to the CFPA and the express prohibition against engaging in unfair acts and practices as defined in the statute.

**BACKGROUND**

The FCRA requires credit reporting agencies (CRAs), such as Experian, to allow consumers to dispute "the completeness or accuracy of any item of information contained in a consumer's file." 15 U.S.C. § 1681i(a)(1)(A); Compl. ¶ 23. Upon receiving such a dispute, Experian must, within five business days, "provide notification of the dispute to any person who provided any item of information in dispute [i.e., the furnisher of the information] … includ[ing] all relevant information regarding the dispute … received from the consumer." 15 U.S.C. § 1681i(a)(2)(A); Compl. ¶ 24. Experian communicates consumer disputes to the furnishers of the disputed information by means of an electronic Automated Consumer Dispute Verification (ACDV). Compl. ¶¶ 28-32. Furnishers respond to ACDVs with a two-digit code indicating either that the disputed information is actually accurate, that it should be modified, or that it should deleted. Compl. ¶ 31. If the furnisher believes a modification is appropriate, it may provide modified or updated information by means of its ACDV response. *Id.*

The FCRA requires Experian, for its part, to conduct "a reasonable reinvestigation" of the consumer's dispute. Compl. ¶ 23 (citing 15 U.S.C. § 1681i(a)(1)(A)). Where a consumer puts Experian "on notice that information received from a [furnisher] may be suspect," Experian must do more than simply accept the furnisher's response to the dispute. *Bradshaw v. BAC Home Loans Servicing, LP*, 816 F. Supp. 2d 1066, 1073-74 (D. Or. 2011). "It is well settled that exclusive reliance on ACDV procedures does not suffice, as a matter of law, to establish that a 'reasonable investigation' took place once a consumer disputes the

accuracy of the furnisher's information." *Grigoryan v. Experian Info. Sols.*, 84 F. Supp. 3d 1044, 1074 (C.D. Cal. 2014).

Once its reinvestigation is complete, Experian must provide the consumer with notice of "the results of a reinvestigation" as well as "a consumer report that is based upon the consumer's file as that file is revised as a result of the reinvestigation." 15 U.S.C. § 1681i(a)(6)(A), (B)(ii); Compl. ¶ 26. If the consumer succeeds in securing the deletion of the disputed information, the FCRA requires Experian to maintain reasonable procedures and follow other procedural guardrails to protect against the improper reinsertion of that deleted information and assure maximum possible accuracy of the consumer report. 15 U.S.C. §§ 1681i(a)(5)(B), (C), 1681e(b); Compl. ¶ 27.

Experian routinely and systematically violated each of the requirements of the FCRA outlined above and continues to violate them today. First, though Experian was required to provide furnishers with all relevant information regarding disputes that it received from consumers, Experian instead summarized disputes with incorrect and misleading two-digit codes, which gave (and continues to give) furnishers the wrong instructions for reviewing consumers' disputes. Compl. ¶¶ 33-49. Next, though Courts have long prohibited CRAs from simply rubber-stamping problematic furnisher ACDV responses, Experian accepted ACDV responses even when they were internally contradictory or contradicted by consumer documentation or information already in Experian's credit file for the consumer. Compl. ¶¶ 50-63. And after closing a dispute, Experian sent consumers notices that inaccurately stated the results of the dispute, stated a result that was contradicted by other information contained in the notice, or was simply vague or unintelligible. Compl. ¶¶ 64-81. Finally, Experian permitted new furnishers to reinsert information that had been deleted as the result of a dispute without complying with any of the FCRA's required safeguards. Compl. ¶¶ 91-99.

Experian also failed to send disputes to furnishers by the deadline prescribed in the FCRA, Compl. ¶ 83, failed to delete certain information that was found to be inaccurate as a result of a dispute reinvestigation, Compl. ¶¶ 100-103 and failed whatsoever to reinvestigate numerous disputes. Compl. ¶¶ 84-90.

The Bureau alleges that the foregoing conduct violates the FCRA, Compl. ¶¶ 104-147, and that FCRA violations are also *per se* violations of the CFPA. Compl. ¶¶ 169-172. The Bureau further alleges that Experian's mischaracterization of consumer disputes, its over-reliance on furnisher dispute responses, and its practice of giving new furnishers carte blanche permission to reinsert deleted information are unfair acts or practices in violation of the CFPA. Compl. ¶¶ 148-168.

## ARGUMENT

### I. The Bureau's Claims Are Not Time-Barred

The Court should summarily deny Experian's motion to dismiss on statute of limitations grounds because the Complaint does not admit all elements of Experian's affirmative defense, and thus Experian cannot meet its burden at this stage. Moreover, although it is not the Bureau's burden to demonstrate the timeliness of its claims at this stage, the claims are all timely.

#### a. Dismissal is improper because the Complaint does not establish that the Bureau's claims are untimely.

The CFPA states that an action may be brought up to "3 years after the date of discovery of the violation." 12 U.S.C. § 5564(g)(1). Critically, "the running of a statute of limitations is an affirmative defense" that must be pleaded and proved by the defendant; the government plaintiff "is not required to plead on the subject of an anticipated affirmative defense." *United States v. McGee*, 993 F.2d 184, 187 (9th Cir. 1993); *see also Grisham v. Philip Morris, Inc.*, 670 F. Supp. 2d 1014,

1020 (C.D. Cal. 2009) (proving a statute of limitations defense is the defendant's burden).[2]

Thus, at the motion to dismiss stage, dismissal for untimeliness is not appropriate unless "the running of the statute [of limitations] is apparent on the face of the complaint." *United States ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013) (citation omitted); *see also ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) ("Dismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint"); *CFPB v. Snap Fin. LLC*, No. 2:23-cv-00462-JNP-JCB, 2024 WL 3625007, at *14 (D. Utah Aug. 1, 2024) (dismissal would "be inappropriate" because the complaint did not admit the date of discovery—an essential element for a statute of limitations defense); *CFPB v. TransUnion*, 641 F. Supp. 3d 474, 482 (N.D. Ill. 2022) (declining to dismiss because the complaint conceivably set out facts consistent with the statute of limitations).

Experian improperly attempts an end-run around the motion to dismiss standard by requesting that the Court take judicial notice of several documents and infer from those documents when the Bureau discovered Experian's violations. Mem. of Law in Supp. of Experian's Mot. to Dismiss the Compl. 7-8, ECF No. 24-1 (Def.'s Mem.); Def.'s Req. for Judicial Notice, ECF No. 25 (Def.'s Req.); Pl.'s Opp'n to Def.'s Req. for Judicial Notice. This reliance on extra-record evidence is improper because the proffered documents do not establish that the timeliness of

[2] Experian invites error by relying on *Aloe Vera of Am., Inc. v. United States*, 699 F.3d 1153, 1159 (9th Cir. 2012) (Def.'s Mem. at 7), which concerned a statute of limitations for claims *against* the government, 26 U.S.C. § 7431(d), and which was deemed jurisdictional. In contrast, the statute of limitations relevant to the Bureau's claims in the instant case is plainly an affirmative defense, not a jurisdictional bar. *See McGee*, 993 F.2d at 187; *Wilkins v. United States*, 598 U.S. 152, 158-59 (2023) (statutes of limitations are nonjurisdictional unless Congress has included a jurisdictional clear statement).

the Bureau's claims is a fact or proposition "capable of immediate and accurate determination," *Pub. Storage v. Charles D. Burrus Fam. Tr.*, No. 8:23-cv-01190-FWS-DFM, 2024 WL 3520428, at *5 (C.D. Cal. Jan. 16, 2024), and courts may only "judicially notice a fact that is not subject to reasonable dispute." Fed. R. Evid. 201(b); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999-1001 (9th Cir. 2018) (at the motion to dismiss stage, the district court abused its discretion by judicially noticing two documents that were, as to the purpose for which they were offered, "subject to varying interpretations"). Thus, even though many of the documents are public records that could be judicially noticed for other purposes (i.e., the fact that the Bureau issued a circular (Def.'s Req. Ex. 9)), the Court cannot at this stage derive inferences from those documents. *Khoja*, 899 F.3d at 999-1001.

Here, Experian has pointed to nothing in the Complaint that proves the Bureau's claims are untimely, as the Complaint alleges no facts, nor was it required to, indicating that the Bureau discovered the violations contained therein more than three years, plus the period tolled by agreement, before the Complaint was filed. *McGee*, 993 F.2d at 187. Therefore, dismissal is inappropriate at this stage.

**b. All of the Bureau's claims are timely.**

Though it is not the Bureau's burden to establish the timeliness of its claims at this stage, and the Court need not reach this issue to resolve Experian's motion, the claims are all timely.

First, in all Counts except Counts I, IV, and VI, the Bureau alleges that Experian is engaged in conduct that is ongoing. Compl. ¶¶ 112, 118, 128, 136, 143, 147, 156, 162, 168, 172. Experian argues that the Bureau knew or should have known of the violations more than three years before filing this lawsuit because the Bureau supervises Experian.[3] But this argument fails because "the limitations

[3] Experian incorrectly argues that a "should have known" standard applies to the

period starts afresh with each new offense" when the claims are based on a continuing course of conduct, made in repeated transactions with consumers. *CFPB v. Howard*, No. 8:17-cv-00161-JLS-JEM, 2018 WL 4847015, at *3 (C.D. Cal. May 3, 2018) (quoting *United States v. Kivanc*, 714 F.3d 782, 790 (4th Cir. 2013)). Continuing violations are necessarily within the limitations period even if the Bureau was aware of a defendant's conduct before that period. *Id.* Because the allegations in Counts II, III, V, and VII-XIII continued at least through the filing of the Complaint, Experian's statute of limitations defense against these claims must fail. Compl. ¶¶ 112, 118, 128, 136, 143, 147, 156, 162, 168, 172.

Second, in Counts I, IV, and VI, the Bureau brings claims based on conduct that occurred during discrete periods of time. Def.'s Mem. at 7-8; Compl. ¶¶ 83, 101, 103, 106, 121, 131. Experian asserts that, because of Bureau supervisory activity, the Bureau was "on notice of these discrete issues since at least October 2021." Def.'s Mem. at 7. But while Experian makes liberal use of extra-record material, it notably omits the tolling agreements the parties executed to suspend the running of the statute of limitations by 554 days (over 18 months).[4] Accordingly, even if Experian were correct that the Bureau was on notice of the "COVID-era

---

limitations period. Def.'s Mem. at 7-8. This Court should reject Experian's argument because "there is no 'constructive discovery' rule set forth in the statute—and [Defendant] has not shown that the Court is free to engraft one onto it, especially when the Supreme Court has cautioned against any such enlargement in construing such statutes against the government." *Bureau of Consumer Fin. Prot. v. Chou Team Realty LLC*, No. 8:20-cv-00043-SB-ADS, 2021 WL 4077110, at *5 (C.D. Cal. Aug. 10, 2021), *aff'd sub nom. CFPB v. Nesheiwat*, No. 21-56052, 2022 WL 17958636 (9th Cir. Dec. 27, 2022). If Congress had intended the limitations period to begin running as soon as a violation should have been discovered (rather than when it was actually discovered), it would have done so explicitly, as it has done in other statutes. *See, e.g.*, 15 U.S.C. § 77m; 21 U.S.C. § 335b(b)(3)(B). Experian provides no justification for the Court to second-guess Congress and rewrite 12 U.S.C. § 5564(g)(1).

[4] Although the Court does not need to consider the tolling agreements to deny Experian's Motion to Dismiss, the Bureau can produce them to the Court upon request.

claims . . . since at least October 2021," the Bureau's claims were filed well within the statute of limitations as tolled by the parties' agreements. *Id.* Indeed, in order to prevail on a limitations defense, Experian would have to establish that the Bureau discovered Experian's violations *before July 2, 2020*.[5] Experian has made no such showing. Moreover, because Counts I and VI are alleged to have occurred until October 2021 and December 2020 respectively, at least some of the conduct occurred within the limitations period regardless of the date of discovery and the claims cannot be dismissed as untimely. *Howard*, 2018 WL 4847015, at *3. Compl. ¶¶ 83, 101, 103, 106, 131.

To try to salvage its argument, Experian asks the Court to take judicial notice of documents that it claims establish the Bureau's date of discovery of the various claims. As discussed above, the Court should not take judicial notice of the proffered documents. But even if it does, none of those documents establish when the Bureau discovered the violations alleged in the Complaint. *See* Def.'s Req. Exs. 1-9. Indeed, Def.'s Req. Exs. 1-3 were published before the discrete violations in Counts I, IV, and VI are alleged to have occurred and Def.'s Req. Exs. 5-9 post-date the relevant "date of discovery" cutoff, July 2, 2020; none of these documents establish that the Bureau discovered Experian's violations prior to that date. That leaves only one exhibit, Def.'s Req. Ex. 4, as being potentially timely for Experian's proffered purpose, but that document plainly does not establish that the Bureau discovered (or even should have discovered) the violations alleged in Counts I, IV, and VI before July 2, 2020. Accordingly, even if the Court took judicial notice of Experian's proffered exhibits, those exhibits would not establish

---

[5] The tolling agreements suspended the running of the statute of limitations from (1) December 3, 2021 through January 31, 2023 and (2) July 26, 2024 through December 1, 2024, a total of 554 days. Therefore, the Bureau's January 7, 2025 complaint was timely so long as the Bureau discovered the violations within three years, *see* 12 U.S.C. § 5564(g)(1), plus 554 days before the filing of the complaint. That date is July 2, 2020.

that dismissal of any claim is warranted. The Court at this stage must draw all reasonable inferences in the Bureau's favor, and dismissal of the Complaint on timeliness grounds based on Experian's specious reliance on extra-record documents would be improper. *See Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.,* 768 F.3d 938, 945 (9th Cir. 2014).

## II. The Bureau's FCRA Violations Are Well Pleaded

Experian argues that the Bureau has not alleged the existence of inaccuracies in Experian's consumer credit files, and that the Bureau's Complaint must therefore be dismissed. Def.'s Mem. at 8-9. Experian is wrong on both points. The Bureau has in fact alleged that Experian permitted numerous inaccuracies to remain in consumers' files. And even if it had not done so, no provision of the FCRA, nor any other rule of law applicable to the Bureau, requires the Bureau to plead such inaccuracies to maintain the claims asserted in this case.

### a. The Bureau alleged credit reporting inaccuracies throughout its Complaint.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[D]etailed factual allegations that go well beyond reciting the elements of a claim … are neither 'bald' nor 'conclusory,' and hence are entitled to the presumption of truth." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). A complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Id.*

Experian wrongly claims that the Bureau has failed to allege the "'threshold requirement' of 'an inaccuracy,'" Def.'s Mem. at 2. In fact, the Complaint is replete with allegations of credit reporting inaccuracies. These allegations contain a level of factual specificity that more than satisfies the pleading standard, and there is no

infirmity in any of the Complaint's FCRA claims, Counts I-IX.

First, the Complaint alleges that, in the course of handling consumer disputes, Experian regularly accepts information from furnishers that is incorrect, retains that incorrect information in consumers' files, and considers the consumers' disputes resolved. *See, e.g.*, Compl. ¶ 50 ("Experian permits inaccurate information to remain in consumers' files"); Compl. ¶ 62 ("Experian's over-reliance on furnishers' ACDV responses results in consumer reports maintaining inaccurate information, such as a tradeline with an inaccurate status or balance. This inaccurate information can have deleterious impacts on consumers[.]"). The Complaint alleges and gives examples of at least three ways consumer report inaccuracies arise out of the FCRA violations alleged in the Complaint:

(1) **Experian accepts information from furnishers that is internally inconsistent, indicating that it must contain at least one inaccuracy.** Compl. ¶ 51. "For example, Experian receives ACDV responses with inconsistent information, such as indicating a consumer's overdue balance is *greater* than the total amount due. Other ACDV responses state that a consumer first became delinquent on an installment debt a month *after* the consumer had paid the account to a zero-dollar balance." Compl. ¶¶ 56.

(2) **Experian accepts information from furnishers that is undermined by documentation supplied by consumers.** Compl. ¶ 51. For example, Experian rejects consumer disputes even where the consumer supplies "documents reflecting an agreement to settle a debt … [or] documentation showing that the furnisher had previously agreed to delete or correct information." Compl. ¶¶ 52.

(3) **Experian accepts information from furnishers that is contradicted by other information already in Experian's credit file for the consumer.** Compl. ¶ 51. "For example, Experian often possesses

information confirming the existence of a bankruptcy fitting the description in the consumer's dispute, or information confirming that a consumer has made a settlement payment." Compl. ¶ 54.

Second, the Complaint alleges that even when consumers successfully dispute information in their consumer report as inaccurate and secure the deletion of that information, that same inaccurate information may nevertheless reappear on their credit reports. That scenario occurs when Experian allows a new furnisher, such as a debt buyer, to reinsert the same inaccurate information that was previously disputed and deleted. Compl. ¶ 99 ("[C]onsumers who have disputed the accuracy of an account and thought that their consumer report had been corrected, instead see the same inaccurate information reappear on their consumer report without explanation under the name of a new furnisher.").

Finally, the Complaint alleges that Experian maintained patently incorrect information about more than 1,700 consumers, falsely listing them as joint users of credit accounts for which they actually had no obligation. Compl. ¶ 131.

Experian's claim that "the Bureau does not even attempt to plead an inaccuracy," Def.'s Mem. at 9, is grossly inaccurate. The Complaint contains specific and detailed factual allegations that plausibly suggest the existence of inaccuracies in Experian's consumer credit files. The Bureau has more than adequately met any requirement to plead inaccuracy. On this basis alone, the Court should deny Experian's motion.

**b. The Bureau is not required to plead credit reporting inaccuracies in order to state claims in this FCRA enforcement action.**

Experian argues that, although there is no inaccuracy requirement in the text of the FCRA's reinvestigation provision, the Court should create and impose such a requirement in this case, as some courts, including the Ninth Circuit, have done in private actions. Def.'s Mem. at 8-9. The Court should decline Experian's request to stray from the plain text of the statute.

The Bureau is an agency of the Executive Branch of the United States authorized to initiate civil actions for violations of Federal consumer financial law, which includes the FCRA. *See* Compl. ¶ 16. The Supreme Court acknowledged that the government is differently situated from a private FCRA plaintiff in *TransUnion LLC v. Ramirez*, 594 U.S. 413, 429 (2021), where the Court observed that private plaintiffs must show concrete harm to satisfy Article III standing to bring FCRA claims because, unlike the Executive Branch, they are "not charged with pursuing the public interest in enforcing a defendant's general compliance with regulatory law." Unlike a private consumer, the Bureau is authorized to enforce "compliance with the requirements" of the FCRA, 15 U.S.C. § 1681s(b), and the Bureau can obtain injunctive relief and civil money penalties for FCRA violations. 12 U.S.C. § 5536(a)(1)(A); 12 U.S.C. § 5481(12)(F); 12 U.S.C. § 5481(14); 12 U.S.C. § 5565(a)(2). Experian has cited to no cases supporting its view that the Bureau must allege inaccuracies to succeed on its FCRA claims, and the Bureau is aware of none.

The text of the section of the FCRA relating to disputes, 15 U.S.C. § 1681i,[6] contains no requirement that a plaintiff show that the CRA maintains inaccurate information in a consumer's credit file. Instead, to support its incorrect argument, Experian cites cases that only articulate a requirement for individual consumers, who must prove damages in FCRA dispute cases. Def.'s Mem. at 8–9. None of the cases cited by Experian were brought by a law enforcement agency

[6] All but one of the Bureau's nine FCRA claims arise from violations of 15 U.S.C. § 1681i. The Bureau does allege that Experian's violations regarding the reinsertion of deleted information are violations of both 15 U.S.C. § 1681i and 1681e, as well as the CFPA. Compl. ¶ 137-147, 163-68. The arguments above relating to governmental claims for violations of § 1681i apply equally to § 1681e. The Bureau also has pleaded that Experian's reinsertion violations caused inaccuracies. Compl. ¶ 99 ("[C]onsumers … see the same **inaccurate** information reappear on their consumer report without explanation under the name of a new furnisher.") (emphasis added).

pursuant to 15 U.S.C. § 1681s.

Finally, certain requirements of the dispute provisions in § 1681i of the FCRA do not turn on whether inaccurate information remains on a consumer's credit report. For instance, the FCRA requires Experian to send consumers written notice of the results of a reinvestigation and an updated report. 15 U.S.C. § 1681i(a)(6). Experian is obligated to provide this notice regardless of whether the consumer correctly identifies an inaccuracy, and the Bureau is responsible for enforcing Experian's obligation. If the government could only pursue § 1681i(a) violations where the consumer also, independently, identified an inaccuracy, subsection (a)(6) and many other provisions would be practical nullities when it comes to enforcement.

## III. The Bureau Pleaded Substantial Injury to Consumers and Experian Had Fair Notice of the Bureau's Unfairness Prohibition

The Bureau adequately pleaded that Experian engaged in unfair acts or practices in violation of the CFPA. The Bureau's allegations satisfy all elements of the CFPA unfairness prohibition. Further, Experian's fair notice arguments fail because the CFPA's unfairness prohibition is defined in the text of 12 U.S.C. § 5531(c), which has not been altered since its enactment in 2010.

### a. The Bureau adequately pleaded that Experian's unfair acts or practices "cause" or are "likely to cause substantial injury to consumers."

An act or practice is unfair in violation of the CFPA if it (1) causes or is likely to cause substantial injury to consumers, (2) is not reasonably avoidable by consumers, and (3) such substantial injury is not outweighed by countervailing benefits to consumers or to competition. 12 U.S.C. § 5531(c)(1). In response to the Bureau's unfairness claims, Experian makes two primary arguments: first, that the Bureau must satisfy an additional element to plead unfairness, found nowhere in the CFPA, and second, that the Bureau failed to adequately plead substantial injury. Def.'s Mem. at 9-11. The Court should reject both arguments.

First, despite the plain text of 12 U.S.C. § 5531(c)(1), Experian relies on *LabMD, Inc. v. FTC*, 894 F.3d 1221 (11th Cir. 2018)—a decision interpreting the Federal Trade Commission (FTC) Act's similar unfairness provision and that is inconsistent with Ninth Circuit precedent—to argue that the Bureau must show unfair practices violate "a well-established legal standard, whether grounded in statute, the common law, or the Constitution." *Id.* at 1229 n.24; Def.'s Mem. at 9-10. No such element exists in the text of the CFPA, and imposing the *LabMD* requirement here would be "inconsistent with Ninth Circuit precedent" interpreting the FTC Act that focuses on the three statutory elements alone when analyzing unfairness. *FTC v. Kochava Inc.*, 671 F. Supp. 3d 1161, 1170 (D. Idaho 2023) (interpreting the FTC Act and rejecting the *LabMD* position as the court was not "aware of any Ninth Circuit decision suggesting that such a requirement exists," and collecting Ninth Circuit cases that do not apply the *LabMD* approach).[7] Indeed, courts have routinely rejected the notion that conduct is only unfair in violation of the FTC Act or the CFPA if it violates some other established law. *See, e.g., FTC v. Accusearch Inc.*, 570 F.3d 1187, 1191 (10th Cir. 2009) ("[C]onduct may constitute an unfair practice ... even if it is not otherwise unlawful[.]"); *FTC v. Wyndham Worldwide Corp.*, 10 F. Supp. 3d 602, 618 (D.N.J. 2014) ("Circuit Courts of Appeal have affirmed FTC unfairness actions in a variety of contexts without preexisting rules or regulations specifically addressing the conduct-at-issue."), *aff'd*, 799 F.3d 236 (3d Cir. 2015); *CFPB v. Navient Corp.*, No. 3:17-CV-101, 2017 WL 3380530, at *8 (M.D. Pa. Aug. 4, 2017) (rejecting argument that

[7] The *LabMD* court asserted that the FTC adopted this position in a 1980 policy statement. *FTC Policy Statement on Unfairness*, FTC (Dec. 17, 1980), available at https://www.ftc.gov/public-statements/1980/12/ftc-policy-statement-unfairness. The *LabMD* court, however, appears to have misinterpreted the FTC policy statement: the statement explained that a public policy should be reflected in statutes, judicial decisions, or the Constitution "*to the extent that the Commission relies heavily* on public policy to support a finding of unfairness." FTC Policy Statement (emphasis added).

conduct must violate preexisting regulation before Bureau could bring enforcement action alleging unfair conduct).

In any event, even if the FTC imposed such a limitation on itself through its policy statement, the Bureau has not done the same and so the Court should reject Experian's argument. The CFPA makes clear how reliance on public policy works: the Bureau "may"—but is not required to—"consider established public policies," but "[s]uch public policy considerations may not serve as a primary basis for [the unfairness] determination." 12 U.S.C. § 5531(c)(2). Here, the Bureau is not pointing to "public policy" to support the allegation that Experian violated the CFPA's prohibition against unfair acts or practices.

Second, Experian incorrectly argues that the Bureau failed to "show a substantial injury" and "fails to establish any injury at all." Def.'s Mem. at 10. As a matter of fact, the Bureau alleges substantial injury to consumers throughout the Complaint and alleges that each of the unfair acts or practices—Counts X, XI, and XII—caused or was likely to cause such injury. For example, in support of Count XI (Excessive and Unreasonable Reliance on a Furnisher's ACDV Response), the Bureau alleges that Experian's conduct results in inaccurate information being maintained in consumer reports, which "can have deleterious impacts on consumers, including lowering their credit score, the denial of credit, housing, employment, or other goods or services, or causing consumers to obtain less favorable credit terms." Compl. ¶¶ 62, 159; *see also* Compl. ¶ 4. The other two unfairness claims, Count X (Failing to Convey Consumers' Disputes to Furnishers Fully and Accurately) and Count XII (Failing to Prevent Improper Tradeline Reinsertions), are similarly supported by concrete allegations of substantial injury. *See* Compl. ¶¶ 38-49, 153 (improper conveying of disputes); Compl. ¶¶ 93-99, 165 (improper reinsertions).

Experian extensively relies on *FTC v. D-Link Sys., Inc.*, No. 3:17-cv-00039-JD, 2017 WL 4150873 (N.D. Cal. Sept. 19, 2017), but the theoretical injury alleged

in that case was wholly unlike the concrete facts at issue here. In *D-Link Systems*, the FTC alleged only a *risk* of potential consumer harm if a third-party decided to exploit the defendant's vulnerable system—without any allegation that any third-party had ever done so. *Id.* at *5. In contrast, here the Bureau alleges that Experian's failed dispute practices caused Experian to retain *actual* inaccurate information in consumers' files. *See supra* at § II.a(1)-(3). The substantial injury to consumers alleged by the Bureau is neither speculative nor conclusory, as Experian claims, but instead a "predictable consequence" of Experian's unlawful conduct. *See FTC v. Neovi, Inc.*, 604 F.3d 1150, 1156 (9th Cir. 2010) (finding causation of substantial injury where "injury [is] a predictable consequence" of defendant's actions). With regard to credit reporting inaccuracies, which are not at issue in any of the cases cited by Experian, the Ninth Circuit has recognized that "the dissemination of false information in consumer reports *can* itself constitute a concrete harm . . . [and] the real-world implications of material inaccuracies in those reports seem patent on their face." *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1114, 1117 (9th Cir. 2017) (concluding that plaintiff sufficiently alleged concrete injury where the plaintiff's age, marital and familial status, employment status, level of education, and level of wealth were alleged to be inaccurate). The Bureau's allegations, which must at this stage be accepted as true and construed in the light most favorable to the Bureau, more than adequately plead substantial injury.

**b. Experian had fair notice that it was subject to the CFPA's prohibition of unfair acts and practices.**

Finally, Experian argues that the Bureau's unfairness claims should be dismissed on due process grounds. Def.'s Mem. at 11-13. It points to the principle that "laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). But here, "the relevant legal question is not whether [defendant] had fair notice of what acts or practices the CFPB has interpreted as unlawful under the

[CFPA], but only whether [defendant] had fair notice of what the [CFPA]
requires." *Navient Corp.*, 2017 WL 3380530, at *8 (following *Wyndham
Worldwide Corp.*, 799 F.3d at 253–54); *see also CFPB v. Ocwen Fin. Corp.*, No.
17-80495-CIV-MARRA/MATTHEWMAN, 2019 WL 13203853, at *19 (S.D. Fla.
Sept. 5, 2019); *CFPB v. CashCall, Inc.*, No. CV 15-7522-JFW (RAOx), 2016 WL
4820635, at *12 (C.D. Cal. Aug. 31, 2016). That question has been answered:
CFPA's unfairness provision provides fair notice of what it prohibits, and therefore
Experian's due process argument fails.

Experian does not point to a single word in the CFPA that it alleges is
ambiguous, nor does it argue that the law is impermissibly vague. This is for good
reason—courts in this circuit and elsewhere have consistently rejected such claims.
*See, e.g.*, *CFPB v. Think Fin. Inc.*, No. CV-17-127-GF-BMM, 2018 WL 3707911,
at *3 (D. Mont. Aug. 3, 2018); *CFPB v. D & D Mktg.*, No. CV 15-9692 PSG (Ex),
2016 WL 8849698, at *6-8 (C.D. Cal. Nov. 17, 2016); *CashCall*, 2016 WL
4820635, at *12. Instead, Experian wrongly asserts that the Bureau "suddenly
shift[ed] course" by bringing this case, despite prior Bureau supervision reports
that did not specifically identify the problems at issue.[8]

But the mere fact that an agency has not addressed specific misconduct in
the past does not give companies free reign to break the law—and it certainly does
not present any fair notice issue. *See FTC v. Amazon.com, Inc.*, 735 F. Supp. 3d
1297, 1331 (W.D. Wash. 2024) ("[A]n agency does not waive its right to enforce a
statute when it has declined to do so in the past."). A regulated entity must show
more than agency inaction to make out a due process claim; it must point to a

---

[8] Experian again improperly asks the Court to draw inferences from the documents
it attached, namely that the Bureau's supervisory reports somehow support the
proposition that it lacked fair notice of what the CFPA prohibits. Def.'s Mem. at
11-13. Such inferences are not appropriate for judicial notice. Fed. R. Evid. 201(b);
*Khoja*, 899 F.3d at 999-1001. But even if this Court were to consider Experian's
proffered exhibits, they do not establish that Experian lacked fair notice.

"controlling regulation[ ] or policy statement[ ]" that created settled expectations that the agency upset. *See id*. at 1330. For example, in the *Fox Television* case that Experian relies on, the FCC announced a new rule on "fleeting expletives" in an administrative order that overruled prior official guidance, and then the commission tried to retroactively enforce the new rule against two broadcasters. 567 U.S. at 254.

That is a far cry from the general statement that Experian points to here—that "automated protocols" have "reduced the cost and time to transmit relevant information." (Def.'s Mem. at 11-12 (citing Def.'s Req. Ex. 9 at 225). Even if this statement were an official interpretation of the law, the anodyne observation that automated protocols may help transmit documents does not suggest that exclusively relying on such protocols is sufficient under the FCRA or the CFPA. And, contrary to Experian's claim that the Bureau has "never taken issue" with a CRA's reliance on the ACDV process, the Bureau's supervisory reports *do* address that CRAs' acceptance of information from unreliable sources may cause violations. Def.'s Mem. at 13. For example, in the Bureau's Supervisory Highlights from Winter 2017, the Bureau noted that one or more CRAs failed to conduct a "reasonable reinvestigation" when they "failed to review and consider the attached documentation [submitted by consumers with their disputes] and relied entirely on the furnisher to investigate the dispute." Def.'s Req. Ex. 3 at 66-67. And in the Bureau's Supervisory Highlights from Summer 2021, the Bureau observed that consumer reporting companies failed to comply with the FCRA's requirement to maintain reasonable procedures to assure maximum possible accuracy when the companies "continued to include information in consumer reports that was provided by unreliable furnishers." Def.'s Req. Ex. 7 at 123.

Relevant to Count XI, to support its argument that it lacked fair notice that its reliance on the ACDV process was in certain circumstances excessive and unreasonable, Experian suggests that case law has established that Experian's use

of the ACDV process is "reasonable." (Def.'s Mem. at 12.) Not so. The case law is clear that there are circumstances where CRAs must do more than rely on the ACDV process—especially where there is reason to question the reliability of the information supplied by the furnisher. *Grigoryan*, 84 F. Supp. 3d at 1074 ("It is well settled that exclusive reliance on ACDV procedures does not suffice, as a matter of law, to establish that a 'reasonable investigation' took place once a consumer disputes the accuracy of the furnisher's information."). That is precisely what the Bureau alleges is unfair in this case. *See* Compl. ¶ 158. The cases upon which Experian relies did not establish as a matter of law that reliance on the ACDV process is reasonable, but rather determined, at summary judgment, the reasonableness of the CRAs' procedures under specific factual circumstances. *See* Def.'s Mem. at 12 (citing cases).

With respect to the Bureau's two other unfairness claims, Counts X and XII, Experian argues that it did not receive fair notice because the CFPA does not specifically set forth requirements regarding reinsertion, dispute codes, or its Online Dispute Center. (Def.'s Mem. at 13).[9] But the law need only provide "sufficient standards" for what is prohibited, *see United States v. Stratics Networks*, 721 F. Supp. 3d 1080, 1112 (S.D. Cal. 2024), not detailed specifics. *See D & D Mktg.*, 2016 WL 8849698, at *6 (rejecting argument that CFPA did not provide fair notice that personal data seller's failure to vet and monitor third parties could be unlawful); *cf. FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 239-40 (1972)

[9] Experian also asserts that "the FCRA requires only that CRAs implement procedures regarding the reinsertion of deleted accounts by the *same furnisher*," citing 15 U.S.C. § 1681i(a)(5)(B). (Def.'s Mem. at 13). That provision sets forth requirements about the reinsertion of *information* that has been deleted because it was found to be inaccurate or incomplete or could not be verified; it is not limited to reinsertions by the same furnisher. 15 U.S.C. § 1681i(a)(5)(B); *Williams v. First Advantage LNS Screening Sols., Inc.*, 155 F. Supp. 3d 1233, 1241 (N.D. Fla. 2015) (the "key question" in assessing liability under § 1681i(a)(5)(B) is "whether a CRA has put back into a consumer's file information—from whatever source and in whatever form—that the consumer previously disputed.").

(analyzing unfairness claim under similarly worded FTC Act and noting that Congress "explicitly considered, and rejected, . . . enumerating the particular practices to which [the unfairness prohibition] was intended to apply"). Experian does not, nor could it, claim to lack notice that its handling of consumer disputes was subject to the CFPA's prohibition on unfair acts and practices, 12 U.S.C. § 5531(c)(1), and thus its due process argument fails.

**CONCLUSION**

For the foregoing reasons, Experian's motion to dismiss should be denied.

21

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Dated: April 18, 2025

Respectfully submitted,

*/s/ Colin Hector*

Colin Hector, Cal. Bar No. 281795
Email: colin.hector@cfpb.gov
CONSUMER FINANCIAL PROTECTION BUREAU
301 Howard Street, Ste. 1200
San Francisco, CA 94105
Phone: (681) 326-7093
Fax: (202) 435-5477

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for the Consumer Financial Protection Bureau certifies that this brief contains 6,792 words, which complies with the word limit of L.R. 11-6.1.

Dated: April 18, 2025

Respectfully submitted,

*/s/ Colin Hector*

Colin Hector, Cal. Bar No. 281795
Email: colin.hector@cfpb.gov
CONSUMER FINANCIAL PROTECTION BUREAU
301 Howard Street, Ste. 1200
San Francisco, CA 94105
Phone: (681) 326-7093
Fax: (202) 435-5477