Richard J. Grabowski (State Bar No. 125666)
rgrabowski@jonesday.com
John A. Vogt (State Bar No. 198677)
javogt@jonesday.com
Ryan D. Ball (State Bar No. 321773)
rball@jonesday.com
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612
(T) 949-851-3939
(F) 949-553-7539

Attorneys for Defendant
Experian Information Solutions, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CONSUMER FINANCIAL PROTECTION BUREAU,

Plaintiff,

v.

EXPERIAN INFORMATION SOLUTIONS, INC.,

Defendant.

Case No. 8:25-cv-00024-MWC-DFM

**DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S REPLY TO MOTION TO DISMISS THE COMPLAINT**

Date: May 9, 2025
Time: 1:30 p.m.
Place: Courtroom 6A

# TABLE OF CONTENTS

**Page**


INTRODUCTION ........ 1

ARGUMENT ........ 1

I. The Bureau's Claims Are Time-Barred ........ 1

A. The Bureau Knew Of The COVID-Era Violations For More Than Three Years Before Filing Suit ........ 2

B. The Bureau Knew Of Its Generalized Grievances And EIS's Unfair Practices For More Than Three Years Before Filing Suit ........ 4

II. The Bureau Fails To Plead FCRA Claim ........ 5

A. The Bureau Fails To Plead An Inaccuracy ........ 5

B. Inaccuracy Is A Prima Facie Element To The Bureau's Claims ........ 7

III. The Bureau Fails To Plead A CFPA Claim ........ 9

A. The Bureau Fails To Allege A Substantial Injury ........ 10

B. EIS Had No Fair Notice That Its Practices Were Unfair ........ 11

CONCLUSION ........ 12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 5

*Bagby v. Experian Info. Sols., Inc.*,
162 F. App'x 600 (7th Cir. 2006) .......... 12

*Barron v. Equifax Info. Servs., L.L.C.*,
802 F. App'x 161 (5th Cir. 2020) .......... 12

*Cabrera v. Experian Info. Sols.*,
2021 WL 5166980 (S.D.N.Y. Nov. 5, 2021) .......... 6

*Carvalho v. Equifax Info. Servs., LLC*,
588 F. Supp. 2d 1089 (N.D. Cal. 2008) .......... 9

*Chavez v. Experian Info. Sols., Inc.*,
2017 WL 1479234 (N.D. Cal. Apr. 25, 2017) .......... 6

*Chuluunbat v. Experian Info. Sols., Inc.*,
4 F.4th 562 (7th Cir. 2021) .......... 8

*Consumer Fin. Prot. Bureau v. MoneyGram Int'l, Inc.*,
2025 WL 297389 (S.D.N.Y. Jan. 24, 2025) .......... 2

*Doster v. Experian Info. Sols., Inc.*,
2017 WL 264401 (N.D. Cal. Jan. 20, 2017) .......... 6

*F.C.C. v. Fox Television Stations, Inc.*,
567 U.S. 239 (2012) .......... 9

*Fed. Trade Comm'n v. D-Link Sys., Inc.*,
2017 WL 4150873 (N.D. Cal. Sept. 19, 2017) .......... 9, 10

*Fed. Trade Comm'n v. Swish Mktg.*, 2010 WL 653486 (N.D. Cal. Feb. 22, 2010) .......... 11

*Fed. Trade Comm'n v. Wellness Support Network, Inc.*, 2011 WL 1303419 (N.D. Cal. Apr. 4, 2011) .......... 10

*FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d. Cir. 2015) .......... 11

*Gabelli v. S.E.C.*, 568 U.S. 442 (2013) .......... 4, 5

*Gadomski v. Equifax Info. Servs., LLC*, 2018 WL 2096862 (E.D. Cal. May 7, 2018) .......... 6

*Ghazaryan v. Equifax Info. Servs., LLC*, 740 F. App'x 157 (9th Cir. 2018) .......... 12

*Gross v. CitiMortgage, Inc.*, 33 F.4th 1246 (9th Cir. 2022) .......... 8

*Integrity Advance, LLC v. Consumer Fin. Prot. Bureau*, 48 F.4th 1161 (10th Cir. 2022) .......... 1

*Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 589 U.S. 178 (2020) .......... 1, 2

*IT Casino Sols., LLC v. Transient Path, LLC*, 605 F. Supp. 3d 1319 (N.D. Cal. 2022) .......... 3

*Manukyan v. Cach, LLC*, 2012 WL 6199938 (C.D. Cal. Dec. 11, 2012) .......... 6

*Merck & Co. v. Reynolds*, 559 U.S. 633 (2010) .......... 5

*Moulton v. Americredit Fin. Servs., Inc.*, 2006 WL 8459731 (N.D. Cal. Dec. 29, 2006) .......... 7

*Okocha v. Trans Union LLC*,
2011 WL 2837594 (E.D.N.Y. Mar. 31, 2011 .................... 12

*Pineda v. Nissan N. Am., Inc.*,
2022 WL 2920416 (C.D. Cal. July 25, 2022) .................... 3

*Robins v. Spokeo Inc.*,
867 F.3d 1108 (9th Cir. 2017) .................... 10

*Sec. & Exch. Comm'n v. Payward, Inc.*,
2025 WL 314001 (N.D. Cal. Jan. 24, 2025) .................... 11

*Shaw v. Experian Info. Sols., Inc.*,
891 F.3d 749 (9th Cir. 2018) .................... *passim*

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .................... 11

*Tietsworth v. Sears*,
720 F. Supp. 2d 1123 (N.D. Cal. 2010) .................... 3

## INTRODUCTION

The Bureau's opposition confirms that its complaint fails to state a claim under either the FCRA or the CFPA.[1] The Bureau's claims involve either discrete COVID-era issues or otherwise concern well-known and long-standing practices. Not only are these claims time-barred, they fail as a matter of law. Accordingly, the Bureau's complaint should be dismissed in its entirety.

## ARGUMENT

### I. The Bureau's Claims Are Time-Barred

As a threshold matter, the Bureau misstates the relevant standard for determining when its claims accrued. According to the Bureau, the CFPA's statute of limitations is not triggered by "constructive discovery," but instead commences only after the Bureau "actually discovered" the alleged violations. *Id.* at 8. The Bureau's contentions cannot be reconciled with the plain language of the statute or prevailing precedent.

Under the CFPA, the Bureau must commence an action within "3 years after the date of discovery of the violation to which [the] action relates." 12 U.S.C.A. § 5564(g)(1). When a statute, like the CFPA, uses "the word 'discovery'" in the limitations context "without qualification," the discovery rule "'encompasses not only those facts the plaintiff actually knew, *but also those facts a reasonably diligent plaintiff would have known*.'" *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 589 U.S. 178, 185 (2020) (quoting *Merck & Co. v. Reynolds*, 559 U.S. 633, 644, 648 (2010)) (emphasis added). Indeed, because the CFPA's discovery rule is unqualified, numerous courts have "conclude[d] that § 5564(g)(1)'s limitations period commences when the Bureau either knows of a violation *or, through reasonable diligence, would have discovered the violation*."[2] *Integrity Advance, LLC v.*

---

[1] Capitalized terms not defined herein shall be given the same meaning as in EIS's opening motion, Dkt. 24. The Bureau's opposition is referred to as "Opp."

[2] The Bureau conspicuously omits this authority and instead relies on a single outdated and wrongly decided case, despite being a party to the litigation.

*Consumer Fin. Prot. Bureau*, 48 F.4th 1161, 1172 (10th Cir. 2022) (emphasis added); *see also Consumer Fin. Prot. Bureau v. MoneyGram Int'l, Inc.*, 2025 WL 297389, at *12 (S.D.N.Y. Jan. 24, 2025) ("Under the CFPA, the date of discovery is considered the date when the plaintiff 'obtains actual knowledge of the facts giving rise to the action o*r notice of the facts, which in the exercise of reasonable diligence, would have led to actual knowledge.*'" (quoting *Consumer Fin. Prot. Bureau v. NDG Fin. Corp.*, 2016 WL 7188792, at *1 (S.D.N.Y. Dec. 2, 2016) (emphasis added)).

Thus, contrary to its assertions, it is the Bureau, not EIS, who seeks to "engraft" a different limitations standard onto the CFPA—namely, an "actual" discovery standard. Opp. at 8. But, because the CFPA does not require "actual knowledge" to trigger the statute of limitations, the Bureau's claims accrued when it knew *or should have known* of the alleged violations. *Cf. Sulyma*, 589 U.S. at 185 (rejecting constructive discovery rule under ERISA because the statute required "actual knowledge" to trigger the statute of limitations).

Here, the face of the complaint and judicially noticeable facts make clear that the Bureau knew *or should have known* of EIS's purported violations more than three years before filing the complaint.[3] Indeed, because EIS has been under the Bureau's constant supervision since 2012, the Bureau necessarily discovered (or should have discovered with reasonable diligence) the alleged violations at or near the time they occurred. The Bureau does not (and cannot) contend otherwise.

### A. The Bureau Knew Of The COVID-Era Violations For More Than Three Years Before Filing Suit

To start, the Bureau concedes that the COVID-era violations (*i.e.*, Counts I,

[3] The Bureau argues that "Experian improperly attempts an end-run around the motion to dismiss standard by requesting that the Court take judicial notice of several documents and infer from those documents when the Bureau discovered Experian's violations." Opp. at 6. But EIS is not asking the Court to infer anything. Rather, EIS is merely asking the Court to take judicial notice of the fact that the Bureau has thoroughly and continuously examined every aspect of EIS's dispute handling systems and processes since 2012, which is made plain in the Bureau's own reports and publications. *See* RJN Exs. 1-9.

IV, VI) "occurred during discrete periods of time" between January 2018 and October 2021. Opp. at 8. As such, the Bureau concedes that it has been "on notice of these discrete issues since at least October 2021," more than three years before filing the complaint.[4] *Id.* Recognizing this, the Bureau argues that its claims are timely because it entered tolling agreements that purportedly "suspend[ed] the running of the statute of limitations by 554 days." Opp. at 8. In other words, the Bureau admits that its COVID-era claims are untimely absent tolling. The problem, however, is that the complaint makes no allegations about any purported tolling agreements. This dooms the Bureau's claims.

"It is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss." *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1145 (N.D. Cal. 2010) (citation omitted); *see also Pineda v. Nissan N. Am., Inc.*, 2022 WL 2920416, at *2 (C.D. Cal. July 25, 2022) (recognizing that a plaintiff "may not amend their pleading through a brief filed in opposition to a motion to dismiss"). Yet, that is precisely what the Bureau seeks to do here. The Court should not countenance such effort. If the Bureau intended to raise tolling agreements to save its untimely claims, it should have done so in the complaint. *Cf. IT Casino Sols., LLC v. Transient Path, LLC*, 605 F. Supp. 3d 1319, 1326 (N.D. Cal. 2022) ("To the extent that the discovery rule or equitable tolling applies, ITCS must allege so in its complaint.").

This is not a mere formality. When and if the Bureau incorporates the tolling agreement into its complaint, EIS will show the agreement does not save the Bureau's claims. For now, however, the Bureau cannot now rely on the existence of purported tolling agreements to defeat EIS's motion to dismiss. Accordingly, the Bureau's COVID-era claims should be dismissed as untimely.

---

[4] Nor could it, as its own supervisory highlights from 2021 described the "staffing challenges" caused by "the pandemic," which "impacted dispute investigation capacity." RJN Ex. 6 at 106. As the Bureau acknowledged at the time, these challenges caused consumer reporting agencies, like EIS, to fail to "timely conduct investigations of disputed tradelines." *Id.*

**B. The Bureau Knew Of Its Generalized Grievances And EIS's Unfair Practices For More Than Three Years Before Filing Suit**

The Bureau's generalized grievances and unfair practices claims (*i.e.*, Counts II, III, V, and VII-XIII) are likewise time-barred. The Bureau does not dispute that it has known about EIS's ACDV policy, hard inquiry policy, deletion policy, and reinsertion policy for ten-plus years. Nor does it dispute that it has known about the format of EIS's dispute results since 2015. Nevertheless, the Bureau argues that these claims are timely because they relate to "a continuing course of conduct" for which "the limitations period starts afresh with each new offense." Opp. at 7-8. Again, the Bureau runs head first into the plain statutory language of the CFPA and precedent.

The CFPA does not give the Bureau three years from discovery of facts "constituting" each individual "act or omission" to bring suit. Rather, the statute requires the Bureau to commence an action within three years from "discovery of *the violation*." 12 U.S.C. § 5564(g)(1) (emphasis added). A "violation" is defined as "any act or omission that, if proved, would constitute a violation of any provision of Federal consumer financial law." 12 U.S.C. § 5561(5). That "violation," once discovered by the Bureau, is not somehow magically re-"discovered" every time it allegedly happens again, particularly where, as here, it is the same practice the Bureau has known about for a decade or more. To hold otherwise would eviscerate the purpose of the statute of limitations.

The statute of limitations is intended to prevent a plaintiff—here, the Bureau—from sitting on its hands after learning of conduct that violates the law. Yet, that is precisely what the Bureau believes the CFPA entitles it to do. But the Bureau cannot be permitted to indefinitely extend the limitations period by claiming that each incidence of a known practice gives rise to a new "discovery" period. Otherwise, the Bureau could seek penalties "at any distance of time." *Gabelli v. S.E.C.*, 568 U.S. 442, 452 (2013). As Chief Justice Marshall emphasized, such a result "would be utterly repugnant to the genius of our laws." *Id.* (quoting *Adams v. Woods*, 6 U.S.

336, 342 (1805)). This is particularly true here, given that there is no statute of repose in the CFPA. *See id.* at 453 (explaining that "statutes applying a discovery rule in the context of Government suits often couple that rule with an absolute provision for repose"); *see also Merck & Co.*, 559 U.S. at 650 (rejecting concern that Section 10(b)'s discovery rule could "subject defendants to liability for acts taken long ago" in light of five-year statute of repose).

Accordingly, once the Bureau discovers a practice that it believes violates the CFPA, it must act within the statutorily prescribed three-year limitations period.[5] Because the Bureau indisputably failed to do so, its generalized grievances over EIS's long-standing practices are time-barred.

## II. <u>The Bureau Fails To Plead FCRA Claim</u>

Even if the Bureau's claims were timely (they are not), its FCRA claims should still be dismissed because the Bureau fails to meet its "threshold burden" of demonstrating an inaccuracy. *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 759 (9th Cir. 2018). The Bureau advance two arguments in response: (1) that it "has in fact alleged that [EIS] permitted numerous inaccuracies to remain in consumers' files;" and (2) "even if it had not done so, no provision of the FCRA, nor any other rule of law applicable to the Bureau, requires the Bureau to plead such inaccuracies." Opp. at 12. The Bureau is wrong on both fronts.

### A. The Bureau Fails To Plead An Inaccuracy

To start, the Bureau's allegations fall far short of plausibly alleging an inaccuracy. It is well-settled that Rule 8 demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Yet, the Bureau's allegations amount to just

---

[5] This is not to suggest that the Bureau would be without recourse if it fails to act within the three-year period. Rather, the Bureau could always promulgate a rule directly addressing its changes in stance over what practices may be unfair or violate the FCRA. But it should not be permitted to initiate a lawsuit over long-standing practices over which the Bureau has never taken issue.

that. Indeed, while the Bureau argues that "the Complaint is replete with allegations of credit reporting inaccuracies," it reiterates nothing more than general and conclusory allegations. But "[t]he Court need not accept vague and conclusory statements as true." *Gadomski v. Equifax Info. Servs., LLC*, 2018 WL 2096862, at *4 (E.D. Cal. May 7, 2018). Thus, because the Bureau's "complaint does not describe how or when the inaccuracies were 'previously disclosed,' or even what those disclosures entailed," its claims must be dismissed. *Id.*; *see also Chavez v. Experian Info. Sols., Inc.*, 2017 WL 1479234, at *8 (N.D. Cal. Apr. 25, 2017) (granting motion to dismiss where the plaintiff did "not identify any particular account or item of information reported by Experian" or "any specific errors or inaccuracies that Experian should have suppressed").

For example, the Bureau asserts that EIS "regularly accepts information from furnishers that is incorrect" or "internally inconsistent" with EIS's own records or with information provided by the furnisher or consumer. Opp. at 11. But the Bureau "makes no allegations as to what information was inaccurately reported." *Manukyan v. Cach, LLC*, 2012 WL 6199938, at *3 (C.D. Cal. Dec. 11, 2012). Indeed, the Bureau does not identify a single account—much less an item of information within the account—that is inaccurate. In fact, the Bureau does not even identify a single consumer file containing an inaccuracy. Nor does the Plaintiff identify a single purportedly unreliable furnisher. As such, the Bureau's complaint fails "to give [EIS] fair notice as to what type of information was disputed and how it was inaccurate." *Id.*; *see also Doster v. Experian Info. Sols., Inc.*, 2017 WL 264401, at *6 (N.D. Cal. Jan. 20, 2017) (dismissing claims where the plaintiff made "only general and unspecified allegations that her credit report . . . contained inaccuracies"); *Cabrera v. Experian Info. Sols.*, 2021 WL 5166980, at *3 (S.D.N.Y. Nov. 5, 2021) (dismissing claims where plaintiff did "not specify the names, addresses, accounts, or other information that is inaccurate" or "state facts explaining why such information is inaccurate").

The same holds true for the Bureau's assertions that, "even when consumers successfully dispute information in their consumer report as inaccurate and secure the deletion of that information, that same inaccurate information may nevertheless reappear on their credit reports." Opp. at 11. Again, the Bureau does not allege what information was inaccurate, let alone what information reappeared. This is fatal. *See, e.g.*, *Moulton v. Americredit Fin. Servs., Inc.*, 2006 WL 8459731, at *11 (N.D. Cal. Dec. 29, 2006) (dismissing reinsertion claims where the plaintiff "wholly failed to identify specific, disputed information that was removed and then reappeared or was reinserted").

The Bureau's last purported instances of inaccuracy—that EIS erroneously listed 1,700 consumers as joint users in error—similarly fail. Not only does the Bureau fail to identify these accounts, it offers no explanation of how such reporting was "'misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'" *Shaw*, 891 F.3d at 756. As such, the Bureau's generalized allegations fall short of stating a claim.

### B. Inaccuracy Is A Prima Facie Element To The Bureau's Claims

Unable to allege an inaccuracy, the Bureau retreats by claiming it has no obligation to do so because it is "a law enforcement agency pursuant to 15 U.S.C. § 1681s." Opp. at 13. According to the Bureau, this differentiates it from "a private consumer" because the government "is authorized to enforce 'compliance with the requirements' of the FCRA violations." Opp. at 13. The Bureau fundamentally misconstrues the provisions of the FCRA.

Under the FCRA, consumers and government enforcers alike are authorized to enforce the requirements of the statute though the civil enforcement provisions. *See* 15 U.S.C. §§ 1681n(a) ("Any person who willfully *fails to comply with any requirement imposed under this subchapter* with respect to any consumer is liable to that consumer in an amount equal to the sum of . . . .") (emphasis added), 1681o(a) ("Any person who is negligent in *failing to comply with any requirement imposed*

*under this subchapter* with respect to any consumer is liable to that consumer in an amount equal to the sum of . . . .") (emphasis added). But regardless of whether the plaintiff is the government or a private consumer, the "threshold requirement" to establish a violation of either Section 1681e(b) or Section 1681i is "an inaccuracy." *Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 567 (7th Cir. 2021). Without such showing, every court to consider the issue has agreed: no inaccuracy, no claim.

The Bureau nevertheless argues that "[t]he text of the section of the FCRA relating to disputes, 15 U.S.C. § 1681i,[6] contains no such requirement that a plaintiff show that the CRA maintains inaccurate information in a consumer's credit file." Opp. at 13. But the Ninth Circuit has time and again rejected this argument. *Shaw*, 891 F.3d at 756 ("[A]lthough § 1681i 'does not on its face require that an actual inaccuracy exist,' we, as with § 1681e claims, 'have imposed such a requirement.'" (quoting *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010)). This "is consistent with the FCRA's purpose to protect consumers from the transmission of inaccurate information about them." *Id.* It is also consistent with the plain language of the FCRA, which authorizes a CRA to "terminate a reinvestigation" if it "reasonably determines" the dispute "is frivolous or irrelevant." 15 U.S.C. § 1681i(a)(3). A dispute of accurate information would plainly be frivolous or irrelevant. For this reason, the Ninth Circuit has made clear that, without an inaccuracy, the Court "need not consider whether Experian had reasonable procedures or conducted reasonable reinvestigations." *Shaw*, 891 F.3d at 759; *see also Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1251 (9th Cir. 2022) ("[I]f there is no inaccuracy, then the reasonableness of [a CRA's] investigation is not in play.").

In a last ditch effort to save its claims, the Bureau asserts that "certain requirements of the dispute provisions in § 1681i of the FCRA do not turn on whether inaccurate information remains on a consumer's credit report," including the

[6] The Bureau also asserts that its arguments regarding accuracy apply equally to its claim under the Section 1681e(b).

requirement to send consumers "the results of a reinvestigation and an updated report." Opp. at 14 (citing 15 U.S.C. § 1681i(a)(6)). The Bureau is wrong again. As the district court in *Carvalho* explained, "a plaintiff who cannot state a claim for inadequate reinvestigation procedures logically cannot state a claim for failure to provide notice" under Section 1681i(a)(6). *Carvalho v. Equifax Info. Servs., LLC*, 588 F. Supp. 2d 1089, 1100 (N.D. Cal. 2008), *aff'd*, 629 F.3d 876 (9th Cir. 2010). And, again, this makes sense, given that EIS can terminate the reinvestigation of a frivolous or irrelevant dispute (*e.g.*, a dispute of accurate information), which would relieve it of the requirements of Section 1681i(a)(6).

Simply put, the requirement of an inaccuracy is a "prima facie" element of a claim under either Section 1681e(b) or Section 1681i, regardless of whether the plaintiff is the government or a consumer.[7] Because the Bureau fails to meet its "threshold burden" of establishing an inaccuracy, its FCRA claims must be dismissed. *Shaw*, 891 F.3d at 759

## III. <u>The Bureau Fails To Plead A CFPA Claim</u>

The Bureau's unfair practices claims must likewise be dismissed. While the Bureau's opposition lobs a barrage of arguments, none of them shows that EIS's practices are unfair. To the contrary, the Bureau's opposition confirms that the complaint "does not allege any actual consumer injury," *Fed. Trade Comm'n v. D-Link Sys., Inc.*, 2017 WL 4150873, at *5 (N.D. Cal. Sept. 19, 2017), and that the Bureau's attempt to legislate through enforcement does not give "fair notice" that EIS's practices are unfair. *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).

[7] The Bureau criticizes EIS for citing "no cases supporting its view that the Bureau must allege inaccuracies to succeed on its FCRA claims." Opp. at 13. But, tellingly, the Bureau cites no cases supporting its view that the government is not required to plead an inaccuracy. Of course, neither omission is surprising. This is the first government enforcement action against a national CRA alleging violations of the accuracy and reinvestigation provisions of the FCRA. Unlike EIS, however, the Bureau cites no cases whatsoever supporting its interpretation of the statute.

### A. The Bureau Fails To Allege A Substantial Injury

The Bureau argues that it "alleges substantial injury to consumers throughout the Complaint and alleges that each of the unfair acts or practices—Counts X, XI, and XII—caused or was likely to cause such injury." Opp. at 16. But a cursory review of the complaint makes clear that the Bureau simply speculates that EIS's procedures increase the "likelihood" of inaccurate reporting. *See* Cmplt., ¶¶ 153 (alleging that EIS's failure to convey disputes "increases the likelihood that inaccurate information remains on consumer reports"), 159 (alleging that EIS's overreliance on ACDV responses "causes or is likely to cause inaccurate reporting to remain on consumer reports"), 165 (alleging that the failure to prevent the reporting of previously deleted tradelines by a different furnisher "increase[es] the likelihood that previously deleted and erroneous information reappears in a consumer's file"). The Bureau fails to identify a single consumer who suffered any injury, let alone a substantial injury, as a result of EIS's practices, despite engaging in a sprawling investigation lasting more than three years. As such, the Bureau's claims cannot proceed.

*D-Link Systems* is instructive. There, the FTC initiated an enforcement action against an internet device company, alleging that the company engaged in unfair practices by failing to protect consumers against "reasonably foreseeable risks of unauthorized access." *D-Link Sys.*, 2017 WL 4150873, at *1. Like the Bureau here, the FTC did "not identify a single incident" of a consumer who "suffered any harm or even simple annoyance and inconvenience from the alleged" unfair practices. *Id.*, at *5. Instead, the FTC, like the Bureau here, alleged only "a mere possibility of injury at best." *Id*. As the court found, "the FTC cannot rely on wholly conclusory allegations about potential injury to tilt the balance in its favor," particularly where, like the Bureau here, the FTC "undertook a thorough investigation before filing the complaint." *Id.* Accordingly, the court dismissed the FTC's unfairness claims. This Court should reach the same conclusion.[8] *See Fed. Trade Comm'n v. Wellness*

[8] The Bureau erroneously cites to the Ninth Circuit's decision in *Robins v.*

*Support Network, Inc.*, 2011 WL 1303419, at *11 (N.D. Cal. Apr. 4, 2011) (finding that FTC's allegations were "so conclusory that they [did] not support a plausible inference that [defendant] participated directly in the alleged deceptive acts"); *Fed. Trade Comm'n v. Swish Mktg.*, 2010 WL 653486, at *5 (N.D. Cal. Feb. 22, 2010) (dismissing claims where FTC made conclusory allegations "untethered to virtually any supporting facts").

### B. EIS Had No Fair Notice That Its Practices Were Unfair

Even if the Bureau sufficiently alleged a substantial injury (it has not), its unfairness claims still fail because EIS lacked fair notice. The Bureau does not deny that it has consistently supervised EIS for more than ten years. Nor does it dispute that it ever taken issue with the manner in which EIS communicates dispute results to consumers, the degree to which EIS relies on the ACDV process, or EIS's reinsertion policies. Relying on *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d. Cir. 2015), the Bureau nevertheless argues that it is irrelevant that the Bureau has never deemed EIS's practices unfair or unlawful. Opp. at 17-18. But the Bureau misunderstands EIS's arguments.

EIS "does not assert as a defense that it was entitled to and did not receive the [the Bureau's] affirmative or correct interpretation of the relevant sections of the [FCRA or CFPA]; it argues that the regulatory environment was such that it could not reasonably understand its conduct to be violative of [those statutes]." *Sec. & Exch. Comm'n v. Payward, Inc.*, 2025 WL 314001, at *8 n.11 (N.D. Cal. Jan. 24, 2025). Thus, in contrast to the plaintiff in *Wyndham*, who "argued that it was entitled to the FTC's interpretation of a statute such that it could better understand how that

---

*Spokeo Inc.*, 867 F.3d 1108, 1114, 1117 (9th Cir. 2017), to suggest that the dissemination of any inaccurate information causes substantial harm. *See* Opp. at 17. But *Spokeo* only underscore why the Bureau's failure to allege any specific inaccuracy is fatal to its claims. As the Supreme Court made clear, "not all inaccuracies cause harm or present any material risk of harm." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016). Thus, without any specific allegations of an inaccuracy that caused actual harm, the Bureau's claims cannot survive.

statute applied to Wyndham; [EIS] argues that the [the Bureau] issued contradictory and shifting enforcement guidance such that an ordinary entity in [EIS's] position could not reasonably understand its conduct to be violative of the [the FCRA and CFPA]. They are different arguments." *Id.*

As EIS demonstrated, the Bureau regularly examines EIS's practices and consistently issues supervisory guidance related to EIS's accuracy and reinvestigation procedures, yet it has never claimed that EIS's practices violate the FCRA, let alone the CFPA. To the contrary, the Bureau has lauded EIS's use of "automated protocols" for "reduc[ing] the cost and time to transmit relevant [dispute] information." RJN Ex. 9 at 225. Moreover, circuit courts have repeatedly endorsed EIS's processes and practices. S*ee Ghazaryan v. Equifax Info. Servs., LLC*, 740 F. App'x 157, 158 (9th Cir. 2018); *Bagby v. Experian Info. Sols., Inc.*, 162 F. App'x 600, 606 (7th Cir. 2006); *Barron v. Equifax Info. Servs., L.L.C.*, 802 F. App'x 161, 162–63 (5th Cir. 2020). The same holds true for EIS's reinsertion and online dispute handling practices.[9]

Accordingly, EIS could not have possibly had fair notice that its processes could constitute an unfair practice, particularly given the prior endorsements by the Bureau and courts that those processes were reasonable. Thus, because the Bureau fails to show that any EIS practice is substantially injurious to consumers, let alone that EIS had fair notice that such practice was unfair, the Bureau's CFPA claims should be dismissed.

## CONCLUSION

For the foregoing reasons, and those set forth in EIS's opening brief, EIS's motion to dismiss should be granted in full.

---

[9] Contrary to the Bureau's assertions, the reinsertion provisions under Section 1681i(a)(5)(B) do not apply to different furnishers, as it "would have been extremely difficult for the [EIS] to know that [one furnisher] account was related to the previously deleted . . . account [of another furnisher]." *Okocha v. Trans Union LLC*, 2011 WL 2837594, at *7-8 (E.D.N.Y. Mar. 31, 2011), *aff'd*, 488 F. App'x 535 (2d Cir. 2012).

Dated: April 25, 2025

JONES DAY

By: <u>*/s/ Richard J. Grabowski*</u>
Richard J. Grabowski

Attorneys for Defendant
Experian Information Solutions, Inc.