UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No.  8:25-cv-00024-MWC-DFM                                                  Date: May 5, 2025

Title    Consumer Financial Protection Bureau v. Experian Information Solutions, Inc.

Present: The Honorable:    Michelle Williams Court, United States District Judge

| T. Jackson | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings: (In Chambers) ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS (Dkt. 24)**

Before the Court is a motion to dismiss filed by Defendant Experian Information Solutions, Inc. ("Experian"). Dkt. # 24-1 ("*Mot.*"). Plaintiff Consumer Financial Protection Bureau ("Bureau") opposed, Dkt. # 28 ("*Opp.*"), and Experian replied, Dkt. # 30 ("*Reply*"). The Court finds this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers, the Court **GRANTS IN PART AND DENIES IN PART** Experian's motion to dismiss.

I.    Background

On January 7, 2025, the Bureau initiated this action against Experian, a consumer reporting agency ("CRA"). Dkt. # 1 ("*Compl.*"). The Bureau's complaint ("Complaint") asserts thirteen causes of action in two categories (1) Fair Credit Reporting Act ("FCRA") violations and (2) Consumer Financial Protection Act of 2010 ("CFPA") violations. *See id*. The FCRA violations include Counts I to XI: (I) Failure to forward disputes in violation of the FCRA (15 U.S.C. § 1681i(a)(2)(A)); (II) Failure to conduct a reasonable reinvestigation and failure to provide furnishers with all relevant information in violation of the FCRA (15 U.S.C. § 1681i(a)(1)(A), (2)); (III) Failure to reinvestigate disputes about hard inquiries in violation of the FCRA (15 U.S.C. § 1681i(a)(1)(A), (2)); (IV) Deleting tradelines without an investigation in violation of the FCRA (15 U.S.C. § 1681i(a)(1)(A)); (V) Unreasonable over-reliance on a furnisher's Automated Credit Dispute Verification ("ACDV") response in violation of the FCRA (15 U.S.C. § 1681i(a)(1)(A)); (VI) Failure to delete inaccurate, incomplete, or unverified information in violation of the FCRA (15 U.S.C. § 1681i(a)(5)(A)); (VII) Failure to provide notice of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:25-cv-00024-MWC-DFM | Date: May 5, 2025 |
| Title | Consumer Financial Protection Bureau v. Experian Information Solutions, Inc. |

the results of the reinvestigation in violation of the FCRA (15 U.S.C. § 1681i(a)(6)(A)); (VIII) Failure to maintain reasonable procedures designed to prevent reinsertion and unlawful reinsertion of previously deleted information in violation of the FCRA (15 U.S.C. § 1681i(a)(5)(B), (C)); and (IX) Failure to implement and follow reasonable procedures to assure maximum possible accuracy in violation of the FCRA (15 U.S.C. § 1681e(b)).  The CFPA violations include the remaining Counts: (X) Unfair acts or practices: failing to convey consumers' disputes to furnishers fully and accurately (12 U.S.C. §§ 5531(c), 5536(a)(1)(B)) (XI) Unfair acts or practices: excessive and unreasonable reliance on a furnisher's ACDV response (12 U.S.C. §§ 5531(c), 5536(a)(1)(B)); (XII) Unfair acts or practices: failing to prevent improper tradeline reinsertions (12 U.S.C. §§ 5531(c), 5536(a)(1)(B)); (XIII) violation of the CFPA from FCRA violations (12 U.S.C. § 5536(a)(1)(A)).

Experian moves to dismiss the instant action on two grounds (1) that the statute of limitations bars the Bureau's claims, and (2) the Bureau fails to plead a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6).  *See Mot.*  The Bureau flatly disagrees with Experian.  *See Opp.*

II.     Discussion

   A.     Timeliness

A contention that a claim is barred by the statute of limitations is an affirmative defense.  Fed. R. Civ. P. 8(c).  Rule 8 generally "does not require plaintiffs to plead around affirmative defenses."  *U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 972 (9th Cir. 2019).  And "[o]rdinarily, affirmative defenses . . . may not be raised on a motion to dismiss."  *Id.* (citation omitted).  Nonetheless, courts "can consider an affirmative defense on a motion to dismiss when there is 'some obvious bar to securing relief on the face of the complaint.'"  *Id.* (citation omitted).  "An affirmative defense may be considered if the defense is based on undisputed facts or if the basis for the argument appears on the face of the complaint and any materials the court takes judicial notice of."  *Nguyen v. Stephens Institute*, 529 F. Supp. 3d 1047, 1056 (N.D. Cal. 2021); *see U.S. Commodity*, 931 F.3d at 972 ("In other words, dismissal based on an affirmative defense is permitted when *the complaint* establishes the defense." (emphasis in original)).  Thus, Experian may move to dismiss on the basis that the Bureau's claims are barred by the statute of limitations only if Experian shows some obvious bar to securing relief on the face of the complaint.  *See Von Saher v. Norton*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:25-cv-00024-MWC-DFM | Date: May 5, 2025 |
| Title | Consumer Financial Protection Bureau v. Experian Information Solutions, Inc. |

*Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (explaining that a claim may be dismissed as untimely pursuant to a 12(b)(6) motion "only when the running of the statute [of limitations] is apparent on the face of the complaint" (internal quotation marks and citations omitted)).

Under the CFPA, the Bureau has three years "after the date of discovery of the violation to which an action relates." 12 U.S.C. § 5564. Experian argues that the Court should implement a "constructive discovery" rule, *Mot.* 7:4–20, though the statute does not set forth such a rule. In furtherance of its argument, Experian relies on the Ninth Circuit's decision in *Aloe Vera of Am., Inc. v. United States* that held the "date of discovery" statutory language implies a constructive discovery rule. 699 F.3d 1153, 1160 (9th Cir. 2012) (collecting other Ninth Circuit authority applying constructive discovery to other statutory schemes). The Supreme Court has clarified that courts "normally assume that, when Congress enacts statutes, it is aware of relevant judicial precedent . . . [g]iven the history and precedent surrounding the use of the word 'discovery' in the limitations context." *Merck & Co. v. Reynolds*, 559 U.S. 633, 648 (2010). When Congress draws linguistic distinctions within the statutory framework (e.g., including both forms of knowledge in a provision limiting statutory actions), courts generally presume that Congress acted intentionally and purposely. *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 589 U.S. 178, 186 (2020). Although the Court queries whether it should engraft a constructive discovery rule as such an enlargement construes the limitation against the government,[1] Congress has not drawn a linguistic distinction within the CFPA as to the limitations issue. Therefore, the Court concludes that the "limitation period commences when the Bureau either knows of a violation or, through reasonable diligence, would have discovered the violation." *Integrity Advance, LLC v. Consumer Fin. Prot. Bureau*, 48 F.4th 1161, 1172 (10th Cir. 2022); *see also Consumer Fin. Prot. Bureau v. MoneyGram Int'l, Inc.*, No. 22 CIV. 3256 (KPF), 2025 WL 297389, at *12 (S.D.N.Y. Jan. 24, 2025) (applying constructive discovery under the CFPA).

For purposes of analyzing timeliness, the Court splits the Bureau's claims into (1) violations that occurred between January 2018 and October 2021 ("Discrete Period")

---

[1] *See Bureau of Consumer Fin. Prot. v. Chou Team Realty LLC*, No. 8:20-CV-00043-SB-ADS, 2021 WL 4077110, at *5 (C.D. Cal. Aug. 10, 2021) (refusing to apply a constructive discovery rule to the CPBA), *aff'd sub nom. Consumer Fin. Prot. Bureau v. Nesheiwat*, No. 21-56052, 2022 WL 17958636 (9th Cir. Dec. 27, 2022) (affirming the limitation issue on the basis that plaintiff did not offer insight into the date of discovery).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   8:25-cv-00024-MWC-DFM				Date: May 5, 2025

Title	Consumer Financial Protection Bureau v. Experian Information Solutions, Inc.

(i.e., Counts I, IV, and VI), and ongoing violations ("Ongoing Violations") (i.e., Counts II, III, V, and VII–XIII).

As to the Discrete Period, Experian argues that there can be no dispute that the Bureau discovered these violations more than three years before filing this action, since at least October 2021, as evidenced by annual supervisory reports on credit reporting practices of CRAs and furnishers. *Mot.* 7:21–8:2 (citing Dkt. 25 ("*RJN*"), Exs. 1–7).[2] Those exhibits do not plainly establish that the Bureau discovered the violations during the Discrete Period, but the Complaint is nonetheless facially deficient as this lawsuit was not initiated until January 7, 2025. The Bureau contends that it executed tolling agreements with Experian, suspending the statute of limitations by a total of 554 days, and therefore "at least some of the conduct occurred within the limitations period regardless of the date of discovery." *Opp.* 9:6–8; *id.* 9:2–4, n.5. The Complaint, however, does not mention the tolling agreements. *See Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 991 (9th Cir. 2006) ("[F]ederal courts have repeatedly held that plaintiffs seeking to toll the statute of limitations on various grounds must have included the allegation in their pleadings[.]"). Accordingly, the Court **GRANTS**

---

[2] Experian requests that the Court take judicial notice of these exhibits as they are "matters of undisputed public record" as government reports and publications. *See* Dkt. # 25, 3:1–14; *see also Lemperle v. Wash. Mut. Bank*, No. 10cv1550–MMA (POR), 2010 WL 3958729, at *3 (S.D. Cal. Oct. 7, 2010) ("Government reports and publications, including information on the Department of the Treasury and the FDIC's official websites [are] judicially noticeable."). While the Court may take judicial notice of these exhibits, the Court cannot take judicial notice of the truth of facts at issue or disputed therein. *See Gonzalez v. City of Anaheim*, No. CV 10-4660 PA (SHX), 2010 WL 11463113, at *2 (C.D. Cal. Sept. 20, 2010) ("[A] court may take judicial notice of matters of public record without converting a motion to dismiss into a summary judgment motion." (citing *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986))); *Bryant v. Carleson*, 444 F.2d 353, 357–58 (9th Cir. 1971) (court took judicial notice of fact that defendant filed affidavit, but did not take judicial notice of truth of facts at issue or disputed therein). The Court, however, takes judicial notice of the fact that the Bureau has been in a supervisory role over Experian.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   8:25-cv-00024-MWC-DFM                                               Date: May 5, 2025

Title   Consumer Financial Protection Bureau v. Experian Information Solutions, Inc.

Experian's motion to dismiss as to the Discrete Period (i.e., Counts I, IV, and VI) based on untimeliness **WITH LEAVE TO AMEND**.[3]

Moving on to the Ongoing Violations, those claims are tolled as "the limitations period starts afresh with each new offense" as they are based on a continuing course of conduct, made in repeated transactions with consumers. *CFPB v. Howard*, No. 8:17-cv-00161-JLS-JEM, 2018 WL 4847015, at *3 (C.D. Cal. May 3, 2018) (quoting *United States v. Kivanc*, 714 F.3d 782, 790 (4th Cir. 2013)); see *Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002) ("When a tort involves continuing wrongful conduct, the statute of limitations doesn't begin to run until that conduct ends." (citation omitted)). Simply put, the Ongoing Violations (as pleaded) are within the limitations period even if the Bureau was aware of Experian's conduct before that period. Accordingly, the Court **DENIES** Experian's motion to dismiss as to the Ongoing Violations (i.e., Counts II, III, V, and VII–XIII) as those claims are timely pleaded in the Complaint.

B.   Failure to State a Claim

To survive a Rule 12(b)(6) motion, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing the adequacy of the complaint, the court must accept all pleaded facts as true and construe them in the light most favorable to the plaintiff. *See Turner v. City & Cnty. of S.F.*, 788 F.3d 1206, 1210 (9th Cir. 2015); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). The court then determines whether the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, a cause of action's elements that are "supported by mere conclusory statements, do not suffice." *Id*. Accordingly, "for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling

---

[3] Assuming the Bureau cures its deficiencies, the Court notes that any subsequent contentions that the Bureau should have discovered the alleged violations will likely fall short at the motion to dismiss stage because the limitations issue concerns a factual dispute—Experian has not established undisputed facts that the Bureau knew or should have known. Separately, in anticipation of an amended complaint, the Court will analyze whether the Discrete Period claims fail to state a claim under Rule 12(b)(6) below.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:25-cv-00024-MWC-DFM | Date: May 5, 2025 |
| Title | Consumer Financial Protection Bureau v. Experian Information Solutions, Inc. |

the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

Here, Experian argues that (1) the Bureau fails to plead an FCRA claim under Sections 1681e(b) or 1681i; and (2) the Bureau fails to plead an unfairness claim. *See Mot.* 8:18–13:18. The Court addresses both arguments in turn.

> *i.* *FCRA Claims*

Experian argues that the Bureau fails to meet its "threshold burden" of establishing an inaccuracy for its FCRA claims. *Mot.* 8:18–9:21. The Bureau argues that it is not required to plead an inaccuracy to state a claim in an FCRA enforcement action because the Bureau is authorized to enforce compliance with the requirements of the FCRA, unlike a private FRCA plaintiff. *Opp.* 12:22–13:15. The Bureau further contends that, even if the threshold requirement applied to it, the Complaint includes allegations of inaccuracies throughout. *Id.* 10:14–12:21.

To start, a claim under Sections 1681e(b) or 1681i requires a *consumer* plaintiff to satisfy the "threshold burden" of demonstrating an inaccuracy. *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 759 (9th Cir. 2018); *see also id.* at 756 ("[A]lthough § 1681i does not on its face require that an actual inaccuracy exist, we, as with § 1681e claims, have imposed such a requirement." (internal quotation marks and citations omitted)); *Xu v. Better Mortg. Corp.*, No. 5:23-CV-05510-PCP, 2025 WL 28556, at *4 (N.D. Cal. Jan. 3, 2025) ("[F]actually accurate information can be inaccurate within the meaning of the FCRA if its presentation is misleading." (citing *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009)). The Bureau's argument that it is differently situated from a private plaintiff is spot on. The Bureau's role is to pursue the public interest in enforcing general compliance with regulatory law—it is not litigating an individual case or seeking private remedies. *See* 12 U.S.C. §5492 (a)(10) (the Bureau is authorized to "implement[] the Federal consumer financial laws through rules, orders, guidance, interpretations, statements of policy, examinations, and enforcement actions"); *id.* § 5564(a) ("If any person violates a Federal consumer financial law, the Bureau may . . . commence a civil action against such person to impose a civil penalty or to seek all appropriate legal and equitable relief including a permanent or temporary injunction as permitted by law."); 15 U.S.C. § 1681s(b) (authorizing the Bureau to enforce compliance with FCRA requirements); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 429 (2021) ("Private plaintiffs are not accountable to the people and are not charged with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   8:25-cv-00024-MWC-DFM                                                          Date: May 5, 2025

Title       Consumer Financial Protection Bureau v. Experian Information Solutions, Inc.

pursuing the public interest in enforcing a defendant's general compliance with regulatory law." (internal citation omitted)) (standing context).  Indeed, the "Bureau may act in its own name and through its own attorneys in enforcing any provision of this title, rules thereunder, or any other law or regulation, or in any action, suit, or proceeding to which the Bureau is a party."  12 U.S.C. § 5564(b).  While the Bureau must meet the federal "notice pleading" standard under Rule 8, pleading an inaccuracy is not required (nor is the Court aware of any authority requiring the Bureau to do so), rather the Bureau's enforcement action need only allege facts supporting allegations of Experian's FCRA violations.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (plaintiff needs only to plead "general factual allegations" of injury to survive a motion to dismiss, as opposed to the "specific facts" needed to survive a motion for summary judgment).

The Court finds that the Complaint is replete with factual allegations that Experian's conduct violated and/or continues to violate the FCRA.  Below, the Court highlights those allegations and the corresponding claims.

- **Count I**: Failure to forward disputes in violation of the FCRA.  *See Compl.* ¶ 106 ("Between January 2018 and October 2021, Experian did not forward more than 2 million disputes to furnishers within five business days.").

- **Count II**: Failure to conduct a reasonable reinvestigation and failure to provide furnishers with all relevant information in violation of the FCRA. *See Compl.* ¶ 38 ("Experian routinely sends dispute codes to furnishers that mischaracterize or fail to convey highly relevant information about consumers' disputes."); ¶ 40 ("As an illustration, Experian's Online Dispute Center instructs consumers to select a dispute description of 'Account paid in full' if consumers 'believe [they] have paid the account in full or that it was paid in settlement.'  A separate dispute description for account settled is not available to consumers on the Online Dispute Center, even though it would more precisely describe the nature of the dispute."); ¶ 44 ("As another example, Experian inserts into the ACDV the intentionally generic e-OSCAR dispute code labeled 'Claims inaccurate information. Did not provide specific dispute.' even where the consumer provides specific information pertaining to the dispute, such as disputing the date of first delinquency or the payment of an account, and for which a more specific dispute code, such as 'Disputes Date of First Delinquency'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:25-cv-00024-MWC-DFM                                            Date: May 5, 2025

Title   Consumer Financial Protection Bureau v. Experian Information Solutions, Inc.

and 'Disputes present/previous Account Status, History" is available and appropriate.'").

- **Count III**: Failure to reinvestigate disputes about hard inquiries in violation of the FCRA.  *See id.* ¶¶ 88–89 ("As a matter of policy, Experian does not investigate hard inquiry disputes unless the consumer's allegation meets narrow criteria, such as an allegation that the inquiry was a byproduct of fraud or identity theft.  Absent such allegations, Experian will not conduct a reinvestigation and instead simply sends a notice to the consumer explaining the nature of inquiries and inviting consumers to provide additional information, such as allegations of identity theft or fraud, to support the dispute. (internal citation omitted)).

- **Count IV**: Deleting tradelines without an investigation in violation of the FCRA.  See *id.* ¶ 84 ("[B]etween February 2019 and February 2020, Experian deleted more than 100,000 disputed tradelines instead of initiating and completing a reinvestigation within 30 days[.]").

- **Count V**: Unreasonable over-reliance on a furnisher's ACDV response in violation of the FCRA.  *See id.* ¶¶ 51, 56 (alleging that Experian accepts information from furnishers that is internally inconsistent: "For example, Experian receives ACDV responses with inconsistent information, such as indicating a consumer's overdue balance is *greater* than the total amount due. Other ACDV responses state that a consumer first became delinquent on an installment debt a month *after* the consumer had paid the account to a zero-dollar balance."); ¶¶ 51–52 (alleging that Experian accepts information from furnishers that is undermined by documentation supplied by consumers: "For example, Experian rejects consumer disputes even where the consumer supplies "documents reflecting an agreement to settle a debt … [or] documentation showing that the furnisher had previously agreed to delete or correct information."); ¶¶ 51, 54 (alleging that Experian accepts information from furnishers that is contradicted by other information already in Experian's credit file for the consumer: "For example, Experian often possesses information confirming the existence of a bankruptcy fitting the description in the consumer's dispute, or information confirming that a consumer has made a settlement payment.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   8:25-cv-00024-MWC-DFM                               Date: May 5, 2025

Title   Consumer Financial Protection Bureau v. Experian Information Solutions, Inc.

- **Count VI:** Failure to delete inaccurate, incomplete, or unverified information in violation of the FCRA.  *See id.* ¶ 101 ("Between June 2020 and December 2020, furnishers identified many accounts that inaccurately reflected joint user status.  However, Experian's automated systems rejected certain furnishers' attempts to remove a joint user from an account in response to a dispute."); *id.* ¶ 131 ("Experian maintained patently incorrect information about more than 1,700 consumers, falsely listing them as joint users of credit accounts for which they had no obligation.").

- **Count VII:** Failure to provide notice of the results of the reinvestigation in violation of the FCRA.  *See id.* ¶ 135 ("Experian's notices routinely fail to disclose the results of a reinvestigation because the notices state two contradictory results, are incomplete, or are unintelligible."); *id.* ¶¶ 64–81 (providing examples of such results).

- **Count VIII:** Failure to maintain reasonable procedures designed to prevent reinsertion and unlawful reinsertion of previously deleted information in violation of the FCRA.  *See id.* ¶ 52 ("Consumers often provide documentation that, at a minimum, should put Experian on notice that reinvestigation beyond the furnisher's ACDV response is necessary . . . [C]onsumers provide Experian documentation showing that the furnisher had previously agreed to delete or correct information in the disputed tradeline."); *id.* ¶ 96 ("Experian has failed to implement basic matching tools that prevent or greatly reduce the likelihood of reinsertion by a new furnisher of a previously deleted tradeline."); *id.* ¶ 97 ("For example, Experian has not implemented procedures to compare dates of first delinquencies, recent credit balance amounts, high credit balances, or the names of original creditors, to ascertain whether a newly reported tradeline constitutes a reinsertion."); *id.* ¶ 98 ("When Experian allows new furnishers to reinsert previously deleted information, Experian does not require the furnishers to certify that the information is complete and accurate. Experian also does not notify consumers within five business days that the previously deleted information was reinserted, provide the identity and contact information of furnishers contacted in connection with the reinsertion, or inform consumers of their right to add a statement to their consumer file disputing the accuracy or completeness of the disputed information.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No. | 8:25-cv-00024-MWC-DFM                              Date: May 5, 2025 |
| Title | Consumer Financial Protection Bureau v. Experian Information Solutions, Inc. |

- **Count IX:** Failure to implement and follow reasonable procedures to assure maximum possible accuracy in violation of the FCRA. The allegations in Count VIII are sufficient for purposes of Count IX.

Accordingly, because the Bureau's allegations are sufficient to provide notice at this juncture, the Court **DENIES** Experian's motion to dismiss the FCRA claims.

      *ii.*    *CFPB Claims*

          *a.*    *Unfair Practices*

An act or practice is unfair in violation of the CFPA if it (1) causes or is likely to cause substantial injury to consumers, (2) is not reasonably avoidable by consumers, and (3) such substantial injury is not outweighed by countervailing benefits to consumers or to competition. 12 U.S.C. § 5531(c)(1). The only CFPB violations contested are Counts X–XII. Experian argues that the Bureau fails to meet the first element by not establishing any injury at all, let alone a substantial injury. *Mot.* 10:4–11. For the reasons discussed below, the Court finds Experian's position to be persuasive in substantial part.

Courts have found that there is a "likelihood of substantial injury" to consumers where plaintiff can show that "injury is a predictable consequence" of the Defendant's actions. *FTC v. Neovi, Inc.*, 604 F.3d 1150, 1156 (9th Cir. 2010) (discussing unfair practices under 15 U.S.C. § 45(n), which is the FTC equivalent to 12 U.S.C. § 5531(c)(1)); *see also CFPB v. D & D Mktg.*, No. CV 15-9692 PSG (EX), 2016 WL 8849698, at *11 (C.D. Cal. Nov. 17, 2016) (same). Here, Count XII includes allegations that infer a predictable injury, but Counts X and XI do not.

Count XII alleges that "Experian improperly reinserts tradelines into consumer reports due to its practice of not attempting to match newly reported tradelines to tradelines that were previously deleted as a result of a dispute if the subsequent furnishing was from a new furnisher." *Compl.* ¶ 164. It follows that Experian is allowing inaccurate information to be reflected on consumer reports and "the dissemination of false information in consumer reports *can* itself constitute a concrete harm . . . [and] the real-world implications of material inaccuracies in those reports seem patent on their face." *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1114, 1117 (9th Cir. 2017). Accordingly, the Court **DENIES** the motion to dismiss Count XII because the Bureau has adequately pleaded a substantial injury.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:25-cv-00024-MWC-DFM | Date: May 5, 2025 |
| Title | Consumer Financial Protection Bureau v. Experian Information Solutions, Inc. |

Count X asserts that Experian fails to convey consumers' disputes to furnishers fully and accurately by "distort[ing], truncat[ing], and mischaracterize[ing] consumers' disputes by applying dispute codes that inaccurately describe consumers' disputes, incorrectly using generic dispute codes despite more specific codes being available, applying dispute codes requesting updates that are already reflected on consumers' tradelines, and failing to forward relevant consumer documentation." *Compl.* ¶ 151. Count XI accuses Experian of engaging in the "practice of conducting an investigation by doing nothing more than sending an ACDV to a furnisher and implementing the furnisher's response, and not seeking or taking into account additional, relevant information as part of its reinvestigation, despite having or receiving evidence of that furnisher's unreliability." *Id.* ¶ 158. Both counts merely contemplate potential harm and do not allege that furnishers were unable to accurately resolve disputes based on Experian's transmission of dispute codes or that Experian's reliance on the ACDV process led to inaccurate reporting. Mere speculation of risk is not sufficient to plead a substantial injury. *See, e.g.*, *Fed. Trade Comm'n v. D-Link Sys., Inc.*, No. 3:17-CV-00039-JD, 2017 WL 4150873, at *5 (N.D. Cal. Sept. 19, 2017) (finding harm allegations amounted to "a mere possibility of injury at best" where the FTC alleged that consumers' sensitive personal information and local networks were at significant risk of being accessed by unauthorized agents but the FTC did not identify a single incident where such information was compromised by unauthorized parties); *see also Fed. Trade Comm'n v. Kochava Inc.*, 671 F. Supp. 3d 1161, 1173 (D. Idaho 2023) (an unfairness claim "must not only claim that [defendant's] practices *could* lead to consumer injury, but that they are *likely* to do so, as required by the statute" (emphasis in original)). Accordingly, the Court **GRANTS** the motion to dismiss Counts X and XI.[4]

### b. Fair Notice

"A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) (citation omitted). Fair notice concerns typically arise when an agency explicitly changes its official interpretation of a statute and a regulated party relied on the prior interpretation. *See id.* at 254 (holding that the FCC did not provide fair notice to television broadcasters when it changed its official

---

[4] Although it dismissed Counts X and XI, the Court will analyze the due process issue related to those claims in anticipation of an amended complaint.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. | 8:25-cv-00024-MWC-DFM                            Date: May 5, 2025 |
| Title | Consumer Financial Protection Bureau v. Experian Information Solutions, Inc. |

policy interpreting the rules on expletives in public broadcasts, and then sought to apply the new interpretation retroactively). The issue can also arise where courts are split as to the application of a statute. *See United States v. AMC Ent., Inc.*, 549 F.3d 760, 770 (9th Cir. 2008) (holding defendant lacked fair notice of American with Disabilities Act requirements because there was a circuit split on the interpretation of the particular provision at issue). Notably, in the context of civil statutes regulating economic activity, the standard is sufficiently low that statutes are unconstitutionally vague only where they are "so vague and indefinite as really to be no rule or standard at all." *Boutilier v. INS*, 387 U.S. 118, 123 (1967).

Experian argues that the regulatory environment was such that it could not reasonably understand its conduct to be violative of those statutes. *Reply* 11:17–22. The crux of Experian's argument is that the Bureau has never taken issue with these unfair practice claims (even lauding Experian for its use of automated protocols) and that courts have repeatedly endorsed Experian's practices. *Id.* 12:5–25. The Court is not persuaded.

As a preliminary matter, "determining whether a defendant had fair notice of its purported offense requires examination of the facts of the case." *Sec. & Exch. Comm'n v. Payward, Inc.*, No. 23-CV-06003-WHO, 2025 WL 314001, at *7 (N.D. Cal. Jan. 24, 2025). The exhibits proffered by Experian do not (and cannot) establish any "undisputed" facts beyond that the Bureau was in a supervisory role. Even if the exhibits reflected that the Bureau has never taken an issue prior to this lawsuit, "an agency does not waive its right to enforce a statute when it has declined to do so in the past." *Fed. Trade Comm'n v. Amazon.com, Inc.*, 735 F. Supp. 3d 1297, 1331 (W.D. Wash. 2024) (citing *Fed. Trade Comm'n v. Wyndham Worldwide Corp.*, 799 F.3d 236, 255 (3d Cir. 2015)).

The question becomes whether Experian had fair notice of what the CFPA requires. To constitute impermissible vagueness, "sufficient standards" must be lacking, which is not the case here. *See United States v. Stratics Networks Inc.*, 721 F. Supp. 3d 1080, 1112 (S.D. Cal. 2024) (finding the FTCA to not be unconstitutionally vague where there was an articulated sufficient standard for what constituted telemarketing and telephone calls). The standard of fairness is a term with tradition and determination. *See D & D Mktg.*, 2016 WL 8849698, at *6 (courts have given shape to the meaning of "unfair or deceptive acts or practices" as it relates to the CFPA and FTCA); *Consumer Fin. Prot. Bureau v. Siringoringo*, No. SACV 14–01155 JVS (AJWx), 2016 WL 102435, at *4 (C.D. Cal. Jan. 7, 2016) (noting that "CFPA's prohibition on 'unfair' or 'abusive'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:25-cv-00024-MWC-DFM | Date: May 5, 2025 |
| Title | Consumer Financial Protection Bureau v. Experian Information Solutions, Inc. |

practices is not unconstitutionally vague because longstanding interpretations of the Federal Trade Commission Act should inform interpretation of the CFPA" (citation omitted)). The CFPA provides fair notice that it prohibits unfair practices. Even if the term "unfair" was far from precise, the law provides adequate notice if a defendant could "reasonably foresee" that a court could construe its conduct as falling within the statute. *D & D Mktg.*, 2016 WL 8849698, at *7 (citing *Wyndham*, 799 F.3d at 256).

Despite the fairness standard, Experian argues that the regulatory scheme continues to be misleading as enforced. That argument fails.

Relevant to Count XI, Experian argues that it lacked regulatory guidance in light of circuit court decisions that "endorse" its ACDV procedure. *Mot.* 12:14–13:2; *Reply* 12:10–15. Not so. "It is well settled that exclusive reliance on ACDV procedures does not suffice, as a matter of law, to establish that a 'reasonable investigation' took place once a consumer disputes the accuracy of the furnisher's information." *Grigoryan v. Experian Info. Sols., Inc.*, 84 F. Supp. 3d 1044, 1074 (C.D. Cal. 2014) (citation omitted). That is precisely what the Bureau alleges is unfair in this case, *Compl.* ¶ 158, which is distinguishable from the cases that Experian relies on. *Cf. Ghazaryan v. Equifax Info. Servs., LLC*, 740 F. App'x 157, 158 (9th Cir. 2018) (defendant had no reason to question the determination that the furnisher was a reliable source); *Bagby v. Experian Info. Sols., Inc.*, 162 F. App'x 600, 606–07 (7th Cir. 2006) (same).

As to Count XII, Experian contends that no court has ever mandated a CRA to implement procedures to detect accounts reporting previously deleted accounts by a subsequent furnisher. *Mot.* 13:5–7. However, Section 1681i(a)(5)(B), which sets forth requirements about the reinsertion of information that has been deleted, does not limit reinsertions to only the same furnisher. 15 U.S.C. § 1681i(a)(5)(B)(i) ("If any information is deleted from a consumer's file pursuant to subparagraph (A), the information may not be reinserted in the file by the consumer reporting agency unless the person who furnishes the information certifies that the information is complete and accurate."); *see also Williams v. First Advantage LNS Screening Sols., Inc.*, 155 F. Supp. 3d 1233, 1241 (N.D. Fla. 2015) (the "key question" in assessing liability under § 1681i(a)(5)(B) is "whether a CRA has put back into a consumer's file information—from whatever source and in whatever form—that the consumer previous disputed"); *Spector v. Trans Union LLC First USA Bank, N.A.*, 301 F. Supp. 2d 231, 235–36 (D. Conn. 2004) (denying summary judgment for defendant CRAs when a second furnisher reported an inaccurate account that had been deleted by a first furnisher, given that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:25-cv-00024-MWC-DFM                                          Date: May 5, 2025

Title   Consumer Financial Protection Bureau v. Experian Information Solutions, Inc.

account numbers were the same and the CRA was aware that the original furnisher sold its accounts to the second furnisher). The Bureau alleges that Experian "improperly reinserts tradelines into consumer reports due to its practice of not attempting to match newly reported tradelines to tradelines that were previously deleted as a result of a dispute if the subsequent furnishing was from a new furnisher." *Compl.* ¶ 164; *see also id.* ¶ 141 ("Because Experian does not prevent new furnishers from reinserting tradelines that Experian had deleted in response to a consumer dispute, Experian fails to maintain reasonable procedures to prevent reinsertion of previously deleted information."). The Court finds that whether Experian engages in such an "unfair" practice (e.g., whether Experian experienced any difficulties in matching tradelines that might render Experian's conduct reasonable) is not an issue to be solved at this juncture.

Experian maintains a similar argument as to its online dispute handling practices in Count X, but it fails to point to supporting authority. *See Mot.* 13:10–16; *Reply* 12:14–15. Experian falls back on the argument that there is authority requiring CRAs to code disputes in a certain way. *Mot.* 13:10–16. The Court reiterates that there is a sufficient standard under the CFPA and, as alleged, the Court construes Experian's conduct to fall within the statute.

Accordingly, the Court **DENIES** Experian's motion to dismiss for lack of fair notice.

C.   Leave to Amend

Whether to grant leave to amend rests in the sound discretion of the trial court. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Courts consider whether leave to amend would cause undue delay or prejudice to the opposing party, and whether granting leave to amend would be futile. *See Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996). Generally, dismissal without leave to amend is improper "unless it is clear that the complaint could not be saved by any amendment." *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003). The Court finds no undue delay or prejudice, and it is not obvious that the Bureau's claims will necessarily be futile. Accordingly, the Court will allow leave to amend.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No. 8:25-cv-00024-MWC-DFM | Date: May 5, 2025 |
| Title | Consumer Financial Protection Bureau v. Experian Information Solutions, Inc. |

III.  Conclusion

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Experian's motion to dismiss as follows:

- The Court **GRANTS WITHOUT PREJUDICE** Experian's motion to dismiss as to the Discrete Period (i.e., Counts I, IV, and VI) based on untimeliness, but **DENIES** Experian's motion to dismiss as to the Ongoing Violations (i.e., Counts II, III, V, and VII–XIII).

- The Court **DENIES** Experian's motion to dismiss the FCRA claims.

- The Court **GRANTS** Experian's motion to dismiss Counts X and XI for failure to plead a substantial injury as required but **DENIES** the motion as to Count XII.  The Court further **DENIES** the motion as it relates to fair notice.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| **Initials of Preparer** | TJ |