Max Weinstein, Mass. Bar No. 600982
Admitted *Pro Hac Vice*
Email: max.weinstein@cfpb.gov
CONSUMER FINANCIAL
PROTECTION BUREAU
1700 G Street, NW
Washington, DC 20552
Phone: 202-435-9172
Fax: (202) 435-5468

Colin Hector, Cal. Bar No. 281795
Email: colin.hector@cfpb.gov
CONSUMER FINANCIAL
PROTECTION BUREAU
301 Howard Street, Ste. 1200
San Francisco, CA 94105
Phone: (681) 326-7093
Fax: (202) 435-5477

*Attorneys for Plaintiff*
*Consumer Financial Protection Bureau*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| Consumer Financial Protection Bureau,<br><br>*Plaintiff*,<br><br>v.<br><br>Experian Information Solutions, Inc.,<br><br>*Defendant*. | Case Number:<br>8:25−cv−00024−MWC−DFM<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTIONS TO PARTIALLY DISMISS THE AMENDED COMPLAINT AND TO STRIKE**<br><br>Judge: Hon. Michelle Williams Court<br>Hearing Date: August 1, 2025<br>Time: 1:30 PM PST<br>Courtroom: 6A |

# TABLE OF CONTENTS

I. LEGAL STANDARD ................................................................................... 1

II. BACKGROUND ......................................................................................... 2

III. ARGUMENT ............................................................................................... 4

    A. EIS's Motion Does Not Satisfy the Standard for Dismissal Under Rule 12(b)(6). ....................................................................................... 4

        1. The Discrete Claims Are Facially Sufficient. ......................... 4

        2. EIS's Motion Seeks Determination of Disputed Facts and Inferences in its Favor, and Makes Factual Claims Outside the Pleadings. ............................................................................ 6

    B. Adjudicating the Factual and Legal Issues Raised in EIS's Motion Requires Conversion to a Summary Judgment Motion. ................... 7

    C. Alternatively, the Court Should Permit the Bureau to Amend its Complaint, Because Amending the Pleading Would Not Be Futile. 8

        1. Federal Common Law Applies to the Fourth Tolling Agreement. ............................................................................. 10

        2. Federal Common Law Provides for Reformation of Contracts in Cases of Mutual Mistake. .................................................. 10

        3. EIS's Reliance on *United States v. FedEx Corp.* Is Misplaced. .............................................................................. 11

    D. The Court Should Not Strike Allegations Regarding the Tolling Agreements. ..................................................................................... 12

IV. CONCLUSION ........................................................................................ 13

## TABLE OF AUTHORITIES

### CASES

*ASARCO, LLC v. Union Pac. R.R. Co.*,
   765 F.3d 999 (9th Cir. 2014)..................................................................6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................2

*Caliber One Indem. Co. v. Wade Cook Fin. Corp.*,
   491 F.3d 1079 (9th Cir. 2007)...............................................................11

*Caviness v. Horizon Cmty. Learning Ctr., Inc.*,
   590 F.3d 806 (9th Cir. 2010)..................................................................2

*Certified Nutraceuticals, Inc. v. Clorox Co.*,
   No. 18-CV-0744 W (KSC), 2018 WL 4628364 (S.D. Cal. Sept. 27, 2018).....2

*Chaly-Garcia v United States*,
   508 F.3d 1201 (9th Cir 2007)................................................................10

*Chicago & N.W. Ry. Co. v. United States*,
   68 Ct. Cl. 524 (1929) ............................................................................12

*Consumer Fin. Prot. Bureau v. Nationwide Biweekly Admin., Inc.*,
   No. 15-cv-02106-RS, 2017 WL 3948396 (N.D. Cal. Sept. 8, 2017) ...............5

*FDIC v. GB Escrow, Inc.*,
   No. CV 11-05318 ODW (JCG), 2011 WL 4550831 (C.D. Cal. Sept. 28, 2011)2

*FDIC v. Kime*,
   12 F. Supp. 3d 1113 (S.D. Ind. 2014) ...................................................7

*Fraass Surgical Mfg. Co. v. United States*,
   571 F. 2d 34 (Ct. Cl. 1978) ..................................................................12

*Gabelli v. S.E.C.*,
   568 U.S. 442 (2013)................................................................................5

*Gayle Mfg. Co. v. Fed. Sav. & Loan Ins. Corp.*,
   910 F.2d 574 (9th Cir. 1990).................................................................10

*Jackson v. Carey*,
   353 F.3d 750 (9th Cir. 2003)..................................................................8

*Klamath Water Users Protective Ass'n v. Patterson*,
   204 F.3d 1206 (9th Cir. 1999)..............................................................10

*Lazar v. Trans Union, LLC*,
   195 F.R.D. 665 (C.D. Cal. 2000) ...........................................................2

*LSO, Ltd. v. Stroh*,
   205 F.3d 1146 (9th Cir. 2000) .................................................................. 2

*Morning Star Packing Co., L.P. v. Crown Cork & Seal Co. (USA)*,
   303 F. App'x 399 (9th Cir. 2008) ............................................................ 10

*Scott v. Kuhlmann*,
   746 F.2d 1377 (9th Cir. 1984) .................................................................. 6

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) .................................................................. 2

*Turner v. City & Cnty. of San Francisco*,
   788 F.3d 1206 (9th Cir. 2015) .................................................................. 2

*United States v. FedEx Corp.*,
   No. C14-00380 CRB, 2016 WL 1070653 (N.D. Cal. Mar. 18, 2016) ...... 11, 12

*United States v. Segal*,
   938 F.3d 898 (7th Cir. 2019) .................................................................. 10

*Wallach v. Eaton Corp.*,
   837 F.3d 356 (3d Cir. 2016) .................................................................. 11

*Westdale Nw. Ctr., LP v. United States*,
   154 Fed. Cl. 557 (2021) .......................................................................... 12

*World Chess Museum, Inc. v. World Chess Fed'n, Inc.*,
   No. 2:13-CV-00345-RCJ, 2013 WL 5663091 (D. Nev. Oct. 15, 2013) ........ 6

**STATUTES**

12 U.S.C. § 5564 ............................................................................................ 6

15 U.S.C. § 1681 ............................................................................................ 3

**RULES**

Fed. R. Civ. P. 12(b)(6) ............................................................................. 1, 7

Fed. R. Civ. P. 12(d) .................................................................................. 2, 7

Fed. R. Civ. P. 12(f) ............................................................................ 2, 4, 12

**OTHER AUTHORITIES**

27 Richard A. Lord, Williston on Contracts § 70:9 (4th ed. 2025) ................ 9

Restatement (Second) of Contracts § 155 (Am. L. Inst. 1981) .................... 11

In Counts V, VI, and VII of its First Amended Complaint, Plaintiff Consumer Financial Protection Bureau (the "Bureau" or "Plaintiff") pleads that Defendant Experian Information Solutions, Inc. ("EIS" or "Defendant") violated the Fair Credit Reporting Act (the "FCRA") during a discrete time period between 2018 and 2021 (the "Discrete Violations"). This Court has already held that all the Discrete Violations state valid claims for violations of the FCRA. ECF No. 33. Moreover, the Bureau in its First Amended Complaint has alleged that EIS, by a series of four tolling agreements, extended the statute of limitations applicable to all of the Bureau's claims by 554 days. All of the Discrete Violations are therefore timely and sufficient on the face of the First Amended Complaint.

EIS nonetheless attempts to litigate, on this motion to dismiss, the supposed insufficiency of a tolling agreement signed by its own counsel, who now claims it does not bind EIS because it names EIS's parent corporation. In seeking immediate relief on this affirmative defense, EIS introduces factual allegations outside the pleadings and resorts to inapplicable state law. Because EIS's motion to dismiss fails to meet the standards of Rule 12(b)(6), it should be denied.

If the Court chooses to resolve the factual issues raised by EIS's argument, the motion must be converted to one for summary judgment, affording both parties the opportunity to assert relevant facts outside the four corners of the First Amended Complaint, as further set out below. Alternatively, if the Court deems further allegations necessary at the pleadings stage, the Bureau seeks the opportunity to amend the complaint to state these additional facts in a revised pleading. And no part of the First Amended Complaint should be struck. The Court should deny EIS's Motions to Partially Dismiss the Amended Complaint and to Strike. ECF No. 47.

## I. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[D]etailed factual allegations that go well beyond reciting the elements of a claim … are neither 'bald' nor 'conclusory,' and hence are entitled to the presumption of truth." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turner v. City & Cnty. of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015). Finally, on a Rule 12(b)(6) motion to dismiss, a court "must accept all factual allegations of the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1150 n. 2 (9th Cir. 2000). "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Moreover, the Federal Rules provide that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike are generally disfavored and are 'usually . . . denied unless the allegations in the pleading have no possible relation to the controversy, and may cause prejudice to one of the parties.'" *Certified Nutraceuticals, Inc. v. Clorox Co.*, No. 18-CV-0744 W (KSC), 2018 WL 4628364, at *2 (S.D. Cal. Sept. 27, 2018). Moreover, "[w]hen ruling on a motion to strike, the Court must view the challenged pleadings in the light most favorable to the pleader." *FDIC v. GB Escrow, Inc.*, No. CV 11-05318 ODW (JCG), 2011 WL 4550831, at *2 (C.D. Cal. Sept. 28, 2011) (citing *Lazar v. Trans Union, LLC*, 195 F.R.D. 665, 669 (C.D. Cal. 2000)).

## II. BACKGROUND

In its First Amended Complaint, the Bureau pleads that the parties executed

1   four separate tolling agreements on January 27, 2022, June 13, 2022, February 13,
2   2023, and July 26 and 29, 2024, respectively (the "First Tolling Agreement,"
3   "Second Tolling Agreement," "Third Tolling Agreement," and "Fourth Tolling
4   Agreement," respectively). ECF No. 44, First Am. Compl. at ¶ 108. The First
5   Tolling Agreement named EIS as a party:
6         This Agreement is entered into effective January 27, 2022 ("Effective
7         Date"), by the Consumer Financial Protection Bureau ("the Bureau")
8         and Experian Holdings, Inc. and Experian Information Solutions, Inc.
9         ("Experian") (jointly referred to hereinafter as "the Parties").
10  Weinstein Decl. at ¶ 16; Exhibit H at 1. Counsel for EIS and Experian Holdings,
11  Inc. ("Holdings") executed the agreement on a signature line that read "Experian
12  Holdings, Inc. and Experian Information Solutions, Inc. By Lucy Morris, Esq.,
13  Hudson Cook LLP, Counsel to Experian Holdings, Inc." Weinstein Decl. at ¶ 19;
14  Exhibit H at 2.
15        The First Tolling Agreement suspended the statute of limitations from
16  December 3, 2021 to May 3, 2022 "for any cause of action or related claim or
17  remedy that could be brought against Experian by the Bureau arising from the
18  Bureau's Investigation." Exhibit H at ¶ 1. The agreement defined the "Bureau's
19  Investigation" as "an investigation to determine whether there were violations of
20  Sections 605B, 607, and 611 of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681c–
21  2, 1681e, 1681i." *Id.*
22        The Second, Third, and Fourth Tolling Agreements, unlike the First Tolling
23  Agreement, included only "Experian Holdings, Inc." and not "Experian
24  Information Solutions, Inc." in the description of the parties and in the signature
25  line. Weinstein Decl. at ¶¶ 25, 37 and 40; citing Exhibits N, W, and Z. The
26  agreements are otherwise similar, retaining the description of the claims tolled and
27  of the Bureau's investigation from the First Tolling Agreement. The Fourth Tolling
28  Agreement "replaced and superseded" the prior three agreements Exhibit Z, Fourth

Tolling Agreement at 1. None of the latter agreements explain or acknowledge the omission of EIS, a point counsel for EIS first raised with the Bureau on June 10, 2025.[1] Weinstein Decl. at ¶¶ 46-47.

### III.    ARGUMENT

The Bureau's argument proceeds in four parts. First, the Court should deny EIS's Motion to Partially Dismiss the Amended Complaint because the Bureau's claims are timely on the face of the First Amended Complaint, and at this stage the Court need not adjudicate any of EIS's affirmative defenses nor resolve factual disputes. Second, if the Court is inclined to adjudicate the merits of EIS's affirmative defense at this stage, the Court should convert EIS's motion to one for summary judgment and afford both parties notice and the opportunity to supporting evidence, including evidence showing that the parties intended the cited tolling agreement to apply to EIS and that, under federal law common law, which applies to contracts with federal agencies, equity requires reformation on the grounds of mutual mistake. Third, if the Court finds that the Bureau's factual allegations in the First Amended Complaint are lacking, it should grant the Bureau leave to amend. And finally, the Court should deny EIS's Motion to Strike pursuant to Federal Rule 12(f).

**A.    EIS's Motion Does Not Satisfy the Standard for Dismissal Under Rule 12(b)(6).**

**1.    The Discrete Claims Are Facially Sufficient.**

Counts V, VI, and VII of the First Amended Complaint are sufficient on their

---

[1] EIS argues that the Bureau has "effectively conceded" that its "claims must be dismissed" because it did not take a position in response to this argument when EIS first raised it during the meet and confer process in June 2025 before filing its motion to dismiss. ECF 47-3 at 1, n. 2. Although the Bureau engaged in this meet and confer telephone process in good faith, the Bureau made no concessions and is not required, as the non-moving party, by any rule or precedent to state a position in advance of a motion being filed on pain of dismissal of its case. Unsurprisingly, EIS cites no authority for its argument, and it cannot do so because it is incorrect.

face, and there is nothing on the face of the pleading suggesting they are untimely. As the Court held in its Order on EIS's first Motion to Dismiss, the Discrete Violations (previously numbered Counts I, IV, and VI) all state a claim for violations of the FCRA. In the First Amended Complaint, the Bureau alleges that it discovered those violations no earlier than February 1, 2021, First Am. Compl. ¶ 107. EIS repeatedly misstates this allegation of the First Amended Complaint, claiming that "[b]y the Bureau's own allegations, it discovered these claims on February 1, 2021." ECF No. 47-3 at 5. In fact, the Bureau alleged that it "did not possess facts sufficient to establish the [discrete] violations described in paragraphs 101-106 and did not discover those violations prior to the Bureau's supervisory examination of Experian that commenced on February 1, 2021." First Am. Compl. ¶ 107. Hence, the Bureau did <u>not</u> allege that it discovered the Discrete Violations, or any violations, on February 1, 2021.[2]

The Bureau further alleges, for each of the Discrete Violations, that the statute of limitations:

> was suspended (1) from December 3, 2021 through and including January 31, 2023 and (2) from July 26, 2024 through and including December 1, 2024, pursuant to the Fourth Tolling Agreement.

---

[2] In *Gabelli v. S.E.C.*, the Supreme Court reflected on the difficulty of determining the date an agency discovered a legal violation:
> Determining when the Government, as opposed to an individual, knew or reasonably should have known of a fraud presents particular challenges for the courts. Agencies often have hundreds of employees, dozens of offices, and several levels of leadership. In such a case, when does "the Government" know of a violation? Who is the relevant actor?

*Gabelli v. S.E.C.*, 568 U.S. 442, 452 (2013). Receipt of a consumer complaint, for instance, does constitute discovery of a violation. *Consumer Fin. Prot. Bureau v. Nationwide Biweekly Admin., Inc.*, No. 15-cv-02106-RS, 2017 WL 3948396, at *10 (N.D. Cal. Sept. 8, 2017) ("The notion that mere receipt of a consumer complaint can trigger the statute of limitations as against CFPB is unsupported by any authority and would be unworkable."), *vacated and remanded*, No. 18-15431, 2023 WL 566112 (9th Cir. Jan. 27, 2023), *aff'd as modified*, No. 15-cv-02106-RS, 2024 WL 3991252 (N.D. Cal. Aug. 28, 2024).

First Am. Compl. at ¶¶ 139, 144, 149. These tolled periods add 554 days to the Bureau's three-year statute of limitations,³ such that claims based on violations discovered as early as February 1, 2021, would be timely filed as late as August 8, 2025. Accordingly, there is no indication that the Discrete Violations are untimely on the face of the First Amended Complaint. Because the Bureau has pleaded that the Tolling Agreements are applicable, and that allegation should be taken as true, the Court may reject EIS's motion for this reason alone, as "[d]ismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint." *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014).

### 2. EIS's Motion Seeks Determination of Disputed Facts and Inferences in its Favor, and Makes Factual Claims Outside the Pleadings.

EIS asks the Court to go beyond the pleadings and reject the Bureau's allegation that the Fourth Tolling Agreement applies to the Discrete Violations. In so doing, EIS is asking the Court either to resolve a disputed issue of fact in its favor or to draw an inference in its own favor. Neither is appropriate at the motion to dismiss stage. *See, e.g.*, *World Chess Museum, Inc. v. World Chess Fed'n, Inc.*, No. 2:13-CV-00345-RCJ, 2013 WL 5663091, at *2 (D. Nev. Oct. 15, 2013) ("[A] motion to dismiss under Rule 12(b)(6) cannot be granted based upon an affirmative defense unless that 'defense raises no disputed issues of fact.'") (quoting *Scott v. Kuhlmann,* 746 F.2d 1377, 1378 (9th Cir. 1984)). Disputes about tolling agreements are ill-suited to disposition at this stage, because, as here, "[t]he enforceability of the Tolling Agreement raises a factual inquiry whose resolution is inappropriate on a motion to dismiss." *FDIC v. Kime*, 12 F. Supp. 3d 1113, 1118

---

³ The CFPA states that an action may be brought up to "3 years after the date of discovery of the violation." 12 U.S.C. § 5564 (g)(1).

n.1 (S.D. Ind. 2014). The central factual inquiry here is whether the parties intended the Fourth Tolling Agreement to apply to EIS but omitted EIS's name through mutual mistake. This factual dispute cannot be resolved at this stage.

Relatedly, EIS asks the Court to consider the Fourth Tolling Agreement in isolation and to draw inferences in favor of EIS based on that selective record, ignoring the history and context of the parties' agreements, including the three preceding tolling agreements.

In seeking a factual determination in its favor, EIS asks this Court to consider at least one factual assertion that is not properly before the Court on a Rule 12(b)(6) motion. EIS notes on multiple occasions that the Bureau was "the drafter" of the Fourth Tolling Agreement, a fact which is not reflected in the First Amended Complaint or in any of the four tolling agreements. ECF No. 47-3 at 1, 4. EIS leans heavily on this point in arguing for its interpretation of the document, stating that the Bureau "chose" the language in the agreement and failed to "check its work." *Id.* at 1-2. EIS's reliance on a fact outside the pleading, as well its attempt to cherry-pick one document out of a series of relevant documents referenced in the complaint, illustrates that Defendant's arguments exceed the scope of a motion to dismiss.

**B.     Adjudicating the Factual and Legal Issues Raised in EIS's Motion Requires Conversion to a Summary Judgment Motion.**

If the Court elects to adjudicate the merits of EIS's affirmative defense at this stage in the proceedings, the Federal Rules require conversion of EIS's Motion to Partially Dismiss the Amended Complaint into a motion for summary judgment, for which both parties should have the opportunity to submit evidence for the Court's consideration. *See* Fed. R. Civ. P. 12(d) ("If . . . matters outside the pleadings are presented to and not excluded by the court, . . . [a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."). Noticing the motion as one for summary judgment would allow the

Bureau to gather and provide supporting evidence to oppose EIS's motion, including evidence showing that the parties intended the cited tolling agreement to apply to EIS and that equity requires reformation on the grounds of mutual mistake.

Specifically, the Bureau should have the opportunity to submit for the Court's consideration the factual matters and exhibits referenced in the Declaration of Max Weinstein submitted in support of this opposition and described in Section C below. This additional factual record would enable the Bureau to address the merits of EIS's motion.

### C. Alternatively, the Court Should Permit the Bureau to Amend its Complaint, Because Amending the Pleading Would Not Be Futile.

If the Court finds that the First Amended Complaint does not sufficiently plead that Counts V, VI, and VII are timely, the Court should permit the Bureau to amend its complaint to plead additional facts demonstrating that the parties intended to toll claims against EIS. *See Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) (dismissal without leave to amend is improper "unless it is clear that the complaint could not be saved by any amendment").

As set forth in the Declaration of Max Weinstein, the Bureau has a sufficient basis to plead the following facts:

- On October 29, 2021, the Bureau issued a civil investigative demand to Holdings (the "First CID"). Weinstein Decl. at ¶ 2.
- ██████████████████████████████████████████████

8

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

- ███████████████████████████████████████
  ███████████████████████████████████████
  ███████████████████████████████

- The First Tolling Agreement explicitly named both Holdings and EIS as parties. Weinstein Decl. at ¶ 17; Exhibit H at 2.

- ███████████████████████████████████████
  ████████████████████████████

- Counsel for the Bureau and counsel representing both EIS and Holdings subsequently entered into three additional tolling agreements (the Second, Third, and Fourth Tolling Agreements), ████████████████████
  ███████████████████████████████████████
  ████████████████████████████████.

- The Second, Third, and Fourth Tolling Agreements listed Holdings, but not EIS.

- ███████████████████████████████████████
  ███████████████████████████████████████
  ██████████████████████████████ Counsel

for EIS first raised the issue with counsel for the Bureau on June 10, 2025. These facts, when established, would demonstrate that the omission of EIS from the Fourth Tolling Agreement was a mutual mistake that warrants reformation.

---

[4] The Bureau has no reason to believe that counsel for EIS noticed the omission of EIS from the Second, Third, and Fourth Agreements at the time but failed to alert counsel for the Bureau. But reformation would be appropriate in either scenario. *See* 27 Richard A. Lord, Williston on Contracts § 70:9 (4th ed. 2025) ("[W]hen the mistake of one party, with respect to the meaning of some material provision of the signed contract, is accompanied not only by the other party's knowledge but, also, by that other party's silence, this is treated as the equivalent of a mutual mistake and equity will reform that instrument.").

### 1. Federal Common Law Applies to the Fourth Tolling Agreement.

Tolling agreements are governed by contract law, which "has long recognized that it is unjust to permit either party to a transaction, in which both are laboring under the same mistake, to take advantage of the other when the truth is known" *Gayle Mfg. Co. v. Fed. Sav. & Loan Ins. Corp.*, 910 F.2d 574, 582 (9th Cir. 1990).

As a threshold matter, tolling agreements with federal executive branch agencies are governed by federal common law, not by state law. *See Chaly-Garcia v United States*, 508 F.3d 1201, 1203 (9th Cir 2007) ("Contracts with the United States are governed by federal law"); *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999) ("Federal law controls the interpretation of a contract entered pursuant to federal law when the United States is a party"); *United States v. Segal*, 938 F.3d 898, 904 n.3 (7th Cir. 2019) ("[T]he federal common law of contracts should apply to this contract with the United States government).

EIS's reliance on *Morning Star Packing Co., L.P. v. Crown Cork & Seal Co. (USA)*, 303 F. App'x 399 (9th Cir. 2008), is therefore misplaced. *Morning Star* explicitly held that it was bound by California precedent governing reformation from over a century ago and questioned the wisdom of that precedent. *Id.* at 401, n.1 ("Perhaps the law should now be otherwise, but the holding is both clear and applicable. We must leave it to the California Supreme Court to dispatch its own opinion to the dustbin of legal history, if it is so minded."). Federal common law, not California law, applies to the Tolling Agreements.

### 2. Federal Common Law Provides for Reformation of Contracts in Cases of Mutual Mistake.

Under federal common law, reformation of a contract is appropriate where parties make a mutual mistake as to its contents. Courts have typically "looked to

10

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

the Restatement in the past when applying the federal common law of contracts." *Wallach v. Eaton Corp.*, 837 F.3d 356, 367 (3d Cir. 2016). The Restatement of Contracts "was designed to serve as prima facie a correct statement of what may be termed the general common law of the United States." *Id.* (citation omitted).

> The Restatement provides that:
> Where a writing that evidences or embodies an agreement in whole or in part fails to express the agreement because of a mistake of both parties as to the contents or effect of the writing, the court may at the request of a party reform the writing to express the agreement, except to the extent that rights of third parties such as good faith purchasers for value will be unfairly affected.

Restatement (Second) of Contracts § 155 (Am. L. Inst. 1981). The commentary further explains that "[t]he province of reformation is to make a writing express the agreement that the parties intended it should." *Id.* § 155 cmt. a; *see also Caliber One Indem. Co. v. Wade Cook Fin. Corp.*, 491 F.3d 1079, 1083 (9th Cir. 2007) ("Negligence in failing to observe that a writing does not express what has been assented to 'is not a bar to reformation of a contract when the reformation claim is based upon mutual ... mistake.'") (citation omitted).

### 3. EIS's Reliance on *United States v. FedEx Corp.* Is Misplaced.

EIS relies at length on a criminal case, *United States v. FedEx Corp.*, No. C14-00380 CRB, 2016 WL 1070653 (N.D. Cal. Mar. 18, 2016), for the proposition that a tolling agreement cannot be reformed. This case is inapplicable. *FedEx Corp.* does not concern section 155 of the Restatement, governing a mutual misunderstanding of the contents of a document, but instead applies section 166 of the Restatement relating to when reformation may be available because one party misrepresented the terms or effect of the contract. *FedEx*, 2016 WL 1070653 at *4.

Moreover, if permitted to amend its pleadings, the Bureau is prepared to allege that unlike in *FedEx,* where the defendant did not know which FedEx

11

entities the government intended to investigate, the parties in this matter all understood at the time of the Second, Third, and Fourth Tolling Agreements that the Bureau was exclusively investigating EIS and that EIS sought the tolling agreements to provide additional time to respond to the Bureau's demands. Where the parties both fail to notice an error[5] in an agreement with a federal agency, courts have found that reformation is appropriate. *See, e.g.*, *Westdale Nw. Ctr., LP v. United States*, 154 Fed. Cl. 557, 584 (2021) ("GSA's failure to draft the lease correctly or to proofread it with care does not necessarily present appropriate circumstances under which the Court would allocate risk to GSA.") Indeed, even failing to read a contract does not necessarily preclude reformation, because "the gravamen of the reformation inquiry is whether the document reflects the agreement actually reached by the parties." *Fraass Surgical Mfg. Co. v. United States*, 571 F. 2d 34, 37-38 (Ct. Cl. 1978) (citing *Chicago & N.W. Ry. Co. v. United States*, 68 Ct. Cl. 524, 538 (1929)).

In sum, amending the pleadings to allow the Bureau to assert facts showing mutual mistake would not be futile, because applicable federal law permits the Court to reform the agreement to reflect the parties' actual intent.

### D. The Court Should Not Strike Allegations Regarding the Tolling Agreements.

The Court should not strike from the First Amended Complaint any allegations regarding the tolling agreements, since they are not "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). In the First Amended Complaint, the Bureau quotes verbatim from the Fourth Tolling Agreement and separately alleges that the toll set forth in that

---

[5] Although *FedEx* does not consider and does not apply the Restatement section relating to a mutual mistake, *FedEx* suggests that, under the Restatement, a unilateral mistake may *also* support reformation in the event that a party's mistake is "known or suspected." *FedEx*, 2016 WL 1070653 at *4.

agreement applies to each of the Bureau's claims against EIS. As described above, the Bureau has a factual basis to allege that the toll applied to EIS, namely, that the parties' joint understanding was that the toll applied to Experian Information Systems, and that the scrivener's error in the agreement was a mutual mistake. The Bureau's allegations about the tolling agreement are plainly material to EIS's statute of limitations affirmative defense. Moreover, EIS has not met its burden to show that these allegations are redundant, impertinent, or scandalous. They are not, and should not be stricken.

## IV.   CONCLUSION

For the foregoing reasons, EIS's motions to partially dismiss the First Amended Complaint and to strike should be denied.

Dated: July 11, 2025

Respectfully submitted,

*/s/ Max Weinstein*

Max Weinstein
Email: max.weinstein@cfpb.gov
CONSUMER FINANCIAL PROTECTION BUREAU
1700 G Street, NW
Washington, DC 20552
Phone: 202-435-9172
Fax: (202) 435-5468

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for the Consumer Financial Protection Bureau certifies that this brief contains 4,180 words, which complies with the word limit of L.R. 11-6.1.

Dated: July 11, 2025

Respectfully submitted,
*/s/ Max Weinstein*
Max Weinstein
Email: max.weinstein@cfpb.gov
CONSUMER FINANCIAL
PROTECTION BUREAU
1700 G Street, NW
Washington, DC 20552
Phone: 202-435-9172
Fax: (202) 435-5468