Richard J. Grabowski (State Bar No. 125666)
rgrabowski@jonesday.com
John A. Vogt (State Bar No. 198677)
javogt@jonesday.com
Ryan D. Ball (State Bar No. 321773)
rball@jonesday.com
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612
(T) 949-851-3939
(F) 949-553-7539

Attorneys for Defendant
Experian Information Solutions, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CONSUMER FINANCIAL PROTECTION BUREAU,

Plaintiff,

v.

EXPERIAN INFORMATION SOLUTIONS, INC.,

Defendant.

Case No. 8:25-cv-00024-MWC-DFM

**DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S REPLY TO PLAINTIFF'S OPPOSITION TO ITS PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINT AND MOTION TO STRIKE**

Date: August 8, 2025
Time: 1:30 p.m.
Place: Courtroom 6A

# TABLE OF CONTENTS

**Page**


INTRODUCTION ........................................................................ 1

ARGUMENT ............................................................................. 2

I. The Bureau's Opposition Is Procedurally Defective ........................... 2

II. The Bureau's Opposition Is Substantively Defective .......................... 4

A. The Discrete Violations Are Untimely On Their Face ........................... 4

B. This Is Not A Summary Judgment Motion ........................................ 5

C. Further Amendment Would Be Futile ............................................ 8

i There Was No Mutual Mistake ..................................................... 8

ii The Fourth Tolling Agreement Cannot Be Reformed To Add EIS .................. 10

CONCLUSION ........................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*American Home Ins. Co. v. Travelers Indemnity Co.*,
122 Cal.App.3d 951 (1981) ... 11

*Bank Hapoalim B.M. v. Bank of Am. Corp.*,
2012 WL 6814194 (C.D. Cal. Dec. 21, 2012) ... 8

*Barnes v. Campbell Soup Co.*,
2013 WL 5530017 (N.D. Cal. July 25, 2013) ... 7

*Broam v. Bogan*,
320 F.3d 1023 (9th Cir. 2003) ... 7

*Campos v. Greentree Mortg. Servs.*,
2013 WL 12142540 (C.D. Cal. Dec. 11, 2013) ... 4

*Commodity Futures Trading Comm'n v. Red Rock Secured, LLC*,
2023 WL 6173480 (C.D. Cal. Aug. 18, 2023) ... 4

*Fisher v. Nissel*,
2022 WL 16961479 (C.D. Cal. Aug. 15, 2022) ... 7

*Gabelli v. S.E.C.*,
568 U.S. 442 (2013) ... 10

*Hartford Cas. Ins. Co. v. Fireman's Fund Ins. Co.*,
2015 WL 6664840 (N.D. Cal. Nov. 2, 2015) ... 9

*IGOLF, Inc. v. Bushnell Holdings, Inc.*,
2025 WL 875913 (S.D. Cal. Mar. 4, 2025) ... 5

*Kaiju Sushi Corp. v. Pac. Emps. Ins. Co.*,
2022 WL 4299583 (C.D. Cal. Aug. 18, 2022) ... 8

*Kidstar v. Facebook Inc.*,
2021 WL 1110227 (N.D. Cal. Mar. 23, 2021) .......... 6

*Kingston Trio Artists, LLC v. Strong*,
2020 WL 4018812 .......... 3

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) .......... 4

*Lee v. Nationstar Mortg. LLC*,
2019 WL 3521626 (Bankr. D. Or. Aug. 1, 2019) .......... 6

*Lemoge Electric v. County of San Mateo*,
46 Cal.2d 659 (1956) .......... 11

*Monaco v. Bear Stearns Companies, Inc.*,
2011 WL 4059801 (C.D. Cal. Sept. 12, 2011) .......... 11

*Monsivais v. Alhambra Unified Sch. Dist.*,
2023 WL 11999183 (C.D. Cal. Dec. 5, 2023) .......... 3

*Morning Star Packing Co., L.P. v. Crown Cork & Seal Co. (USA)*,
303 F. App'x 399 (9th Cir. 2008) .......... 10, 12

*Novoa v. GEO Grp., Inc.*,
2022 WL 2189626 (C.D. Cal. Jan. 25, 2022) .......... 11

*Pauma Band of Luiseno Mission Indians of Pauma & Yuima Rsrv. v. California*,
813 F.3d 1155 (9th Cir. 2015) .......... 11

*Shupe v. Nelson*,
254 Cal.App.2d 693 (1967) .......... 11

*Singelyn v. PNC Bank, Nat'l Ass'n*,
2024 WL 3550486 (C.D. Cal. Apr. 17, 2024) .......... 7

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998) .......... 5

*Superbalife Int'l v. Powerpay*,
2008 WL 4559752 (C.D. Cal. Oct. 7, 2008) .......................................................... 4

*Toyo Tire Holdings of Americas Inc. v. Ameri & Partners, Inc.*,
753 F. Supp. 3d 966 (C.D. Cal. 2024) ................................................................ 4

*United States v. FedEx Corp.*,
2016 WL 1070653 (N.D. Cal. Mar. 18, 2016) .................................................. 9, 10

*United States v. Lo*,
839 F.3d 777 (9th Cir. 2016) ............................................................................ 10

*Vasiunkina v. United States Citizenship & Immigr. Servs.*,
2025 WL 1194497 (C.D. Cal. Feb. 13, 2025) ........................................................ 6

*Zackaria v. Wal-Mart Stores, Inc.*,
142 F. Supp. 3d 949 (C.D. Cal. 2015) ............................................................... 10

*Zahedi v. Liberty Mut. Ins.*,
2025 WL 1823305 (C.D. Cal. July 1, 2025) .......................................................... 3

## INTRODUCTION

The Bureau does not (and cannot) dispute that its claims are time-barred absent tolling.[1] Nor does the Bureau dispute that the Fourth Tolling Agreement—the sole basis on which the Bureau alleges the Discrete Violations are timely—does not name EIS as a party. Nevertheless, the Bureau attempts to save its untimely claims by advancing a hodgepodge of arguments, all of which are directly contrary to Ninth Circuit precedent. The Bureau's arguments must be rejected.

To begin, the Bureau asks this Court to ignore the plain language of the Fourth Tolling Agreement—which is expressly incorporated into the Amended Complaint by reference—and rely instead on its baseless allegations that EIS is a party to that agreement. But the Court is not required to accept allegations that contradict documents incorporated by reference in the complaint. Alternatively, the Bureau asks the Court to somehow transform EIS's motion into one for summary judgment by introducing purported evidence of mutual mistake to justify reforming the Fourth Tolling Agreement. The Bureau does so without pointing to any allegations in the Amended Complaint about mutual mistake, let alone seeking reformation. This is clearly improper. Seemingly recognizing this, the Bureau requests leave to file yet another amended complaint to include such allegations and request for relief. But there is no set of facts that can change the outcome here. There was no mutual mistake and, in any event, the Court is without power to reform the Fourth Tolling Agreement to add EIS as a party.

Accordingly, because EIS is not a party to the Fourth Tolling Agreement, the Discrete Violations—Counts V, VI, and VII—are time-barred and should be dismissed with prejudice.

---

[1] Capitalized terms not defined herein shall be given the same meaning as in EIS's Memorandum of Law In Support of Its Partial Motion to Dismiss, ECF No. 47-3.

# ARGUMENT

## I. The Bureau's Opposition Is Procedurally Defective

To begin, the Bureau simply ignored its meet-and-confer obligations under the Local Rules and this Court's Standing Order. The Bureau openly concedes that "it did not take any position regarding EIS's anticipated motion during the" meet-and-confer process. ECF No. 60-1, ¶ 43. It also does not dispute that EIS thoroughly explained its positions and followed up with a detailed email outlining its forthcoming arguments and authority. *See* ECF No. 47-1. Instead, the Bureau asserts that it "is not required, as the non-moving party, by any rule or precedent to state a position in advance of a motion being filed on pain [sic] of dismissal of its case." ECF No. 60 at 8 n.1. The Bureau is flatly wrong.

Under Local Rule 7-3, "counsel contemplating the filing of any motion must first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution." If no resolution can be reached, "counsel for the moving party must include a declaration . . . that sets forth . . . ***the position of each party with respect to each disputed issue that will be the subject of the motion***." *Id.* (emphasis added). This Court's Standing Order similarly mandates that "[c]ounsel should discuss the issues to a sufficient degree that if a motion is still necessary, the briefing may be directed to those substantive issues requiring resolution by the Court." ECF No. 7 at 4. Unlike EIS, the Bureau failed to satisfy these requirements.

Not only did the Bureau refuse to take a position on EIS's motion, it ambushed EIS with over two dozen exhibits less than 24 hours prior to filing its opposition.[2] Worse, it completely abandoned the only argument it raised during the meet and confer process—*i.e.*, "that a parent corporation could bind a subsidiary, even if the

[2] As EIS has also explained, the Bureau also failed to comply with Local Rule 79-5.2.2(b), which requires a party intending to introduce confidential material designated by another to confer with the other party at least three days prior to filing under seal. *See* ECF No. 61 at 4.

subsidiary was not named or encompassed by the definitions of the parties to the agreement." ECF No. 47-1, ¶ 2. Despite EIS squarely addressing this argument in its motion (as contemplated by this Court's Standing Order), *see* ECF No. 47-3 at 11–12, the Bureau's opposition conspicuously omits any discussion of how Experian Holdings could bind EIS. Instead, the Bureau raises for the first time a number of misguided and faulty arguments, including that Experian could not rely on documents incorporated by reference in the Bureau's Amended Complaint, that on-point authority cited by Experian was inapposite because federal common law is different than California law, and that the Court has the equitable power to reform a contract to add a new or different corporate entity as a party. Had the Bureau raised these arguments during the meet-and-confer process, EIS could have meaningfully addressed and potentially resolved them with the Bureau. At a minimum, it could have further focused its opening motion on the Bureau's newfound positions (again, as contemplated by this Court's Standing Order).

The Bureau's failure to satisfy its meet-and-confer obligations is not trivial. "The meet-and-confer requirements of Local Rule 7-3 are in place for a reason, namely to conserve the resources of the parties and the Court by 'allow[ing] for a possible informal resolution of an issue without court intervention, but also [to] enable the parties to brief the remaining disputes in a thoughtful, concise and useful manner.'" *Kingston Trio Artists, LLC v. Strong*, 2020 WL 4018812, at *2 (C.D. Cal. Jan. 29, 2020) (citation omitted); *see also Zahedi v. Liberty Mut. Ins.*, 2025 WL 1823305, at *5 (C.D. Cal. July 1, 2025) ("The purpose of a meet and confer process is to identify and narrow disputes."); *Monsivais v. Alhambra Unified Sch. Dist.*, 2023 WL 11999183, at *1 (C.D. Cal. Dec. 5, 2023) (noting that the plaintiff's failure to engage in the meet and confer process "deprive[d] the Court of the benefit of the parties' good-faith efforts to resolve or narrow their disputes before a motion is filed"). By refusing to take a position during the meet-and-confer process, and then raising entirely new arguments and exhibits on the eve of filing its opposition, the

Bureau plainly violated the letter and spirt of the Local Rules and this Court's Standing Order. The Court should not excuse this conduct. *See*, *e.g.*, *Superbalife Int'l v. Powerpay*, 2008 WL 4559752, at *2 (C.D. Cal. Oct. 7, 2008) ("[A]bsent any evidence that a party attempted to meet and confer in good faith, this Court is unwilling to excuse noncompliance with the Local Rules."); *Campos v. Greentree Mortg. Servs.*, 2013 WL 12142540, at *1 (C.D. Cal. Dec. 11, 2013) (refusing to consider motion where moving party failed to meet and confer).

## II. <u>The Bureau's Opposition Is Substantively Defective</u>

Even if the Court considers the Bureau's opposition, it does nothing to render the Discrete Violations timely.

### A. The Discrete Violations Are Untimely On Their Face

At the outset, the Bureau asserts that the Court should simply accept its allegations that EIS was a party to the Fourth Tolling Agreement without considering the agreement itself. This borders the absurd.

It is well-settled that the "incorporation by reference" doctrine permits courts to "take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *see also Toyo Tire Holdings of Americas Inc. v. Ameri & Partners, Inc.*, 753 F. Supp. 3d 966, 977 (C.D. Cal. 2024) (explaining that courts can take judicial notice of documents referenced or relied upon in the complaint). That is precisely the case here. The Fourth Tolling Agreement is the Bureau's sole basis for alleging that the Discrete Violations are timely. Am. Compl., ¶¶ 108–09, 139, 144, 148. And the Bureau certainly does not challenge the authenticity of the agreement. As such, the Court can (and should) consider it in resolving this motion. *See Commodity Futures Trading Comm'n v. Red Rock Secured, LLC*, 2023 WL 6173480, at *5 n.3 (C.D. Cal. Aug. 18, 2023) ("Because the Complaint references the Contract extensively, the Contract is incorporated in the Complaint by reference. Therefore, when considering

the merits of a 12(b)(6) motion, the Court is not limited to only those provisions of the Contract that are expressly referenced in the Complaint." (citing *United States v. Ritchie*, 342 F. 3d 903, 908 (9th Cir. 2003))); *IGOLF, Inc. v. Bushnell Holdings, Inc.*, 2025 WL 875913, at *2 (S.D. Cal. Mar. 4, 2025) ("While Plaintiff did not attach the contracts in question to the complaint, they are properly incorporated by reference as they are extensively referenced in the complaint . . . and form the basis of Plaintiff's claims.").

Tellingly, the Bureau does not oppose EIS's request for judicial notice of the Fourth Tolling Agreement. It also does not dispute that the agreement named only Experian Holdings as a party. Nor does it dispute the Fourth Tolling Agreement made no reference to Experian Holdings' parent, affiliates or subsidiaries, let alone mention EIS. Instead, the Bureau argues that the Court should simply ignore the plain language of the Fourth Tolling Agreement because "the Bureau has pleaded that the Tolling Agreements are applicable, and that allegation should be taken as true." ECF No. 60 at 10. But it is black-letter that the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998). "Accordingly, the Court [should] not accept as true [the Bureau's] allegations that [EIS] is a party to the [Fourth Tolling Agreement]." *IGOLF*, 2025 WL 875913, at *2 ("A review of each contract confirms that Vista Outdoors is not a party to any of the contracts. The Court is 'not required to accept as true allegations that contradict exhibits attached to the complaint or matters properly subject to judicial notice." (quoting *Seven Arts Filmed Entertainment, Ltd. v. Content Media Corp., PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013))).

**B. This Is Not A Summary Judgment Motion**

Unable to credibly argue that the Court should ignore the Fourth Tolling Agreement, the Bureau asks this Court to transform EIS's motion into one for summary judgment, arguing that EIS "cherry-pick[ed] one document out of a series

of relevant documents referenced in the complaint." ECF No. 60 at 11. But EIS did no such thing. The Fourth Tolling Agreement is the only document the Bureau relies upon in alleging that the Discrete Violations are timely. Am. Compl., ¶¶ 108–09. Indeed, the Bureau affirmatively alleges that the Fourth Tolling Agreement "replaced and superseded the parties' first, second, and third tolling agreements." *Id.*, ¶ 108. The Court's consideration of the Fourth Tolling Agreement in resolving EIS's motion is therefore entirely proper and does not in any way convert this motion to dismiss into one for summary judgment. *See*, *e.g.*, *Lee v. Nationstar Mortg. LLC*, 2019 WL 3521626, at *1 (Bankr. D. Or. Aug. 1, 2019) ("[T]he Court may consider certain materials outside the pleadings without converting the motion to one for summary judgment, such as 'documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice.'" (quoting *Ritchie*, 342 F.3d at 908)); *Kidstar v. Facebook Inc.*, 2021 WL 1110227, at *2 (N.D. Cal. Mar. 23, 2021) (explaining that a court's consideration of documents incorporated by reference "does not convert a motion to dismiss to one for summary judgment." (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986))).

Nevertheless, the Bureau claims that "it should have the opportunity to submit for the Court's consideration the factual matters and [27] exhibits referenced in the Declaration of Max Weinstein," which purportedly shows that "that the parties intended the cited tolling agreement to apply to EIS and that equity requires reformation on the grounds of mutual mistake." *Id.* at 12. But the Court already rejected this same tactic in adjudicating EIS's initial motion to dismiss. *See* ECF No. 33 at 4 (refusing to accept factual assertions made regarding purported tolling agreements where "[t]he Complaint . . . does not mention the tolling agreements"). Indeed, "[c]ourts regularly decline to consider declarations and exhibits submitted in support of or opposition to a motion to dismiss . . . if they constitute evidence not referenced in the complaint or not a proper subject of judicial notice." *Vasiunkina v. United States Citizenship & Immigr. Servs.*, 2025 WL 1194497, at *5 (C.D. Cal. Feb.

13, 2025) (quoting *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1021 (C.D. Cal. 2015)); *Fisher v. Nissel*, 2022 WL 16961479, at *2 (C.D. Cal. Aug. 15, 2022) (striking declaration in support of plaintiff's opposition to defendant's motion to dismiss); *see also Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may *not look* beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") (emphasis in original). This Court should not reach a different conclusion here.

Simply put, the Bureau does not (and cannot) dispute that the Discrete Violations are facially time-barred unless EIS is a party to the Fourth Tolling Agreement. Based on the Bureau's own allegations and the plain language of the Fourth Tolling Agreement—which was incorporated by reference in the Amended Complaint—there can be no question that EIS was not party to that agreement—it was not named, referenced, or even mentioned in it—and thus the Bureau's claims are untimely.[3] Unable to dispute this, the Bureau's "opposition singularly focuses on [extrinsic] evidence outside the pleadings, which the Court cannot consider in relation to [EIS's] pending motion to dismiss." *Singelyn v. PNC Bank, Nat'l Ass'n*, 2024 WL 3550486, at *3 n.4 (C.D. Cal. Apr. 17, 2024); *see also Barnes v. Campbell Soup Co.*, 2013 WL 5530017, at *2 (N.D. Cal. July 25, 2013) ("Plaintiffs cannot unilaterally use their Opposition as an opportunity to amend and raise new arguments to cure deficiencies in their Complaint."). Accordingly, because EIS was not a party to the Fourth Tolling Agreement—the sole document relied upon by the Bureau to

[3] The Bureau strangely asserts that it "did not allege that it discovered the Discrete Violations, or any violation, on February 1, 2021," arguing that it is difficult to determine "the date an agency discovered a legal violation." ECF No. 60 at 9. But this is the same argument the Bureau advanced and the Court already rejected. The operative inquiry is not when the Bureau *actually* discovered the Discrete Violations, but rather "when the Bureau . . . through reasonable diligence, would have discovered the [Discrete Violations]." ECF No. 33 at 3. By the Bureau's own allegations, the Bureau had "facts sufficient to establish the [Discrete Violations] . . . on February 1, 2021." ECF No. 44, ¶ 107. As such, its claims accrued at that time.

save the Discrete Violations from dismissal—the Court must dismiss those claims.

**C. Further Amendment Would Be Futile**

Recognizing that its allegations are contradicted by the plain language of the Fourth Tolling Agreement and therefore the Discrete Violations are time-barred, the Bureau seeks leave to amend its complaint to allege mutual mistake and seek reformation. ECF No. 60 at 12. But any such amendment would be futile. The declaration and exhibits submitted by the Bureau confirm that no mutual mistake occurred. And, in any event, the Court lacks the authority to reform a contract to add or substitute a party. No additional facts will change this reality. As such, the Discrete Violations should be dismissed with prejudice.

*i* *There Was No Mutual Mistake*

To start, the Bureau cannot plausibly allege a mutual mistake. A mutual mistake occurs "where both parties share the same misconception." *Kaiju Sushi Corp. v. Pac. Emps. Ins. Co.*, 2022 WL 4299583, at *4 (C.D. Cal. Aug. 18, 2022). The Bureau does not (and cannot) meet the "heightened standard" of showing any mistake on the part of Experian Holdings, the only Experian party to the Second, Third, and Fourth Tolling Agreements. *Bank Hapoalim B.M. v. Bank of Am. Corp.*, 2012 WL 6814194, at *2 (C.D. Cal. Dec. 21, 2012). Instead, the Bureau's opposition confirms that the only mistaken party is the Bureau.

To demonstrate a mutual mistake, the Bureau submits the declaration of Max Weinstein, who provides a laundry list of assertions and over two dozen exhibits purportedly showing "that the omission of EIS from the Fourth Tolling Agreement was a mutual mistake that warrants reformation." ECF No. 60. Boiled down, Mr. Weinstein's declaration makes clear that the (1) Bureau knew that Experian Holdings and EIS were separate entities (counsel for Experian repeatedly told the Bureau as much) and (2) nevertheless named only Experian Holdings as a party in the Second, Third, and Fourth Tolling Agreements with only Experian Holdings. Indeed, Mr. Weinstein confirms that the "Bureau intended to toll the statute of limitations as to

EIS," but the Bureau failed "to include EIS as a party and in the signature line." ECF No. 60-1, ¶ 27. Nothing in Mr. Weinstein's declaration, however, demonstrates that Experian Holdings knew, much less shared, the intentions of the Bureau.

Nevertheless, the Bureau argues that there was a mutual mistake because "the parties in this matter all understood at the time of the Second, Third, and Fourth Tolling Agreements that the Bureau was exclusively investigating EIS and that EIS sought the tolling agreements to provide additional time to respond to the Bureau's demands."[4] ECF No. 60 at 16. But that is not enough to establish a mutual mistake. *Cf. Hartford Cas. Ins. Co. v. Fireman's Fund Ins. Co.*, 2015 WL 6664840, at *2 (N.D. Cal. Nov. 2, 2015) (dismissing claim of mutual mistake where plaintiff's allegations centered on what the defendant "knew and/or should have known" about the proper identity of the parties to the contract). Indeed, this is the same argument the government advanced, and Judge Breyer rejected, in *FedEx*. *See United States v. FedEx Corp.*, 2016 WL 1070653, at *5 (N.D. Cal. Mar. 18, 2016) ("Next the government argues that because all the discovery conferences, investigation discussions, and other communications that it had with FedEx involved documents and persons across all the FedEx Entities, FedEx's attorneys knew or should have known that 'FedEx Express Corporation' meant the parent 'FedEx Corporation' in the tolling agreements.").[5] As Judge Breyer explained, "knowledge that the [Bureau] was investigating [EIS and Experian Holdings] does not mean [Experian] knew which parties the government intended to prosecute." *Id.* The same holds true here.[6]

---

[4] These assertions are also belied by the Bureau's own exhibits. Even after the Bureau was informed that Experian Holdings was not a consumer reporting agency, every CID issued in the Bureau's investigation defined "Company" to include both EIS and Experian Holdings. And the Bureau certainly never stated that Experian Holdings was no longer a subject of the investigation. To the contrary, even after modifying the first CID, the Bureau still named Experian Holdings in the first tolling agreement (and in everyone thereafter). Certainly, the Bureau would have no reason to toll the limitations period for an entity it was no longer investigating.

[5] Contrary to the Bureau's assertions, Judge Breyer did not solely address the issue of unilateral mistake under the Restatement (Second) of Contracts.

[6] Indeed, the Bureau previously asserted in this matter that it believed that the Fourth Tolling Agreement applied to EIS because a parent of a wholly-owned

Moreover, as in *FedEx*, the Bureau cannot "show that non-disclosure or bad faith gave rise to the government's mistake." *Id.* To the contrary, as in *FedEx*, Experian "disclosed volumes of evidence from which the [Bureau] could have ascertained [Experian's] corporate structure." *Id*. at *4. In fact, Experian's counsel told the Bureau that Experian Holdings was not a consumer reporting agency under the FCRA. ECF Nos. 60-3, 60-7. Thus, the Bureau "cannot justify its confusion given that it" knew Experian's corporate structure, and it "had extensive tools that it . . . used to discover this information."[7] *FedEx Corp*., 2016 WL 1070653, at *4.

Simply put, this Court should reject the Bureau's invitation to "cross out the name of [Experian Holdings] who signed the tolling agreement and replace it with [EIS] who did not" simply because the Bureau did not "check its work in drafting the tolling agreement[s]." *Id.* at *1

*ii* *The Fourth Tolling Agreement Cannot Be Reformed To Add EIS*

Even if the Bureau could somehow allege a mutual mistake (it cannot), any amendment seeking reformation would still be futile because "a court of equity can neither add additional parties nor substitute other parties for those already appearing upon the face of the writing." *Morning Star Packing Co., L.P. v. Crown Cork & Seal Co. (USA)*, 303 F. App'x 399, 401 (9th Cir. 2008). Thus, because the Fourth Tolling Agreement "included only [the Bureau] and [Experian Holdings] as parties, without any mention of [EIS]," the Bureau's "claims against [EIS] are not tolled, but are time-barred." *Monaco v. Bear Stearns Companies, Inc.*, 2011 WL 4059801, at *14 (C.D.

---

subsidiary (Experian Holdings) could bind the subsidiary (EIS). *See* ECF No. 47-1, ¶ 2. Experian had no basis to know whether this was the Bureau's belief during the investigation, and it certainly is not required to correct the Bureau's mistaken legal beliefs.

[7] The Bureau also suggests *FedEx* is inapposite because it was a criminal matter. This is a distinction without a difference. It is well-settled that "an action to recover civil penalties is fundamentally a law enforcement action designed to protect the public and not to benefit private parties." *Zackaria v. Wal-Mart Stores, Inc.*, 142 F. Supp. 3d 949, 953 (C.D. Cal. 2015); *see also Gabelli v. S.E.C.*, 568 U.S. 442 (2013). And courts regularly construe criminal agreements (*e.g.*, plea agreements) "according to the principles of contract law." *United States v. Lo*, 839 F.3d 777, 785 (9th Cir. 2016).

Cal. Sept. 12, 2011).

The Bureau attempts to escape this result by arguing that "[f]ederal common law, not California law, applies to the Tolling Agreements." ECF No. 60 at 14. But, absent this conclusory assertion, the Bureau does not explain how California law is different from federal common law. This is not surprising. As the Ninth Circuit has made clear, federal courts may "rely on California contract law since there is no practical difference between state and federal law in this area." *Pauma Band of Luiseno Mission Indians of Pauma & Yuima Rsrv. v. California*, 813 F.3d 1155, 1163 (9th Cir. 2015); *see also Novoa v. GEO Grp., Inc.*, 2022 WL 2189626, at *12 (C.D. Cal. Jan. 25, 2022) ("[T]he Ninth Circuit has held that 'in practical terms, the Court may rely on California contract law' because the Ninth Circuit 'discerns no difference between California and federal contract law." (quoting *Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. California*, 618 F.3d 1066, 1073 (9th Cir. 2010)) (cleaned up)). Indeed, California's reformation statute largely mirrors the Restatement (Second) of Contracts. *Compare* Cal. Civ. Code § 3399, *with* Restatement (Second) of Contracts §§ 155, 166.

Tellingly, the Bureau fails to cite a single case (under the federal common law or otherwise), holding that a contract may be reformed to add or substitute a party. The cases mirroring *Morning Star*, in contrast, are legion. *See*, *e.g.*, *Shupe v. Nelson*, 254 Cal.App.2d 693, 700 (1967) (recognizing that a court of equity "has no power to make a new contract for the parties, whether the mistake be mutual or unilateral"); *Lemoge Electric v. County of San Mateo*, 46 Cal.2d 659, 663–64 (1956) ("Although a court of equity may revise a written instrument to make it conform to the real agreement, it has no power to make a new contract for the parties, whether the mistake be mutual or unilateral."); *American Home Ins. Co. v. Travelers Indemnity Co.*, 122 Cal.App.3d 951, 964 (1981) ("It is a longstanding principle that judicial acceptance of an attempt to substitute new parties to an insurance policy, where there is no underlying agreement to that effect, amounts to the court's making a new

contract.”). This is not surprising, as adding a new party would be making a new contract, which the Court is without power to do. *See*, *e.g.*, *Morning Star Packing Co.*, 303 F. App’x at 401 (recognizing that a Court “has no power to make a new contract”); *see also* 66 Am. Jur. 2d Reformation of Instruments § 47 (“In the reformation of a written instrument to conform it to the parties’ mutually intended antecedent agreement, correcting material variances attributable to the parties’ mutual mistake of fact or law, or the fraudulent or inequitable conduct of one party, a court of equity does not have the power to add a party to a contract or substitute parties to a contract where the effect may be to make a new contract.”). Indeed, as the commentary and illustrations in Section 155 make clear, reforming a contract is appropriate to correct errors in the terms of a contract, such as price, property description, or other substantive provisions. *See* Restatement (Second) of Contracts § 155. Nothing in the Restatement demonstrates that a Court can reform a contract to change the identity of the parties. *See id.* Again, that would be making a new contract.

Accordingly, because EIS was not a party to the Fourth Tolling Agreement, the Discrete Violations—Counts V, VI, and VII—are time-barred and should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, EIS’s partial motion to dismiss and motion to strike should be granted.

Dated: July 25, 2025

JONES DAY

By: */s/ Richard J. Grabowski*
Richard J. Grabowski

Attorneys for Defendant
Experian Information Solutions, Inc.