Richard J. Grabowski (State Bar No. 125666)
rgrabowski@jonesday.com
John A. Vogt (State Bar No. 198677)
javogt@jonesday.com
Ryan D. Ball (State Bar No. 321773)
rball@jonesday.com
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA  92612
(T) 949-851-3939
(F) 949-553-7539

Attorneys for Defendant
Experian Information Solutions, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>　　　　Defendant. | Case No. 8:25-cv-00024-MWC-DFM<br><br>**DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS THE SECOND AMENDED COMPLAINT AND MOTION TO STRIKE**<br><br>**[Redacted Version of Document Proposed to be Filed Under Seal]**<br><br>Date:　　　October 24, 2025<br>Time:　　　1:30 p.m.<br>Place:　　　Courtroom 6A |

# **TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................................. 1

BACKGROUND .............................................................................................................. 2

LEGAL STANDARD ...................................................................................................... 4

    I.    THERE IS NO MUTUAL MISTAKE ............................................................... 5

    II.    THE FOURTH TOLLING AGREEMENT CANNOT BE REFORMED TO ADD EIS ................................................................................................. 9

    III.    THE COURT SHOULD STRIKE ANY ALLEGATIONS OF A TOLLING AGREEMENT ............................................................................. 11

    IV.    FURTHER AMENDMENT WOULD BE FUTILE ........................................ 11

CONCLUSION .............................................................................................................. 12

# TABLE OF AUTHORITIES

Page

**CASES**

*Ahlstrom v. DHI Mortg. Co., Ltd.,*
   L.P., 21 F.4th 631 (9th Cir. 2021) .................................................................... 10

*American Home Ins. Co. v. Travelers Indemnity Co.,*
   122 Cal. App. 3d 951 (1981) .............................................................................. 10

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ............................................................................................. 4

*Balistreri v. Pacifica Police Dep't,*
   901 F.2d 696 (9th Cir. 1990) ............................................................................... 4

*Consumer Financial Protection Bureau v. Think Finance, LLC,*
   2018 WL 3707911 (D. Mont. Aug. 3, 2018) .................................................... 10

*Cummings v. Greater Cleveland Reg'l Transit Authority, No.,*
   2016 WL 5405243 (N.D. Ohio Sept. 28, 2016) ............................................. 6, 7

*DeSoto v. Yellow Freight Sys. Inc.,*
   957 F.2d 655 (9th Cir. 1992) ............................................................................. 11

*Desoucy v. Cnty. of San Bernardino,*
   2024 WL 3064089 (C.D. Cal. May 9, 2024) ..................................................... 5

*Dilley v. C.R. Bard, Inc.,*
   2014 WL 1338877 (C.D. Cal. Apr. 3, 2014) .................................................... 11

*Gilreath v. Plumbers, Pipefitters, & Serv. Technicians Loc. 502,*
   2010 WL 6513412 (S.D. Ohio Sept. 2, 2010) .................................................... 6

*Hartford Cas. Ins. Co. v. Fireman's Fund Ins. Co.,*
   2015 WL 6664840 (N.D. Cal. Nov. 2, 2015) ..................................................... 8

*Kaiju Sushi Corp. v. Pac. Emps. Ins. Co.,*
   2022 WL 4299583 (C.D. Cal. Aug. 18, 2022) ................................................... 5

*KlamathLake Pharm. Ass'n v. Klamath Med. Serv. Bureau,*
   701 F.2d 1276 (9th Cir. 1983) ........................................................................... 11

*Lee v. City of Los Angeles*,
 250 F.3d 668 (9th Cir. 2001) ................................................................................ 4

*Lemoge Electric v. County of San Mateo*,
 46 Cal. 2d 659 (1956) ........................................................................................ 10

*Lopez v. Smith*,
 203 F.3d 1122 (9th Cir. 2000) ............................................................................ 11

*Madero v. McLane Foodservice, Inc.*,
 2025 WL 819081 (C.D. Cal. Feb. 21, 2025) ........................................................ 5

*Monaco v. Bear Stearns Companies, Inc.*,
 2011 WL 4059801 (C.D. Cal. Sept. 12, 2011) ............................................... 2, 10

*Morning Star Packing Co., L.P. v. Crown Cork & Seal Co. (USA)*,
 303 F. App'x 399 (9th Cir. 2008) ........................................................... 1, 2, 9, 10

*Novoa v. GEO Grp., Inc.*,
 2022 WL 2189626 (C.D. Cal. Jan. 25, 2022) ...................................................... 9

*Pauma Band of Luiseno Mission Indians of Pauma & Yuima Rsrv. v. California*,
 813 F.3d 1155 (9th Cir. 2015) .............................................................................. 9

*Radford v. Wells Fargo Bank*,
 2011 WL 1833020 (D. Haw. May 13, 2011) ....................................................... 5

*SEC v. Sands*,
 902 F. Supp. 1149 (C.D. Cal. 1995) .................................................................... 5

*Shupe v. Nelson*,
 254 Cal. App. 2d 693 (1967) .............................................................................. 10

*Sprewell v. Golden State Warriors*,
 266 F.3d 979 (9th Cir. 2001) ......................................................................... 4, 11

*Star Fabrics, Inc. v. Ruelala, Inc.*,
 2024 WL 1677531 (C.D. Cal. Mar. 26, 2024) ................................................... 11

*Steckman v. Hart Brewing, Inc.*,
 143 F.3d 1293 (9th Cir. 1998) .............................................................................. 4

*United States v. FedEx Corp.*,
 2016 WL 1070653 (N.D. Cal. Mar. 18, 2016) ......................................... 1, 6, 8, 9

*United States v. Segal*,
 2018 WL 2272334 (N.D. Ill. May 17, 2018) .................................................................................. 7

*Westchester Fire Ins. Co. v. Rock Island Hous. Auth.*,
 2017 WL 3090291 (C.D. Ill. Feb. 8, 2017) ........................................................................... 5, 6, 9

*Whittlestone, Inc. v. Handi-Craft Co.*,
 618 F.3d 970 (9th Cir. 2010) ............................................................................................... 11

*Wolf v. Univ. Pro. & Tech. Emps., Commc'ns Workers of Am. Loc. 9119*,
 2020 WL 6342934 (N.D. Cal. Oct. 29, 2020) ..................................................................... 6, 9

# INTRODUCTION

The Bureau's third attempt to save its untimely claims is a strikeout.[1] This Court has twice held that the "Discrete Violations"—*i.e.*, the Bureau's claims that arose between January 2018 and October 2021—are "facially deficient" absent a tolling agreement between the Bureau and Experian Information Solutions, Inc. ("EIS"). *See* ECF Nos. 33, 71. The Bureau attempted to allege the existence of such an agreement in its First Amended Complaint ("FAC"). But as this Court recognized, the operative agreement—the Fourth Tolling Agreement—is "between Experian Holdings and CFPB," not EIS. ECF No. 71 at 5. Now, in a last-ditch effort to save its untimely claims, the Bureau asks this Court to rewrite the Fourth Tolling Agreement based on a supposed "mutual mistake." The Court should decline the Bureau's invitation to do so.

To begin, the Bureau fails to sufficiently allege that the purported mistake—its omission of EIS from the Fourth Tolling Agreement—was *mutual*. While the Bureau added the legal conclusion of "mutual mistake" to its pleadings, it has failed to allege sufficient facts in the Second Amended Complaint ("SAC") demonstrating that Experian Holdings intended to include EIS as a party to the Fourth Tolling Agreement, let alone that EIS knew who the Bureau ultimately intended to prosecute. To the contrary, the Bureau's allegations make clear that it made a *unilateral* mistake, which EIS neither knew about nor had any obligation to correct. *See United States v. FedEx Corp.*, 2016 WL 1070653, at *1 (N.D. Cal. Mar. 18, 2016) (rejecting the government's argument that the defendant "should have corrected the government's mistake").

Even if the Bureau could somehow plead facts demonstrating mutual mistake (it cannot), the Court "can neither add additional parties nor substitute other parties for those already appearing upon the face of the writing." *Morning Star Packing Co.,*

---

[1] Capitalized terms not defined herein shall be given the same meaning as in EIS's Memorandum of Law In Support of Its Motion to Dismiss, ECF No. 24-1.

*L.P. v. Crown Cork & Seal Co. (USA)*, 303 F. App'x 399, 401 (9th Cir. 2008). Adding EIS to the Fourth Tolling Agreement would amount to a new contract, which the Court cannot invent. *Id.* (recognizing that a Court "has no power to make a new contract"). Because the Fourth Tolling Agreement "included only [the Bureau] and [Experian Holdings] as parties, without any mention of [EIS]," the Bureau's "claims against [EIS] are not tolled, but are time-barred." *Monaco v. Bear Stearns Companies, Inc.*, 2011 WL 4059801, at *14 (C.D. Cal. Sept. 12, 2011).

In short, EIS is not a party to the Fourth Tolling Agreement. And, because EIS cannot be added as a party, the Discrete Violations (Counts V, VI, and VII) are time-barred and should be dismissed with prejudice.

## BACKGROUND

The operative facts are unchanged and undisputed. This action arose after the Bureau's three-plus-year investigation into EIS's dispute handling systems and processes. The Bureau's original Complaint asserted thirteen causes of action: nine under the FCRA and four under the CFPA. ECF No. 1. These claims fell into one of two categories: (1) "Discrete Violations" (Counts I, IV, and VI);[2] and (2) "Ongoing Violations" (Counts II, III, V, VII-XIII). *See* ECF No. 71 at 2.

On April 1, 2025, EIS moved to dismiss all counts. ECF No. 24. On May 5, 2025, the Court partially granted EIS's motion, finding that the Discrete Violations were "facially deficient as this lawsuit was not initiated until January 7, 2025," more than three years after the Bureau discovered those claims. ECF No. 33 at 4. The Court rejected the Bureau's attempt to rely on a tolling agreement that it did "not mention" in the Complaint. *Id.* Accordingly, the Court dismissed the Discrete Violations, but granted the Bureau leave to amend to allege the existence of a tolling agreement with EIS. *Id.* at 4-5

On June 6, 2025, the Bureau filed the FAC, conceding that it discovered the

---

[2] The Bureau subsequently renumbered these claims as Counts V, VI, and VII.

Discrete Violations on February 1, 2021, well beyond the 3-year limitations period. ECF No. 44, ¶ 107. To save its claims, the Bureau alleged that "Experian and the Bureau executed a tolling agreement," which suspended the statute of limitations for 554 days—"(1) from December 3, 2021 through and including January 31, 2023 and (2) from July 26, 2024 through and including December 1, 2024." *Id.*, ¶¶ 108-09. According to the Bureau, this agreement "was the parties' fourth tolling agreement (the 'Fourth Tolling Agreement') and replaced and superseded the parties' first, second, and third tolling agreements." *Id.*, ¶ 108.

The Bureau's allegations were demonstrably false. On June 20, 2025, Experian moved to dismiss the FAC because only Experian Holdings is a party to the Fourth Tolling Agreement. That agreement did not mention EIS, let alone name it as a party. ECF No. 47-3. In response, the Bureau claimed—for the first time—that its omission of EIS from the Fourth Tolling Agreement was a mutual mistake, and that both parties had intended to include EIS. ECF No. 52.

On August 6, 2025, the Court granted EIS's motion, finding "that it is apparent that, as alleged, CFPB is time-barred from pursuing the Discrete Violation claims." ECF No. 71 at 5. As the Court correctly recognized, the Bureau's allegations of a tolling agreement with EIS were "contradicted by the Fourth Tolling Agreement, which is between Experian Holdings and CFPB." *Id.* Nevertheless, the Court again granted the Bureau leave to amend. *Id.*

On August 22, 2025, the Bureau filed the SAC, alleging that its "omission of [EIS] as a party to the Second, Third, and Fourth Tolling Agreements was inadvertent and a mutual mistake." SAC, ¶ 122. According to the Bureau, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* The Bureau further alleges that "counsel for 'Experian' signed

all three tolling agreements and did not alert the Bureau that [EIS] was not named as a party to the agreements." *Id.* On these facts, the Bureau alleges that "the parties' agreements to toll the statute of limitations apply to [EIS], and the Bureau's claims are timely." *Id.*, ¶ 124.

## LEGAL STANDARD

A defendant may move to dismiss for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *See*, *e.g.*, *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When ruling on a motion to dismiss, the Court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the Court takes judicial notice. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001). However, the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998), and "need not [ ] accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citation omitted).

The Court may also strike any allegations that are "redundant, immaterial, impertinent, or scandalous matter." *See* Fed. R. Civ. P. 12(f). "Immaterial matter has no essential or important relationship to the claim for relief or the defenses being

pleaded, and impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Madero v. McLane Foodservice, Inc.*, 2025 WL 819081, at *1 (C.D. Cal. Feb. 21, 2025) (cleaned up) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)). "The grounds for a motion [to strike] must appear on the face of the pleading under attack or from matters of which the Court may take judicial notice." *SEC v. Sands*, 902 F. Supp. 1149, 1165 (C.D. Cal. 1995). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial[.]" *Desoucy v. Cnty. of San Bernardino*, 2024 WL 3064089, at *5 (C.D. Cal. May 9, 2024) (quoting source omitted).

## ARGUMENT

The Discrete Violations are barred by the statute of limitations and no further amendment can save these claims. The Bureau does not (and cannot) plead a mutual mistake, and, even if it could, the mutual mistake doctrine does not permit the Court to reform the Fourth Tolling Agreement to add EIS as party. Accordingly, the Discrete Violations should be dismissed with prejudice, and any allegations referring to tolling should be struck.

### I.   There Is No Mutual Mistake

To start, the Bureau fails to plausibly allege a *mutual* mistake. A mutual mistake occurs "where both parties share the same misconception." *Kaiju Sushi Corp. v. Pac. Emps. Ins. Co.*, 2022 WL 4299583, at *4 (C.D. Cal. Aug. 18, 2022). To make this showing, the Bureau must satisfy the "rigorous pleading requirements of Rule 9" by alleging "'the who, what, when, where, and how' of the'" mutual mistake. *Radford v. Wells Fargo Bank*, 2011 WL 1833020, at *10 (D. Haw. May 13, 2011) (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009)); *see also Westchester Fire Ins. Co. v. Rock Island Hous. Auth.*, 2017 WL 3090291, at *3 (C.D. Ill. Feb. 8, 2017) ("Rule 9(b) requires mistake claims to include the who, what, when,

- 5 -

EIS'S MEMO OF LAW I/S/O MTD
& MTN. TO STRIKE
Case No. 8:25-cv-00024-MWC-DFM

where, and how of the parties' mutual mistake."). The Bureau's allegations fall woefully short of meeting this standard.

The Bureau does not allege who at Experian Holdings made a mistake, when Experian Holdings made the mistake, how the mistake occurred, or when the mistake was discovered. Nor does the Bureau explain how Experian Holdings intended to bind EIS when the plain language of the Fourth Tolling Agreement—like the Second and Third Tolling Agreements (all drafted by the Bureau)—applied only to Experian Holdings. *See* SAC, ¶¶ 115-116, 120. Regardless of whether *the Bureau* believed the Fourth Tolling Agreement applied to EIS,[3] "there is simply no allegation from which to construe that that mistake was mutual — that is, that [Experian Holdings] shared the same allegedly mistaken belief." *Wolf v. Univ. Pro. & Tech. Emps., Commc'ns Workers of Am. Loc. 9119*, 2020 WL 6342934, at *3 (N.D. Cal. Oct. 29, 2020). Indeed, "[w]here, as here, the language of the [Fourth Tolling] Agreement is clear and unambiguous that the [agreement] applied" only to Experian Holdings, the Bureau "cannot claim a material mutual mistake of fact that the parties [also] intended" the agreement to bind EIS. *Gilreath v. Plumbers, Pipefitters, & Serv. Technicians Loc. 502*, 2010 WL 6513412, at *6 (S.D. Ohio Sept. 2, 2010). Thus, "what [the Bureau] is actually asserting is not a 'mutual' mistake, but rather a unilateral mistake."[4] *Id.*; *see also Cummings v. Greater Cleveland Rez'l Transit*

---

[3] Indeed, the Bureau previously asserted in this matter that it believed that the Fourth Tolling Agreement applied to EIS because a parent of a wholly-owned subsidiary (Experian Holdings) could bind the subsidiary (EIS). *See* ECF No. 47-1, ¶ 2. Experian had no basis to know whether this was the Bureau's belief during the investigation, and it certainly is not required to correct the Bureau's mistaken legal beliefs.

[4] The type of unilateral mistake alleged by the Bureau cannot justify reformation of the tolling agreement because neither EIS nor Experian Holdings made any misrepresentations on which the Bureau relied. *See FedEx Corp.*, 2016 WL 1070653, at *4 ("To grant reformation, a court must find that a party's assent was induced by the other party's misrepresentations as to the terms or effect of the contract, and the party seeking reformation was justified in relying on the other

|   |   |
|---|---|
| 1 | *Authority, No.*, 2016 WL 5405243, at *2 (N.D. Ohio Sept. 28, 2016) (finding that the |
| 2 | plaintiff "made a unilateral rather than a mutual mistake in entering the settlement |
| 3 | agreement" where the plaintiff "mistakenly believed" that the settlement payment |
| 4 | would constitute "earnable salary"). |

Beyond the Bureau's failure to satisfy Rule 9, the Bureau's legal theory for imputing a mutual mistake to EIS is contradicted by the judicially-noticeable facts. The Bureau alleges the legal conclusion that the parties had ███████████████ ████████████████████████████████████████████████████████████—not Experian Holdings—because the Bureau ████████████ and issued eight subsequent CIDs to EIS. SAC, ¶ 122. But even after ████████████ the Bureau still named Experian Holdings in the first tolling agreement and in every one thereafter.[5] *Id.*, ¶¶ 111, 115-116, 120, 124. ████████████████████████████ ████████████████████████████████████████████████████████████ RJN, Exs. 1-5. The Bureau also never indicated that Experian Holdings was no longer a subject of the investigation, let alone that the Bureau had no intention of prosecuting it. To the contrary, the Bureau's repeated inclusion of Experian Holdings in the tolling agreements and CIDs only further demonstrates that no mutual mistake occurred. *See United States v. Segal*, 2018 WL 2272334, at *8 (N.D. Ill. May 17, 2018) (finding that "the government's repeated mislabeling of the Rush Oak/Oak Bank assets in the schedules and settlement documentation" precluded a finding that "the parties mutually understood that [defendant] was not getting the Rush Oak stock as part of their agreement").

The Bureau also unpersuasively alleges that the tolling agreement should be reformed because any mistake was somehow EIS's fault. The Bureau suggests that

_____

party's misrepresentations.").

[5] Tellingly, the Bureau has never suggested that the inclusion of Experian Holdings as a party to the tolling agreements was a mistake, showing that both parties knew Experian Holdings remained a target of the Bureau's investigation.

EIS'S MEMO OF LAW I/S/O MTD
& MTN. TO STRIKE
Case No. 8:25-cv-00024-MWC-DFM

EIS knew the Bureau's intentions but "did not alert the Bureau that [EIS] was not named as a party to the agreements." SAC, ¶ 122. This is the same argument the government advanced, and Judge Breyer rejected, in *FedEx Corp*. There, like here, the government entered into tolling agreements with only one FedEx entity (FedEx Express Corporation), but argued that other FedEx entities (FedEx Corp. and FedEx Services) were bound by the agreements because "FedEx knew the government's investigation was not limited to Federal Express Corporation," and thus "FedEx should have perceived that the government intended to bind a different defendant to the agreement." *Id.* at *1, 5. Judge Breyer disagreed, finding that "knowledge that the government was investigating all three entities does not mean FedEx knew which parties the government intended to prosecute or which statutes it wanted to toll." *Id.* at *5. Other courts have reached similar conclusions. *See Hartford Cas. Ins. Co. v. Fireman's Fund Ins. Co.*, 2015 WL 6664840, at *2 (N.D. Cal. Nov. 2, 2015) (dismissing claim of mutual mistake where plaintiff's allegations centered on what the defendant "knew and/or should have known" about the proper identity of the parties to the contract). The Bureau cannot shift the blame for its negligence and mistake to EIS.

Moreover, as in *FedEx Corp.*, the Bureau cannot "show that non-disclosure or bad faith gave rise to the government's mistake." 2016 WL 1070653, at *5. Quite the opposite. Experian Holdings "disclosed volumes of evidence from which the [Bureau] could have ascertained [Experian's] corporate structure." *Id.* at *4. In fact, ████████████████████████████████████████████████████████████████████████ ████████████████████████████. SAC, ¶ 109. Thus, the Bureau "cannot justify its confusion given that it" knew Experian's corporate structure, and it "had extensive tools that it . . . used to discover this information." *FedEx Corp.*, 2016 WL 1070653, at *4. As such, it would be entirely improper for the Court to "cross out the name of [Experian Holdings] who signed the tolling agreement and replace it with [EIS] who did not" simply because "the government did not check its work." *Id.* at *1.

In sum, the SAC "is wholly deficient in alleging a theory based on mutual mistake, let alone with any degree of particularity required by Rule 9(b)." *Wolf*, 2020 WL 6342934, at *3; *see also Westchester Fire*, 2017 WL 3090291, at *3 (dismissing allegations of mutual mistake where the plaintiff alleged "that the parties were under a mutual mistake regarding the quantity and quality of work performed . . . but [did] not specifically identify, for example, what work it refers to, how the initial investigation was inaccurate, or how the mistake was discovered"). The Bureau's allegations amount to nothing more than a unilateral mistake about which EIS neither knew nor had any obligation to correct. *See FedEx Corp.*, 2016 WL 1070653, at *1 (rejecting the Bureau's argument that "FedEx should have corrected the government's mistake"). The Discrete Violations should therefore be dismissed.

## II. The Fourth Tolling Agreement Cannot Be Reformed To Add EIS

Even if the Bureau could somehow allege a mutual mistake (it cannot), the Discrete Violations would still be time-barred because "a court of equity can neither add additional parties nor substitute other parties for those already appearing upon the face of the writing." *Morning Star*, 303 F. App'x 399, 401.[6] When a mutual mistake exists, courts may correct errors in the terms of a contract—such as price, property description, or other substantive provisions—but it cannot change the identity of the parties. *See* Restatement (Second) of Contracts § 155. That is because to add a party to a contract would be to create a new contract, which courts are

---

[6] As the Ninth Circuit has made clear, federal common law and California law are in accord when interpreting contracts. *See, e.g.*, *Pauma Band of Luiseno Mission Indians of Pauma & Yuima Rsrv. v. California*, 813 F.3d 1155, 1163 (9th Cir. 2015) (federal courts may "rely on California contract law since there is no practical difference between state and federal law in this area"); *see also Novoa v. GEO Grp., Inc.*, 2022 WL 2189626, at *12 (C.D. Cal. Jan. 25, 2022) ("[T]he Ninth Circuit has held that 'in practical terms, the Court may rely on California contract law' because the Ninth Circuit 'discerns no difference between California and federal contract law." (quoting *Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. California*, 618 F.3d 1066, 1073 (9th Cir. 2010)) (cleaned up)).

without power to do. *Morning Star*, 303 F. App'x 399, 401 (recognizing that a Court "has no power to make a new contract"); *see also Shupe v. Nelson*, 254 Cal. App. 2d 693, 700 (1967) (recognizing that a court of equity "has no power to make a new contract for the parties, whether the mistake be mutual or unilateral"); *Lemoge Electric v. County of San Mateo*, 46 Cal. 2d 659, 663–64 (1956) ("Although a court of equity may revise a written instrument to make it conform to the real agreement, it has no power to make a new contract for the parties, whether the mistake be mutual or unilateral."); *American Home Ins. Co. v. Travelers Indemnity Co.*, 122 Cal. App. 3d 951, 964 (1981) ("It is a longstanding principle that judicial acceptance of an attempt to substitute new parties to an insurance policy, where there is no underlying agreement to that effect, amounts to the court's making a new contract."). Because the Fourth Tolling Agreement "included only [the Bureau] and [Experian Holdings] as parties, without any mention of [EIS]," the Bureau's "claims against [EIS] are not tolled, but are time-barred." *Monaco v. Bear Stearns Companies, Inc.*, 2011 WL 4059801, at *14 (C.D. Cal. Sept. 12, 2011).

*Consumer Financial Protection Bureau v. Think Finance, LLC*, 2018 WL 3707911 (D. Mont. Aug. 3, 2018), does not suggest otherwise. That case involved alter egos, which are situations where there is "such unity of interest and ownership that the separate [entities] . . . no longer exist." *Id.*, at *5 (quoting *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015)) (alterations in original). In such cases, imputing an agreement to a party's alter ego does not add or substitute parties to the agreement. Rather, it effectuates the agreement as written by acknowledging the reality that "the parent and subsidiary are not really separate entities." *Id.*, at *6. But here, the Bureau does not (and cannot) allege that EIS is an alter ego of Experian Holdings. As such, *Think Finance* and alter ego theories are inapposite. *See Ahlstrom v. DHI Mortg. Co., Ltd.*, L.P., 21 F.4th 631, 636 (9th Cir. 2021) (collecting cases) (noting the "fundamental principle that corporations, including parent companies and their subsidiaries, are treated as distinct entities").

Simply put, because EIS was not a party to the Fourth Tolling Agreement, the Discrete Violations—Counts V, VI, and VII—are time-barred and should be dismissed with prejudice.

### III. The Court Should Strike Any Allegations Of A Tolling Agreement

The Court should also strike all allegations referencing tolling between the Bureau and EIS. *See Dilley v. C.R. Bard, Inc.*, 2014 WL 1338877, at *5 (C.D. Cal. Apr. 3, 2014) (Federal Rule of Civil Procedure 12(f) "empowers a court to strike from a pleading any redundant, immaterial, impertinent, or scandalous matter."). It is well-settled that courts need not "accept as true 'allegations that contradict matters properly subject to judicial notice' or material attached to or incorporated by reference into the complaint." *Star Fabrics, Inc. v. Ruelala, Inc.*, 2024 WL 1677531, at *1 (C.D. Cal. Mar. 26, 2024) (quoting *Sprewell*, 266 F.3d at 988–89).

For the reasons explained above, EIS is not a party to the Fourth Tolling Agreement, and the Court is without power to add EIS as a party. As such, the Court should strike any allegations relating to tolling as "immaterial" in order "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quotation omitted).

### IV. Further Amendment Would Be Futile

Lastly, the Court should dismiss the Discrete Violations without leave to amend. Dismissal with prejudice is proper where, as here, the defects in the complaint cannot be cured by alleging additional facts. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000); *DeSoto v. Yellow Freight Sys. Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Indeed, "futile amendments should not be permitted." *KlamathLake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Yet that is precisely what any further amendment would be here.

As this Court has recognized, the Discrete Violations are time-barred, unless

the Fourth Tolling Agreement applies to EIS. ECF No. 71 at 5. And, because the Court cannot reform the Fourth Tolling Agreement to add EIS as a party, any further attempt to do so would be futile. The same would hold true for any attempt to plead a theory of alter ego. Accordingly, the Discrete Violations—Counts V, VI, and VII—should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, EIS's partial motion to dismiss and motion to strike should be granted.

Dated: September 5, 2025

JONES DAY

By: */s/ Richard J. Grabowski*
    Richard J. Grabowski

Attorneys for Defendant
Experian Information Solutions, Inc.