Richard J. Grabowski (State Bar No. 125666)
rgrabowski@jonesday.com
John A. Vogt (State Bar No. 198677)
javogt@jonesday.com
Ryan D. Ball (State Bar No. 321773)
rball@jonesday.com
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612
(T) 949-851-3939
(F) 949-553-7539

Attorneys for Defendant
EXPERIAN INFORMATION SOLUTIONS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CONSUMER FINANCIAL PROTECTION BUREAU,

Plaintiff,

v.

EXPERIAN INFORMATION SOLUTIONS, INC.,

Defendant.

Case No. 8:25-cv-00024-MWC-DFM

**DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S REPLY TO PLAINTIFF'S OPPOSITION TO ITS PARTIAL MOTION TO DISMISS THE SECOND AMENDED COMPLAINT AND MOTION TO STRIKE**

Date: October 24, 2025
Time: 1:30 p.m.
Place: Courtroom 6A

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................ 1

ARGUMENT ........................................ 2

I. EXPERIAN HOLDINGS DID NOT MAKE A MISTAKE ........................................ 2

II. EIS DID NOT INTEND TO BE BOUND BY THE TOLLING AGREEMENT ........................................ 4

III. EIS CANNOT BE ADDED TO THE FOURTH TOLLING AGREEMENT ........................................ 8

IV. THE COURT SHOULD STRIKE ALLEGATIONS ABOUT THE TOLLING AGREEMENTS ........................................ 11

CONCLUSION ........................................ 12

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ahlstrom v. DHI Mortg. Co., Ltd., L.P.*,
21 F.4th 631 (9th Cir. 2021) ........ 4

*Atlas Corp. v. United States*,
895 F.2d 745 (Fed. Cir. 1990) ........ 5

*Bailard v. Marden*,
36 Cal. 2d 703 (1951) ........ 3

*Brant v. Geico Gen. Ins. Co.*,
3 F.3d 1172 (8th Cir. 1993) ........ 10

*Calhoun v. Downs*,
211 Cal. 766 (1931) ........ 4, 6

*Fraass Surgical Mfg. Co., Inc. v. United States*,
215 Ct. Cl. 820 (1978) ........ 6

*FT Travel--New York, LLC v. Your Travel Ctr., Inc.*,
112 F. Supp. 3d 1063 (C.D. Cal. 2015) ........ 9

*Hess v. Ford Motor Co.*,
27 Cal. 4th 516 (2002) ........ 3

*Illinois Nat. Ins. Co. v. Wyndham Worldwide Operations, Inc.*,
653 F.3d 225 (3d Cir. 2011) ........ 3

*In the Matter of Beverly Hills Bancorp*,
649 F.2d 1329 (1981) ........ 5

*Mabb v. Merriam*,
129 Cal. 663 (1900) ........ 8

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Monaco v. Bear Stearns Companies, Inc.*,
2011 WL 4059801 (C.D. Cal. Sept. 12, 2011) ........ 9

*Morning Star Packing Co., L.P. v. Crown Cork & Seal Co.*,
303 F. App'x 399 (9th Cir. 2008) ........ 8, 9

*Novoa v. GEO Grp., Inc.*,
2022 WL 2189626 (C.D. Cal. Jan. 25, 2022) ........ 11

*Panterra GP, Inc. v. Superior Ct. of Kern Cnty.*,
74 Cal. App. 5th 697 (2022) ........ 4, 6, 9

*Pattern Design LLC v. We are Sechey Inc.*,
2024 WL 4369668 (N.D. Cal. Oct. 1, 2024) ........ 4, 6, 9

*Rodman v. Safeway Inc.*,
125 F. Supp. 3d 922 (N.D. Cal. 2015) ........ 4

*SM 10000 Prop., LLC v. Allianz Glob. Risks US Ins. Co.*,
2021 WL 1299071 (N.D. Cal. Apr. 7, 2021) ........ 2

*Spiegler v. Home Depot U.S.A., Inc.*,
552 F. Supp. 2d 1036 (C.D. Cal. 2008) ........ 3

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ........ 12

*United States v. FedEx Corp.*,
2016 WL 1070653 (N.D. Cal. Mar. 18, 2016) ........ 6, 7

*Westdale Nw. Ctr., LP v. United States*,
154 Fed. Cl. 557 (2021) ........ 4, 5, 6

*Whittlestone, Inc. v. Handi-Craft Co.*,
618 F.3d 970 (9th Cir. 2010) ........ 12

## TABLE OF AUTHORITIES
(continued)

**Page**

*Wilcox v. Wild Well Control, Inc.*, 794 F.3d 531 (5th Cir. 2015) .......... 10

## INTRODUCTION

The Bureau's opposition only confirms what this Court has already twice recognized: the "Discrete Violations" are time-barred unless the Fourth Tolling Agreement applies to Experian Information Solutions, Inc. ("EIS").[1] It does not. The operative agreement names Experian Holdings—not EIS—and the Bureau's latest attempt to rehabilitate that defect by rebranding its own drafting error as a "mutual mistake" fails as a matter of law and pleading. Reformation is an extraordinary, contract-corrective remedy; it does not license courts to draft new contracts or to add new parties post hoc. Section 155 of the Restatement demands a shared mistake by both parties to the writing, tied to a prior, actual meeting of the minds. The Bureau pleads neither. Instead, it concedes its own misunderstanding about corporate separateness and tries to convert silence and generalized references to "Experian" into assent by EIS. That is not mutual mistake; it is unilateral error, precisely the scenario courts refuse to remedy through reformation.

Even accepting the Second Amended Complaint's ("SAC") allegations as true, they do not plausibly allege that Experian Holdings intended to bind its subsidiary in the Fourth Tolling Agreement—or that EIS objectively manifested assent to be bound. The agreement's text repeatedly and exclusively identifies Holdings; the Bureau points to no signature by EIS, no authorization purporting to bind EIS, and no specific representation by Holdings or EIS that the parties intended something other than what the document says. Knowledge that the Bureau was investigating multiple entities, or that EIS benefited from additional time, does not transmute a parent's contract into a subsidiary's, and courts do not rewrite clear writings to rescue a party from its own drafting lapses.

The Bureau's fallback to federal common law fares no better. Whether under federal or state principles, reformation corrects clerical memorialization errors

[1] Capitalized terms not defined herein shall have the meaning given to them in EIS's opening motion, ECF No. 24.

between the contracting parties; it does not add nonparties or create new bargains. The authorities the Bureau invokes do not authorize inserting an entirely new counterparty into a tolling agreement. Nor can Rule 9(b)'s heightened standard be satisfied by vague assertions about "course of dealing" and shorthand references to "Experian." The law presumes the accuracy of a written instrument; clear and convincing facts—not conclusory labels—are required to overcome that presumption.

Simply put, because the Fourth Tolling Agreement cannot be reformed to add EIS, the Discrete Violations are untimely and must be dismissed with prejudice. And because the SAC's tolling allegations are contradicted by the judicially noticeable agreement and immaterial to the limitations analysis, they should be stricken under Rule 12(f).

## ARGUMENT

### I. Experian Holdings Did Not Make A Mistake

The Bureau's opposition concedes that the SAC makes no allegations showing that Experian Holdings—the only Experian signatory to the Fourth Tolling Agreement—intended for its subsidiary, EIS, to be bound. Opp'n at 9. Nevertheless, the Bureau claims that the intent of Experian Holdings is "irrelevant." *Ibid.* But the Bureau is simply wrong; its failure to plead a mutual mistake by Experian Holdings is fatal.

To support reformation, the Bureau relies on Restatement (Second) Contracts § 155 (1981), which provides that the court may reform a "writing" that "fails to express the agreement because of a ***mistake of both parties*** as to the contents or effect of the writing." (Emphasis added). Section 155 is explicit that the mistake must be "of both parties" to the writing. The "both parties" requirement is not an abstraction. It flows from well-settled principles: reformation does not create a new contract, it corrects a specific memorialization error in a contract already formed by the same parties. *SM 10000 Prop., LLC v. Allianz Glob. Risks US Ins. Co.*, 2021 WL 1299071,

at *12 (N.D. Cal. Apr. 7, 2021); *see also Spiegler v. Home Depot U.S.A., Inc.*, 552 F. Supp. 2d 1036, 1055 (C.D. Cal. 2008) ("By mutual mistake is meant a situation where both parties share the same misconception.") (quoting *Renshaw v. Happy Valley Water Co.*, 114 Cal. App. 2d 521, 524 (1952), *aff'd sub nom. Spiegler v. Home Depot USA, Inc.*, 349 F. App'x 174 (9th Cir. 2009); *Hess v. Ford Motor Co.*, 27 Cal. 4th 516, 524 (2002) (a court has "no power to make new contracts for parties"; it may "only reform the writing to conform with the mutual understanding of the parties at the time they entered into it, if such an understanding exists"); *Bailard v. Marden*, 36 Cal. 2d 703 (1951) ("Courts of equity have no power to make new contracts for the parties . . . . [Nor] can they reform an instrument according to the terms in which one of the parties understood it, unless it appears that the other party also had the same understanding.") (internal quotations omitted).

Thus, when the Fourth Tolling Agreement identifies Experian Holdings as the sole Experian counterparty, the Bureau's reformation claim must be tied to Experian Holdings' mistake—*i.e.*, the Bureau must allege and ultimately prove that that the prior, actual agreement between the Bureau and Experian Holdings included EIS, but that EIS's omission from the writing was a *shared* drafting error between the Bureau and Experian Holdings. *See Illinois Nat. Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 653 F.3d 225, 231-32 (3d Cir. 2011) (explaining that "courts should only look at the intent of the contracting parties at the time of consummation of a contract"). A purported mistake by a third party to the writing—here, EIS—cannot meet § 155's bilateral requirement. *See id.* ("The understanding of persons who were not contracting parties at the time of consummation of a contract is irrelevant.").

Indeed, before filing its opposition, the Bureau was correctly focused on the intent of Experian Holdings. According to Bureau's counsel, the Bureau entered into a tolling agreement with Experian Holdings alone because it believed the tolling agreement would automatically bind EIS, as its subsidiary. ECF No. 47-1 ¶ 2. Of course, the Bureau was simply wrong on that score; a parent does not bind its

subsidiaries simply by entering into a contractual agreement. *Ahlstrom v. DHI Mortg. Co., Ltd., L.P.*, 21 F.4th 631, 636 (9th Cir. 2021).

Now, confronted with its legal error, the Bureau changes horses, claiming the intent of Experian Holdings is legally irrelevant. Yet the very cases upon which the Bureau relies demonstrate the opposite: the mutual mistake doctrine turns on whether "***both parties*** [to the contract] intended" something other than what the writing reflects. *Pattern Design LLC v. We are Sechey Inc.*, 2024 WL 4369668, at *4 (N.D. Cal. Oct. 1, 2024) (emphasis added); *see also Calhoun v. Downs*, 211 Cal. 766, 770 (1931) (examining whether parties to the contract intended to pay a broker's commission to third party); *Panterra GP, Inc. v. Superior Ct. of Kern Cnty.*, 74 Cal. App. 5th 697, 702 (2022) (both parties to the contract intended to name plaintiff as general contractor). The Bureau does not cite ***a single case*** supporting its disregard for § 155's fundamental principle that a mutual mistake requires a mistake by ***both parties*** to a written contract. That defect alone compels dismissal of the Bureau's Discrete Violation claims.

## II. <u>EIS Did Not Intend To Be Bound By The Tolling Agreement</u>

Even under its erroneous understanding of the mutual mistake doctrine, the Bureau fails to clearly and convincingly establish that EIS intended to be bound by the Fourth Tolling Agreement.

In light of the Bureau's vague and generalized allegations, it bears emphasis that "[r]eformation of a written agreement on the ground of mutual mistake is an extraordinary remedy." *Westdale Nw. Ctr., LP v. United States*, 154 Fed. Cl. 557, 583 (2021). The law of contracts "attaches great weight to the written expression of an agreement." Restatement (Second) of Contracts § 155 cmt. c. That is both because "experience teaches that mistakes are the exception and not the rule" (*id.*), and also because the law presumes that a written agreement accurately reflects the intention of the parties. *Rodman v. Safeway Inc.*, 125 F. Supp. 3d 922, 939 (N.D. Cal. 2015), *aff'd*, 694 F. App'x 612 (9th Cir. 2017) (rejecting invocation of mutual mistake

doctrine). Accordingly, as movant, the Bureau bears the burden of proving *clearly* and *convincingly* that a mutual mistake has been made and that reformation is appropriate. Restatement (Second) of Contracts § 155 cmt. c; *see also In the Matter of Beverly Hills Bancorp*, 649 F.2d 1329, 1333 (1981) ("Reformation or revision on the ground of mutual mistake... requires clear and convincing evidence of the alleged mistake.").

The Bureau's sparse allegations do not clear that tall hurdle. There is no dispute the *Bureau* made a mistake – whether of law or fact. In a moment of candor, the Bureau's counsel admitted that it wrongly believed a tolling agreement with Experian Holdings was sufficient because a parent corporation can bind its subsidiary. ECF No. 47-1 ¶ 2. The Bureau alleges that it repeatedly proposed tolling agreements naming "only the Bureau and Holdings as parties." ECF No. 74-1 ¶¶ 116, 120. Yet, despite not naming EIS as a party, the Bureau offers nothing more than conclusory assertions that EIS operated under an "understanding" that these tolling agreements applied to both Experian Holdings and EIS. *Id.* ¶ 122.

The fundamental flaw in the Bureau's theory is that it never plausibly alleges that *EIS* shared this understanding. To reform a contract due to mutual mistake, "the parties must have reached an agreement on the issue for which reformation is sought that was not reflected in the final written document." *Westdale Nw. Ctr.*, 154 Fed. Cl. at 580. In other words, for reformation to be available, "there must have been some agreement between the parties prior to the writing." Restatement (Statement) of Contracts § 155 cmt. a; *see also Atlas Corp. v. United States*, 895 F.2d 745, 750 (Fed. Cir. 1990) (reformation "is a remedy the purpose of which is to make a mistaken writing conform to antecedent expressions on which the parties agreed").

The SAC does not allege that EIS or its agents *ever* reached an agreement with the Bureau for EIS to be bound by the Fourth Tolling Agreement. *See* ECF No. 74-1 ¶¶ 109-122. This is simply not a case where the Bureau and EIS agreed to enter into a tolling agreement and the Bureau made a scrivener's error in transcribing the

appropriate name. The facts therefore stand in sharp contrast to every case upon which the Bureau relies, which involved a prior agreement combined with a drafting error. *See Westdale Nw. Ctr.*, 154 Fed. Cl. at 580 (prior to reducing agreement to writing, "[t]he parties in this case came to an agreement" regarding intended amount of real estate taxes); *Calhoun v. Downs*, 211 Cal. at 767 (parties agreed to pay broker $500 but mistakenly left amount blank when committing contract to paper); *Pattern Design*, 2024 WL 4369668, at * 4 (both parties intended to name individual as party to contract but she was left out due to "drafting error"); *Panterra*, 74 Cal. App. 5th at 702 (defendants hired Panterra GP to conduct contractor work but listed different entity by mistake); *see also Fraass Surgical Mfg. Co., Inc. v. United States*, 215 Ct. Cl. 820, 826 (1978) (rejecting mutual mistake doctrine because parties did not reach agreement on proposed reform term; plaintiff mistakenly believed term was other than it was).

Despite the absence of any agreement to bind EIS to the Fourth Tolling Agreement, the Bureau argues EIS's intent to be bound may be *inferred* because the Bureau directed CIDs to EIS and counsel for "Experian" signed the tolling agreements without "alert[ing] the Bureau that [EIS] was not named as a party to the agreements." ECF No. 74-1 ¶ 122. That exact argument, however, was made and rejected in *United States v. FedEx Corp.*, 2016 WL 1070653 (N.D. Cal. Mar. 18, 2016). And for good reason.

In *FedEx*, as here, "[t]he government entered the name of the wrong defendant in a tolling agreement." 2016 WL 1070653, at *1. The government entered into four tolling agreements with attorneys for FedEx Corp. (a parent company) and two of its subsidiaries (FedEx Express and FedEx Services). *Id.* The tolling agreement itself, however, identified only the United States and FedEx Corp. as parties. *Id.* The attorneys for FedEx never suggested that the subsidiaries were not party to the tolling agreement, and routinely referred to all companies as FedEx. *Id.* at *2. Counsel used the same term—"FedEx"—to refer to his client when negotiating the tolling

agreement. *Id.*

As here, the government argued that because all the investigation discussions and other communications involved documents and persons across all three FedEx entities, "FedEx's attorneys should have known that the government intended for the tolling agreement to apply to all three entities. *Id.* at *5. The court rejected that argument, explaining that "knowledge that the government was investigating all three entities does not mean FedEx knew which parties the government intended to prosecute or which statutes it wanted to toll." *Id.*

The same holds true here. The Bureau addressed CIDs to EIS, but the CIDs themselves sought information about both Experian Holding and EIS. RJN, Exs. 1-5. The Bureau is no ordinary litigant; it has the unilateral authority to decide what entities to charge based on its investigation – that is no subject of arms-length negotiation. The Bureau revised the First Tolling Agreement to exclude EIS. *See* ECF No. 74-1 ¶¶ 115-16, 120. Whether or not the Bureau continued asking EIS to produce documents, it does not follow that EIS knew which parties the Bureau intended to prosecute or which statutes it wanted to toll. And, contrary to the Bureau's implication, it is not EIS's obligation to do the Bureau's job by alerting the Bureau that it excised EIS from the Second, Third, and Fourth Tolling Agreements.

The Bureau argues that *FedEx* is inapposite, but the rationale of the decision cannot be so easily dismissed. To be sure, the government in *FedEx* did not have the nerve to characterize its obvious unilateral mistake as a mutual one, as the Bureau does here. But the point of *FedEx* remains: the government cannot transmute an attorney's silence in the face of government error into an implicit agreement to add non-parties to a tolling agreement. In the absence of misrepresentations, which the Bureau does not allege here, knowledge of an investigation or receipt of benefits does not establish an agreement to be bound. Tellingly, the Bureau cites nothing to the contrary.

Nor can the government fashion an agreement by EIS to be bound based upon

counsel's alleged use of "Experian" as an umbrella descriptor for multiple separate legal entities. According to the Bureau, counsel referred to "Experian" when discussing the proposed party to the tolling agreement. ECF No. 74-1 ¶ 121; *see also id*. ¶¶ 114, 117, 122. But use of a corporate family moniker in discussions does not unambiguously identify EIS as the contracting party. The Bureau's reliance on a few generalized references to "Experian" by counsel over a years-long investigation does not plausibly allege that EIS signed the operating tolling agreements, authorized a signatory to bind EIS, or otherwise clearly assented to the agreements' terms. *See id*. ¶¶ 119-120 ("[T]he Bureau requested that Experian execute a fourth tolling agreement . . . As with the Second and Third Tolling Agreements, the Fourth Tolling Agreement named only the Bureau and Holdings as parties."). When the written agreements themselves repeatedly and expressly name only Experian Holdings as the counterparty, generic references to "Experian" cannot supply the missing, objective assent by EIS, particularly under the Rule 9's heightened pleading standard.

## III. <u>EIS Cannot Be Added To The Fourth Tolling Agreement</u>

The Bureau's Discrete Violation claims must be dismissed for a third, independently-fatal reason: a court cannot "add additional parties" to "those appearing upon the face of the writing." *Morning Star Packing Co., L.P. v. Crown Cork & Seal Co.*, 303 F. App'x 399, 401 (9th Cir. 2008). It has long been the law that "[w]hile a court of equity will reform contracts under many varying circumstances, still it has no power to make a new contract." *Mabb v. Merriam*, 129 Cal. 663, 664 (1900). The Bureau does not dispute that this venerable principle holds true today.

In *Mabb*, the California Supreme Court held as a result of that principle, "a court of equity can neither add additional parties nor substitute other parties for those already appearing upon the face of the writing." 129 Cal. at 664. In that case, a wife (J.W. Mabb) verbally agreed to exchange lands with the defendant. *Id.* When the husband (J.J. Mabb) wrote up the contract, he signed as one party, excluding his wife from the contract. *Id.* The wife sought to reform the contract to add herself as a party,

but the court could not do so, because such reformation "would … make a new contract, and not … reform a contract already made." *Id.* Following *Mabb*, other courts have reached the same conclusion, refusing to add a third party to a contract between two other parties. *See, e.g.*, *Morning Star*, 303 F. App'x at 401 (holding that court could not reform a tolling agreement between Morning Star and Crown Cork by adding a third party to the agreement); *Monaco v. Bear Stearns Companies, Inc.*, 2011 WL 4059801, at *14 (C.D. Cal. Sept. 12, 2011). This Court should do the same.

In response, the Bureau falls back on *Panterra GP, Inc. v. Superior Ct. of Kern Cnty.*, 74 Cal. App. 5th 697 (2022). There, a divided Court of Appeal declined to follow *Mabb* and substituted the name of one corporation for another in a contract. Accordingly, the Bureau maintains, it is not clear that *Mabb* remains good law. Fortunately, this Court need not resolve whether the *Panterra* court properly declined to follow Supreme Court precedent. *See id.* at 734 (Smith, J., dissenting) (criticizing majority for failing to follow binding law). This is because *Panterra* involved an entirely distinct type of party substitution – one that the Bureau does *not* seek here.

In *Panterra*, the parties agreed that a general contractor named "Panterra GP" would perform renovation work, but the developer mistakenly listed a different entity—"Panterra Development"—as contractor for the project. *Id.* at 701. The court held that the contract could be reformed to include the party everyone intended (Panterra GP) in lieu of the party no one intended (Panterra Development). *Id.* at 714. The Bureau's other cited cases are of a piece: they permitted the parties to substitute the name of the party everyone intended in lieu of the party inserted as the result of a drafting or scrivener's error. *See, e.g.*, *Pattern Design*, 2024 WL 4369668, at *4; *FT Travel--New York, LLC v. Your Travel Ctr., Inc.*, 112 F. Supp. 3d 1063, 1088 (C.D. Cal. 2015) (the parties agreed that plaintiff would enter into agreement with entity named "YTC" but agreement mistakenly named "LLC" in its stead).

The reformation that Bureau seeks, however, is the same as *Mabb* and its progeny – not *Panterra*. The Bureau does not allege or argue that it agreed to a tolling

agreement with EIS, but wrote Experian Holdings as a drafting error. Rather, the Bureau maintains that it intended to enter into a tolling agreement with Experian Holdings *and* EIS, yet contracted with Experian Holdings alone. As in *Mabb*, the Bureau seeks not simply to correct a scrivener's error that failed to reflect the proper name; instead, the Bureau seeks reformation that would add a new third party to the tolling agreement. This is precisely the circumstance that equity does not permit.[2]

In a last-ditch effort, the Bureau argues that this Court should not follow the law because EIS has cited California cases, and "tolling agreements with federal executive branch agencies are governed by federal common law, not by state law." Opp'n at 11. Yet the Bureau concedes that "when federal law and state law are in accord on an issue, courts may rely on the state law." Opp'n at 12. And the Bureau has thoroughly failed to carry its burden of proving that federal common law is any different.

The Bureau uses sleight of hand to try and shift that burden onto EIS, arguing that EIS has not conclusively foreclosed the possibility that federal common law permits parties to add additional parties to a contract through reformation. Not so fast. The party seeking reformation—here, the Bureau—bears the burden of proving, clearly and convincingly, that reformation is appropriate. *Wilcox v. Wild Well Control, Inc.*, 794 F.3d 531, 541 (5th Cir. 2015); *Brant v. Geico Gen. Ins. Co.*, 3 F.3d 1172, 1174 (8th Cir. 1993). The Bureau does not (and cannot) satisfy that burden.

Tellingly, the Bureau fails to cite a single case holding that federal common

---

[2] The only exception to this rule, as this Court previously recognized, is where the party sought to be added is the alter ego of an existing party to the contract. ECF No. 71 at 5-6 (citing *Consumer Financial Protection Bureau v. Think Finance, LLC*, 2018 WL 3707911 (D. Mont. Aug. 3, 2018)). But, as EIS explained in its opening brief, the Bureau does not (and cannot) allege that EIS is an alter ego of Experian Holdings. ECF No. 79-2 at 10. The Bureau does not argue otherwise. Indeed, the Bureau's opposition makes no reference to an alter ego theory and does not even cite *Think Finance*. As such, the exception identified by the Court cannot be relied upon to add EIS as a party to the Tolling Agreement.

law permits parties to add additional parties to a contract through reformation. Instead, the Bureau simply assumes that federal law and California law diverge on this important rule. But assumptions and lawyer argument alone do not come close to the clear and convincing standard.

In any event, the result *is* the same under federal common law. The Ninth Circuit "'discerns no difference between [California] and federal contract law.'" *Novoa v. GEO Grp., Inc.*, 2022 WL 2189626, at *12 (C.D. Cal. Jan. 25, 2022) (quoting *Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. California*, 618 F.3d 1066, 1073 (9th Cir. 2010)). After all, the commentary and illustrations in Section 155 describe correcting errors in the *terms* of a contract between two parties, such as price, property description, and the like. Nothing in Section 155 indicates that a contract can be reformed to add a new *party* to an agreement. Thus, whether under federal or state law, "a court of equity does not have the power to add a party to a contract or substitute parties to a contract where the effect may be to make a new contract." 66 Am. Jur. 2d Reformation of Instruments § 47.

## IV. <u>The Court Should Strike Allegations About The Tolling Agreements</u>

The allegations in the SAC asserting that a tolling agreement existed "between the Bureau and EIS," or that any tolling agreement applies to EIS by reformation or otherwise, should be stricken as immaterial and impertinent under Rule 12(f). It is well-settled that a court may strike "any redundant, immaterial, impertinent, or scandalous matter" to avoid the "expenditure of time and money that must arise from litigating spurious issues." The grounds for striking appear on the face of the pleadings and in matters properly subject to judicial notice.

Here, the operative, judicially noticeable Fourth Tolling Agreement identifies only the Bureau and Experian Holdings, Inc.—not EIS—as parties, and this Court has already recognized as much. Allegations to the contrary are not entitled to the assumption of truth when contradicted by the document incorporated by reference and subject to judicial notice. Because reformation cannot be used to add an

additional party to a contract, those tolling allegations cannot affect the statute-of-limitations analysis for the Discrete Violations as a matter of law, rendering them immaterial to any claim or defense. *See* Fed. R. Civ. P. 12(f); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir. 2001) (court need not accept allegations contradicted by exhibits or judicially noticeable matters); *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (Rule 12(f) serves to weed out spurious issues).

**CONCLUSION**

For the foregoing reasons, EIS's partial motion to dismiss and motion to strike should be granted.

Dated: October 10, 2025

JONES DAY

By: */s/ Richard J. Grabowski*
Richard J. Grabowski

Attorneys for Defendant
EXPERIAN INFORMATION SOLUTIONS, INC.