1  Richard J. Grabowski (State Bar No. 125666)
2  rgrabowski@jonesday.com
   John A. Vogt (State Bar No. 198677)
3  javogt@jonesday.com
4  Ryan D. Ball (State Bar No. 321773)
   rball@jonesday.com
5  JONES DAY
6  3161 Michelson Drive, Suite 800
   Irvine, CA  92612
7  (T) 949-851-3939
8  (F) 949-553-7539

9  Attorneys for Defendant
   EXPERIAN INFORMATION SOLUTIONS,
10 INC.

11              UNITED STATES DISTRICT COURT

12              CENTRAL DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| 14  CONSUMER FINANCIAL PROTECTION BUREAU, | Case No. 8:25-cv-00024-MWC-DFM |
| 15 | |
| 16              Plaintiff, | **DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE AFFIRMATIVE DEFENSES TO AMENDED ANSWER TO COMPLAINT** |
| 17       v. | |
| 18  EXPERIAN INFORMATION SOLUTIONS, INC., | |
| 19 | |
| 20              Defendant. | |
| 21 | Date:      January 30, 2026 |
| 22 | Time:      1:30 p.m. |
|    | Place:     Courtroom 6A |
| 23 | |

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

**Page(s)**

INTRODUCTION ....................................................................................................... 1

LEGAL STANDARD ................................................................................................. 3

ARGUMENT ............................................................................................................... 3

    I.     The "Fair Notice" Standard Applies To Affirmative Defenses ............ 3

    II.    Experian's Affirmative Defenses Are Sufficiently Pled ..................... 6

          A.     Experian plausibly alleges a fair notice defense ....................... 6

          B.     Experian plausibly alleges an estoppel defense ........................ 8

          C.     Experian plausibly alleges a waiver defense ............................ 10

          D.     Experian plausibly alleges a laches defense ............................. 12

          E.     Experian plausibly alleges a mootness defense ........................ 14

    III.    The Motion Should Be Denied For Lack Of Prejudice ..................... 15

CONCLUSION .......................................................................................................... 16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<small>ASES</small>

*ACCU Casting Co. Inc. v. Yunhong Zou*,
  2023 WL 6783302 (C.D. Cal. May 19, 2023)......................................................5

*Artist Revenue Advocs., LLC v. West*,
  2025 WL 2014314 (C.D. Cal. May 16, 2025)..................................................3, 5

*Bercut-Vandervoort & Co. v. Maison Tarride Ledroit & Cie*,
  2006 WL 8442285 (N.D. Cal. June 1, 2006) ...................................................14

*Boring v. Murillo*,
  2024 WL 4002840 (C.D. Cal. Aug. 22, 2024) ..................................................15

*Brown v. Duringer L. Grp. PLC*,
  2024 WL 2103965 (C.D. Cal. Apr. 22, 2024)......................................................5

*Chan v. ArcSoft, Inc.*,
  2023 WL 8260886 (N.D. Cal. Nov. 29, 2023) ..................................................10

*Coinbase, Inc. v. SEC*,
  126 F.4th 175 (3d Cir. Jan. 13, 2025)..................................................................8

*Consumer Fin. Prot. Bureau v. Moseley*,
  2015 WL 12834015 (W.D. Mo. May 26, 2015) ................................................15

*Consumer Fin. Prot. Bureau v. Noh*,
  2022 WL 3574284 (C.D. Cal. July 21, 2022) ............................................passim

*Crook v. San Bernardino Cnty. Sheriff's Dep't*,
  2024 WL 3469042 (C.D. Cal. June 13, 2024).....................................................5

*Daniels v. Dixon*,
  2022 WL 2101740 (C.D. Cal. Mar. 22, 2022) ................................................3, 7

*Diamond S.J. Enter., Inc. v. City of San Jose*,
   395 F. Supp. 3d 1202 (N.D. Cal. 2019) ................................................................. 3

*Diaz v. Heredia*,
   2024 WL 4381364 (C.D. Cal. Jan. 4, 2024) ........................................................... 5

*FCC v. Fox Television Stations, Inc.*,
   567 U.S. 239 (2012) ................................................................................................ 7

*F.D.I.C. v. Niblo*,
   821 F. Supp. 441 (N.D. Tex. 1993) ...................................................................... 11

*FTC v. Affiliate Strategies, Inc.*,
   2010 WL 11470103 (D. Kan. June 8, 2010) ................................................. 14, 15

*FTC v. Affordable Media*,
   179 F.3d 1228 (9th Cir. 1999) ..................................................................... 14, 15

*FTC v. Am. Tax Relief, LLC*,
   2011 WL 13135578 (C.D. Cal. Oct. 19, 2011) ................................................... 16

*FTC v. Amazon.com, Inc.*,
   2024 WL 4839389 (W.D. Wash. Nov. 20, 2024) ...................................... 9, 12, 13

*FTC v. Directv, Inc.*,
   2015 WL 9268119 (N.D. Cal. Dec. 21, 2015) ........................................... 6, 9, 12

*FTC v. Dluca*,
   2018 WL 4794518 (S.D. Fla. Sept. 5, 2018) ............................................... 14, 15

*FTC v. Hang-Ups Art Enters., Inc.*,
   1995 WL 914179 (C.D. Cal. Sept. 27, 1995) ...................................................... 14

*Francis v. Luna*,
   2024 WL 6896204 (C.D. Cal. Oct. 30, 2024) .............................................. 5, 6, 8

*Garcia v. Salvation Army*,
   918 F.3d 997 (9th Cir. 2019) .................................................................................. 4

*Gen. Convention of New Jerusalem in United States of Am. v.*
   *Calamigos Ranch Corp.,*
   2023 WL 6192704 (C.D. Cal. Aug. 10, 2023) ...................................................... 5

*Gen. Elec. Co. v. E.P.A.,*
   290 F.3d 377 (D.C. Cir. 2002) ............................................................................... 12

*In re Honest Co., Inc. Sec. Litig.,*
   343 F.R.D. 147 (C.D. Cal. 2022) ........................................................................... 4

*Kohler v. Flava Enters, Inc.,*
   779 3d 1016, 1019 (9th Cir. 2015) ......................................................................... 6

*League of United Latin Am. Citizens v. INS,*
   1989 WL 252578 (C.D. Cal. Aug. 12, 1989) ....................................................... 10

*Lettuce Entertain You Enters. Inc. v. 1541 Ocean LLC,*
   2024 WL 3915131 (C.D. Cal. July 16, 2024) ....................................................... 5

*Martin v. Consultants & Adm'rs, Inc.,*
   966 F.2d 1078 (7th Cir. 1992) ............................................................................... 13

*Mary Pickford Found. v. Timeline Films, LLC,*
   2013 WL 12131550 (C.D. Cal. Jan. 11, 2013) ..................................................... 15

*McGuire v. City of Los Angeles,*
   2025 WL 2631616 (C.D. Cal. May 14, 2025) ....................................................... 4

*MD Hydration Inc. v. Oceans IV Hydration LLC,*
   2024 WL 6085340 (C.D. Cal. Dec. 23, 2024) ....................................................... 5

*Meridian Rapid Def. Grp. LLC v. Delta Sci. Corp.,*
   2024 WL 5411395 (C.D. Cal. Feb. 8, 2024) ......................................................... 5

*Nippon Sigmax Co., Ltd. v. Kranos Corp.,*
   2021 WL 2634823 (C.D. Cal. June 25, 2021) ....................................................... 5

*Oxnard Manor LP v. Hallmark Specialty Ins. Co.,*
   2023 WL 9471263 (C.D. Cal. July 31, 2023) ....................................................... 5

*Rodgers v. Cassin*,
    2024 WL 4329086 (C.D. Cal. Aug. 26, 2024) ...................................................... 5

*Salyers v. Metro. Life Ins. Co.*,
    871 F.3d 934 (9th Cir. 2017) ................................................................................ 11

*SEC v. Payward, Inc.*,
    763 F. Supp. 3d 901 (N.D. Cal. 2025) ............................................................... 7, 8

*SEC v. Sands*,
    902 F. Supp. 1149 (C.D. Cal. 1995) ............................................................... 10, 11

*Simmons v. Navajo Cty.*,
    609 F.3d 1011 (9th Cir. 2016) ................................................................................ 4

*Strategic Partners, Inc. v. FIGS, Inc.*,
    2019 WL 12435672 (C.D. Cal. Aug. 19, 2019) .................................................. 14

*T.L. v. Orange Unified Sch. Dist.*,
    2024 WL 305387 (C.D. Cal. Jan. 9, 2024) ........................................................... 5

*Toyo Tire Holdings of Americas Inc. v. Ameri & Partners, Inc.*,
    2024 WL 1684482 (C.D. Cal. Mar. 13, 2024) ...................................................... 5

*United States v. Innovative Biodefense, Inc.*,
    2019 WL 6971054 (C.D. Cal. Aug. 22, 2019) .................................................... 12

*Whittlestone, Inc. v. Handi-Craft Co.*,
    618 F.3d 970 (9th Cir. 2010) ................................................................................. 3

*Wyshak v. City Nat. Bank*,
    607 F.2d 824 (9th Cir. 1979) ............................................................................. 4, 6

1    **<u>INTRODUCTION</u>**

2        The Bureau's motion to strike is an extraordinary request that asks this Court

3    to eliminate multiple meritorious defenses at the threshold—without discovery and

4    contrary to the strong presumption in this Circuit that Rule 12(f) motions are

5    disfavored and should be denied unless it is clear the defenses could not possibly

6    succeed. The motion fails that demanding standard. Each challenged defense—fair

7    notice, estoppel, waiver, laches, and mootness—is either properly pled under the

8    governing "fair notice" standard for affirmative defenses or, at minimum, plausibly

9    stated even under a heightened plausibility test, and each turns on factual issues not

10   suitable for resolution on the pleadings. Denying the motion is consistent with the

11   Ninth Circuit's admonition that striking defenses is appropriate only where there are

12   no questions of fact, the questions of law are clear and not in dispute, and under no

13   set of circumstances could the defense succeed.

14       *First*, the Bureau urges the Court to apply *Iqbal/Twombly* to Experian's

15   defenses, but the Ninth Circuit's "fair notice" standard governs affirmative defenses

16   and requires only that the pleading identify the nature and grounds of the defense,

17   not detailed facts. Experian's Answer clears that bar several times over. Even courts

18   applying the plausibility standard have denied motions to strike where, as here, the

19   defenses identify concrete legal theories and factual predicates tied to the agency's

20   own statements and conduct.

21       *Second*, the Bureau's bid to preclude Experian's fair notice defense ignores

22   that due process is a fact-intensive inquiry that turns on what a regulated entity could

23   reasonably understand at the time of the conduct. Experian alleges that over a decade

24   of supervision, the Bureau did not object to the very dispute-handling practices it

25   now challenges and, at points, affirmatively praised Experian's use of "automated

26   protocols" to transmit dispute information efficiently—the very approach the Bureau

27   now condemns. Those allegations, if proven, easily warrant development through

28   discovery and trial.

EIS'S OPPOSITION TO PLTF'S MTN. TO
STRIKE AFFIRMATIVE DEFENSES
Case No. 8:25-cv-00024-MWC-DFM

*Third*, Experian's estoppel and waiver defenses rest on specific agency representations—most notably, the Bureau's public statements during the early months of COVID-19 that it would not "cite in an examination or bring an enforcement action" against CRAs making good-faith efforts on dispute reinvestigations—coupled with the Bureau's subsequent about-face to pursue precisely those claims. Those allegations plausibly allege affirmative misconduct and induced reliance sufficient to permit the defenses to proceed, particularly at this stage.

*Fourth*, laches is likewise adequately pled. Experian alleges extended supervisory engagement on the same issues, selective enforcement after years of acquiescence, and dilatory investigation-to-enforcement conduct that together caused concrete prejudice—issues that cannot be resolved on the pleadings and that several courts have allowed to proceed as defenses in government enforcement actions where factual development is needed.

*Fifth*, Experian's mootness defense is also properly alleged. The Answer explains that several challenged policies, procedures, and systems have been discontinued or revised; discovery will confirm that the alleged conduct is not reasonably expected to recur. Courts routinely deny motions to strike mootness defenses on similar allegations because the analysis turns on a record, not notice pleading.

Finally, the Bureau's claimed "prejudice" is no reason to strike. Its argument can be reduced to the assertion that discovery into its own guidance, supervisory posture, and enforcement decisions would be "irrelevant"—but those subjects are central to the very defenses the Bureau seeks to preempt. The Rules do not allow striking well-noticed defenses simply to avoid discovery into topics the defenses put squarely at issue and the plaintiff wishes to avoid.

Rule 12(f) exists to excise truly spurious defenses. This is not that case. The Bureau's motion should be denied so that the parties can test these defenses on a factual record and the Court can adjudicate them on the merits.

## LEGAL STANDARD

Federal Rule of Civil Procedure Rule 8(c) requires a party to "affirmatively state any avoidance of affirmative defense." Federal Rule of Civil Procedure 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The purpose of a Rule 12(f) motion "is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (internal quotation marks omitted). However, "[m]otions to strike are generally disfavored and should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *Diamond S.J. Enter., Inc. v. City of San Jose*, 395 F. Supp. 3d 1202, 1216 (N.D. Cal. 2019) (internal quotations omitted).

In particular, "[i]n the Ninth Circuit, motions to strike affirmative defenses are disfavored." *Daniels v. Dixon*, 2022 WL 2101740, at *2 (C.D. Cal. Mar. 22, 2022). "Accordingly, a court will generally not grant a motion to strike an affirmative defense unless the moving party can show that 'there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defense succeed.'" *Id.* (quoting *Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1032 (C.D. Cal. 2002)). Moreover, "courts often require a showing of prejudice by the moving party before granting a motion to strike affirmative defenses." *Id.* "When striking a claim or defense, leave to amend should be freely given if doing so does not cause prejudice to the opposing party." *Artist Revenue Advocs., LLC v. West*, 2025 WL 2014314, at *2 (C.D. Cal. May 16, 2025).

## ARGUMENT

### I.    The "Fair Notice" Standard Applies To Affirmative Defenses

Despite acknowledging that affirmative defenses must give "fair notice," the Bureau argues that the "fair notice" standard is the same as the *Iqbal/Twombly*

plausibility standard. ECF No. 106-1 ("Motion") at 3.[1] "The CFPB is wrong. The Ninth Circuit applies the 'fair notice' standard, and not the heightened pleading standard identified by *Twombly* and *Iqbal*, when evaluating motions to strike affirmative defenses." *Consumer Fin. Prot. Bureau v. Noh*, 2022 WL 3574284, at *1 (C.D. Cal. July 21, 2022) (rejecting CFPB's argument that "an affirmative defense must satisfy *Twombly* and *Iqbal* pleading requirements, and . . . that Defendants must plead each element of each defense").

The CFPB's contrary argument defies Ninth Circuit precedent. "[E]ven following *Twombly* and *Iqbal*, at least two published Ninth Circuit decisions have stated that notice pleading is sufficient for affirmative defenses." *McGuire v. City of Los Angeles*, 2025 WL 2631616, at *6 (C.D. Cal. May 14, 2025) (citing *Simmons v. Navajo Cty.*, 609 F.3d 1011, 1023 (9th Cir. 2010), *abrogated on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc) and *Kohler v. Flava Enters, Inc.*, 779 3d 1016, 1019 (9th Cir. 2015) ("[T]he fair notice required by the pleadings standards only requires describing the defense in general terms.") (citation and quotations omitted)); *see also Garcia v. Salvation Army*, 918 F.3d 997, 1008 (9th Cir. 2019) (citing *Simmons* for "fair notice" standard); *Wyshak v. City Nat. Bank*, 607 F.2d 824, 827 (9th Cir. 1979) (fair notice standard).

That precedent comports with the statutory language. The Supreme Court's holdings in *Twombly* and *Iqbal* "rest upon the understanding" that Rule 8(a)(2) requires the party seeking relief to provide "'a short and plain statement of the claim *showing* that the pleader is entitled to relief.'" *In re Honest Co., Inc. Sec. Litig.*, 343 F.R.D. 147, 152 (C.D. Cal. 2022) (quoting Fed. R. Civ. P. 8(a)(2)). But Rule 8(c) does not require the responding party to *show* anything; it "merely requires the responding party [to] '*state* any avoidance or affirmative defense.'" *Id.* (quoting Fed. R. Civ. P. 8(c)). "The difference in language is significant." *Id.* The fact that "only

---

[1] Experian's citations are to the page number of the document, not the ECF page number.

EIS'S OPPOSITION TO PLTF'S MTN. TO
STRIKE AFFIRMATIVE DEFENSES
Case No. 8:25-cv-00024-MWC-DFM

Rule 8(a) requires a 'showing' suggests only it should be governed by the plausibility standard." *Nippon Sigmax Co., Ltd. v. Kranos Corp.*, 2021 WL 2634823, at *3 (C.D. Cal. June 25, 2021); *see also Francis v. Luna*, 2024 WL 6896204, at *3 (C.D. Cal. Oct. 30, 2024) (same).

Experian recognizes that this Court has previously applied the *Iqbal/Twombly* plausibility standard to affirmative defenses. *See Artist Revenue Advocs.*, 2025 WL 2014314, at *2. But, in so ruling, the Court cited to *Northern* District cases in stating that "[c]ourts in this district have 'held that the heightened pleading standard for complaints articulated in *Twombly* and extended to all civil complaints in *Iqbal* applies to affirmative defenses." *Id.* In fact, the converse is true:  courts in the *Central* District have routinely and repeatedly followed the Ninth Circuit in applying the "fair notice" standard to affirmative defenses. *MD Hydration Inc. v. Oceans IV Hydration LLC*, 2024 WL 6085340, *1 n.1 (C.D. Cal. Dec. 23, 2024) (rejecting plaintiff's argument that *Iqbal/Twombly* standing applies and "joins in the reasoning of other courts in this district in concluding that the plausibility standard under *Iqbal/Twombly* does not apply to affirmative defenses." (collecting cases)).[2] This Court has even applied the "fair notice" standard in ruling on a motion to strike affirmative defenses brought by the Bureau. *Noh*, 2022 WL 3574284, at *2.

Under the fair notice standard, "[t]he key to determining the sufficiency of

---

[2] *See also Rodgers v. Cassin*, 2024 WL 4329086 (C.D. Cal. Aug. 26, 2024) (finding Experian's affirmative defenses sufficient under fair notice standard); *Lettuce Entertain You Enters. Inc. v. 1541 Ocean LLC*, 2024 WL 3915131 (C.D. Cal. July 16, 2024); *Crook v. San Bernardino Cnty. Sheriff's Dep't*, 2024 WL 3469042 (C.D. Cal. June 13, 2024); *Brown v. Duringer L. Grp. PLC*, 2024 WL 2103965 (C.D. Cal. Apr. 22, 2024); *Toyo Tire Holdings of Americas Inc. v. Ameri & Partners, Inc.*, 2024 WL 1684482 (C.D. Cal. Mar. 13, 2024); *Meridian Rapid Def. Grp. LLC v. Delta Sci. Corp.*, 2024 WL 5411395 (C.D. Cal. Feb. 8, 2024); *T.L. v. Orange Unified Sch. Dist.*, 2024 WL 305387 (C.D. Cal. Jan. 9, 2024); *Diaz v. Heredia*, 2024 WL 4381364 (C.D. Cal. Jan. 4, 2024); *Gen. Convention of New Jerusalem in United States of Am. v. Calamigos Ranch Corp.*, 2023 WL 6192704 (C.D. Cal. Aug. 10, 2023); *Oxnard Manor LP v. Hallmark Specialty Ins. Co.*, 2023 WL 9471263 (C.D. Cal. July 31, 2023); *Gen. Convention of New Jerusalem in United States of Am. v. Calamigos Ranch Corp.*, 2023 WL 6192704 (C.D. Cal. Aug. 10, 2023); *ACCU Casting Co. Inc. v. Yunhong Zou*, 2023 WL 6783302 (C.D. Cal. May 19, 2023).

pleading an affirmative defense is whether it gives [the] plaintiff fair notice of the defense." *Wyshak*, 607 F.2d at 827. "Fair notice generally requires that the defendant state the nature and grounds for the affirmative defense. It does not, however, require a detailed statement of facts." *Kohler*, 280 F.R.D. at 564 (internal citation omitted). The fair notice standard therefore "does not require affirmative defenses to 'include facts sufficient to demonstrate plausible entitlement to relief.'" *Luna*, 2024 WL 6896204, at *3.

The Bureau does not (and cannot) argue that Experian's affirmative defenses do not satisfy the fair notice standard. Each of the defenses "state the nature and grounds" for the affirmative defense and the Bureau does not argue that Experian failed to plead sufficient information for it to ascertain the basis for the affirmative defenses. For that reason alone, the Bureau's motion to strike should be denied. *See Noh*, 2022 WL 3574284, at *2 (denying motion to strike laches under "fai6r notice" standard); *FTC v. Directv, Inc.*, 2015 WL 9268119, at *3 (N.D. Cal. Dec. 21, 2015).

## II.    Experian's Affirmative Defenses Are Sufficiently Pled

Even if the "fair notice" standard does not apply, Experian plausibly alleged each of its affirmative defenses under the *Iqbal/Twombly* standard.

### A.    Experian plausibly alleges a fair notice defense

For its Second Affirmative Defense, Experian alleges that the Bureau's claims "are barred, in whole or in part, on the grounds that Experian did not have fair notice that its alleged conduct violated the FCRA or CFPA." ECF No. 105 at 31. As Experian's Answer alleges in detail, the Bureau supervised Experian for over a decade without objecting to the very dispute-handling policies, procedures, systems, and practices the CFPB now challenges, and in some instances appeared to endorse them; given that regulatory posture and governing law, Experian could not reasonably have known its conduct was prohibited. Id. at 31-33. For example, the Bureau previously praised Experian's use of automated protocols for reinvestigating consumer disputes – the same conduct the Bureau challenges in this case. Id. at 32.

EIS'S OPPOSITION TO PLTF'S MTN. TO
STRIKE AFFIRMATIVE DEFENSES
Case No. 8:25-cv-00024-MWC-DFM

Experian's allegations more than plausibly allege the fair notice defense, which asks whether, at the time of the conduct, the law "fail[ed] to provide a person of ordinary intelligence fair notice of what is prohibited, or [was] so standardless that it authorize[d] or encourage[d] seriously discriminatory enforcement." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253-54 (2012).

In arguing otherwise, the Bureau overreads this Court's prior motion to dismiss order. In denying Experian's motion to dismiss for lack of fair notice, the Court observed that "determining whether a defendant had fair notice of it purported offense requires examination of the facts of the case." ECF No. 33 at 12 (citing *SEC v. Payward, Inc.*, 763 F. Supp. 3d 901, 912 (N.D. Cal. 2025)). The Court then found that, *at the pleading stage*, Experian did not "establish undisputed facts" that could support its fair notice argument other than that "the Bureau was in a supervisory role." *Id*. The Court did *not* hold—as required to strike an affirmative defense—that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could Experian's fair notice defense succeed. *Daniels*, 2022 WL 2101740, at *2.

Indeed, the Court's citation to *Payward* demonstrates why the CFPB's motion is meritless. There, as here, the SEC argued that the Court's ruling on the defendant's motion to dismiss doomed its "fair notice" affirmative defense. 763 F. Supp. 3d at 912-13. According to the SEC, because the Court had already issued a ruling interpreting the meaning of certain statutory terms in the Exchange Act as applied to the defendant's conduct, the Court could find the "fair notice" affirmative defense legally unsound without considering the SEC's conduct. *Id*. The Court disagreed.

After noting that the fair notice defense "requires examination of the facts of the case," the Court held that the defendant was entitled to propound discovery exploring "the SEC's own published guidance and past behavior" to establish lack of fair notice. *Id.* at 913. Because the defendant's fair notice defense was premised on the SEC's conduct, which involved "issu[ing]contradictory and shifting enforcement

guidance such that an ordinary entity in [defendant's] position could not reasonably understand its conduct to be violative of the Exchange Act," the affirmative defense was sufficiently pled. *Id*. at 913 n.11; *see also id*. at 912 ("[*Coinbase, Inc. v. SEC*] makes clear that fair notice and due process affirmative defenses are appropriately part of the litigation of enforcement actions." (citing 126 F.4th 175 (3d Cir. Jan. 13, 2025))).

As in *Payward*, the Bureau's prior conduct, such as public statements and those made during supervision, are "relevant" to Experian's fair notice defense and were not considered in ruling on the motion to dismiss. Because Experian has plausibly alleged a fair notice defense, it is entitled to explore the Bureau's own published guidance and past behavior. *Payward*, 763 F. Supp. 3d at 913; *Luna*, 2024 WL 5182198, at *5 ("To strike an affirmative defense, Plaintiff has the burden of demonstrating 'there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed." (quotations omitted)).

### B.    Experian plausibly alleges an estoppel defense

For its Third Affirmative Defense, Experian asserts an estoppel defense, alleging that the Bureau is equitably estopped from pursuing certain claims because its own conduct affirmatively induced Experian to maintain the challenged practices and then reversed course, causing substantial injustice. ECF No. 105 at 33-34. The Answer alleges that in April and November 2020, the Bureau made public statements that it would not bring an enforcement action against a consumer reporting agency making good faith efforts to investigate disputes as quickly as possible. *Id.* at 35. Experian relied on those representations to hire and train new dispute agents and implement new protocols to ensure timing requirements were met. *Id.* The Bureau, however, now brings claims against Experian for failing to timely notify furnishers of disputes and timely complete reinvestigations during the same time period. *Id.*

The Bureau concedes that estoppel may be asserted as a defense against the

federal government so long as the government is alleged to have engaged in affirmative misconduct. *See FTC v. Directv, Inc.*, 2015 WL 9268119, at *3 (N.D. Cal. Dec. 21, 2015) ("The FTC concedes that estoppel is available against the government."); *FTC v. Amazon.com, Inc.*, 2024 WL 4839389, at *2-3 (W.D. Wash. Nov. 20, 2024). Relying on materials outside the four corners of the Answer—a surefire signal that the Bureau is improperly attempting to litigate the facts on a pleading challenge—the Bureau argues that there are no plausible allegations of affirmative misconduct. ECF No. 106-1 at 7 & n.3. That's wrong and is based on a misreading of Experian's Answer.

Nevertheless, the Bureau argues that an estoppel defense cannot be predicated on the fact that the Bureau previously did not claim that Experian's conduct amounted to violations because, in that instance, no affirmative misrepresentations of fact were made. ECF 106-1 at 6. But that characterization whistles past the graveyard, and ignores Experian's allegations, which incorporate those in its second affirmative defense (Fair Notice), and go much further. The problem is not simply that during its supervision of Experian, the Bureau remained silent; the problem is that the Bureau explicitly praised Experian's use of "automated protocols" for 'reduc[ing] the cost and time to transmit relevant [dispute] information.'" ECF 105 at 32 (citing Consumer Financial Protection Circular 2022-07, *Reasonable investigation of consumer reporting disputes*, at *5 (Nov. 10, 2022)). Because the Bureau affirmatively lauded Experian's practices, thereby inducing Experian to maintain its practices, the Bureau should be estopped from contending that those same practices are in violation of the FCRA or CFPA. *Amazon.com*, 2024 WL 4839389, at *3  (finding equitable estoppel adequately plead where Amazon alleged that the FTC "knowingly induced Amazon to maintain online enrollment and cancellation processes that the FTC now alleges violate ROSCA and the FTC Act."); *SEC v. Sands*, 902 F. Supp. 1149, 1166 (C.D. Cal. 1995), *aff'd sub nom. SEC v. First Pac. Bancorp*, 142 F.3d 1186 (9th Cir. 1998) (estoppel properly pled where

defendants "allege[d] the SEC 'tacitly approved all alleged conduct'"). At a minimum, Experian has stated a *plausible* defense.

Likewise, Experian has stated a plausible estoppel defense based on the Bureau's affirmative representation that it would not "bring an enforcement action" against Experian (or any other consumer reporting agency) for exceeding the deadlines to reinvestigate disputes so long as good faith efforts were made. ECF No. 105 at 34. The Bureau has now taken precisely the opposite position. A reasonable juror could find, based on Experian's allegations, that the Bureau's 180-degree flip-flop goes beyond mere negligence, and amounted to an active "misrepresentation." *League of United Latin Am. Citizens v. INS*, 1989 WL 252578, at *2 (C.D. Cal. Aug. 12, 1989) (internal citations omitted).

Even if it made active misrepresentations, the Bureau argues that it would not matter because it was unreasonable for anyone to rely on its public statements. ECF No. 106-1 at 7. But the reasonableness of a party's reliance is a quintessential "question of fact" for the jury. *Chan v. ArcSoft, Inc.*, 2023 WL 8260886, at *16 (N.D. Cal. Nov. 29, 2023). Unlike in the Bureau's cited cases, Experian does not allege reliance based on a stray comment or a single ambiguous communication, but on a decade of supervision with specific approvals and a pair of formal, public-facing statements during an emergency period that addressed the precise timing obligations at issue. It is for a jury to decide whether, on these facts, Experian's reliance on the Bureau's stated policy was reasonable.

## C.    Experian plausibly alleges a waiver defense

For its Fourth Affirmative Defense, Experian alleges that the Bureau intentionally relinquished its right to pursue claims challenging Experian's dispute-handling policies because, over more than a decade of supervision, the Bureau did not object to those policies and practices that it now alleges are unlawful. ECF No. 105 at 34-35. More specifically, Experian alleges that the Bureau's waived its claims in two ways.

*First*, it is undisputed that the Bureau supervised Experian for more than a decade without taking issue with its policies that it now claims are illegal. By "tacitly approv[ing] [the] alleged conduct" for years, the Bureau waived its claims challenging those practices. *Sands*, 902 F. Supp. at 1166. The Bureau moves to strike this theory in one sentence, invoking the Court's ruling, at the pleading stage, that Experian failed to demonstrate as a matter of law that the Bureau waived its right to enforce the FCRA. ECF No. 106-1 at 8 (citing ECF No. 33 at 12). But as already explained, the Court's motion to dismiss order did not hold, for all purposes and for all time, that no waiver occurred here. The Court held that Experian could not prevail on that defense as a matter of law. But it does not follow that the Bureau now prevails on that issue as a matter of law. "[T]he issue of waiver is a question of fact." *F.D.I.C. v. Niblo*, 821 F. Supp. 441, 452 (N.D. Tex. 1993). The Court's order supports Experian, not the Bureau, in recognizing that the issue of waiver is for the jury.

*Second*, the Bureau waived its claims relating to the Discrete Violations. The Bureau repeatedly represented that that it would not "cite in an examination or bring an enforcement action against a consumer reporting agency or furnisher making good faith efforts to investigate disputes as quickly as possible." ECF No. 105 at 35. Through its affirmative representations and commitments, the Bureau actions were "so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished.'" *Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934, 938 (9th Cir. 2017) (citation omitted).

The Bureau does dispute that bringing the Discrete Violations is a complete 180-degree change from its position and offers no justification for the about-face. It argues, instead, that because its commitment not to bring an enforcement action was published in a "non-binding" policy statement, the waiver doctrine cannot apply. The Bureau overlooks that even some statements labeled non-binding can bind the agency itself; one such circumstance exists "if the language of the document is such that private parties can rely on it as a norm or safe harbor by which to shape their actions."

*Gen. Elec. Co. v. E.P.A.*, 290 F.3d 377, 383 (D.C. Cir. 2002) (quotation marks or citation omitted). That is precisely the circumstance here. The Bureau affirmatively represented that it would not assert the discrete violation claims against Experian, effectively creating a safe harbor for Experian's conduct. That is a more than plausible claim of waiver.

### D. Experian plausibly alleges a laches defense

For its Fifth Affirmative Defense, Experian pleads laches on the ground that the Bureau "inexcusably and unreasonably delayed in filing and serving the Complaint," after years of supervising Experian, and that this delay—coupled with alleged "affirmative misconduct" in the form of decades-long supervision followed by selective enforcement—has prejudiced Experian. ECF No. 105 at 35.

Contrary to the government's assertion, numerous courts had held that laches may be asserted against the government, including against the Bureau specifically. *See, e.g.*, *Noh*, 2022 WL 3574284, *2; *see also Directv, Inc.*, 2015 WL 9268119, at *3; *United States v. Innovative Biodefense, Inc.*, 2019 WL 6971054, *4 (C.D. Cal. Aug. 22, 2019) (denying motion to strike laches because "if allowed further discovery Defendants may be able to prove that the three-year delay or unfair targeting does meet the threshold of 'affirmative misconduct on the part of the United States'").

Most recently, *FTC v. Amazon.com, Inc.*, 2024 WL 4839389, at *2-3 (W.D. Wash. Nov. 20, 2024), summarized the state of the law. The court explained that in this Circuit, laches is available if the defendant can prove "affirmative misconduct" by the government. *Id.* at *4. Here, Experian alleges that both unreasonable delay and affirmative misconduct, "including at least in connection with its decades-long supervision of Experian and selective enforcement of the FCRA and CFPA after a decade of supervision." ECF No. 105 at 35. As in *Amazon*, Experian has "done more than just describe [its] defense in general terms . . . as [it] ha[s] included particularized allegations that, if proven true in discovery, will establish each element' of [its] laches defense." *Id.* at *3.

It is premature to resolve, on a motion to strike, whether the pled facts will amount to "affirmative misconduct" as ultimately found by the Court. The question is whether the Answer plausibly alleges more than passive delay, and on its face it does: it pleads a sustained supervisory posture on the very issues later charged, a selective-enforcement turn, and an inexcusable lag in filing and service that together caused prejudice. That is enough to allow the defense to proceed past the pleadings.

No more persuasive is the Bureau's argument that applying laches would be inappropriate given the existence of an applicable statute of limitations. ECF No. 106-1 at 9. To start, the Bureau does not cite to authority striking a laches defense in a government action on this ground. Indeed, its own cited case declined to "declare that laches can never be applied against the government in a[] case simply because Congress has codified a statute of limitations." *Martin v. Consultants & Adm'rs, Inc.*, 966 F.2d 1078, 1091 (7th Cir. 1992). Statutes of limitations and laches serve different purposes and operate differently. A statute of limitations sets an outer boundary for filing claims; laches equips courts of equity to address prejudicial delay within, and sometimes beyond, those statutory periods by calibrating or barring equitable relief when fairness so requires. Particularly in cases where the government seeks equitable remedies—injunctions or disgorgement-like redress—laches can operate as a defense distinct from limitations, focusing on prejudice from delay rather than the bare passage of a statutory period.

Moreover, the Bureau argued, and the Court agreed, that its "Ongoing Violation" claims were timely because "the limitations period starts afresh with each new offense as they are based on a continuing course of conduct." ECF 33 at 5. The Court then held that the "Ongoing Violations (as pled) are within the limitations period even if the Bureau was aware of Experian's conduct before that period." *Id.* The Court therefore already acknowledged that the Bureau is challenging Experian's conduct that it knew about outside the statute of limitations period. Consequently, because the Bureau's claims are premised on "continuing violations" by Experian

that it knew about long before the statutory period, the doctrine of laches applies as a defense to unreasonably delaying bringing claims. *Strategic Partners, Inc. v. FIGS, Inc.*, 2019 WL 12435672, at *5 (C.D. Cal. Aug. 19, 2019) ("Relying on the continuing violation theory does not shelter a defendant from a laches defense." (citations omitted)); *Bercut-Vandervoort & Co. v. Maison Tarride Ledroit & Cie*, 2006 WL 8442285 (N.D. Cal. June 1, 2006) (noting that laches may "apply to a continuing wrong").

### E.   Experian plausibly alleges a mootness defense

For its Sixth Affirmative Defense, Experian alleges that the Bureau's claims (at least as to injunctive relief) are moot because several "challenged policies, procedures, systems, and practices" identified in the Second Amended Complaint are no longer in effect or have been revised, including changes the Bureau itself has acknowledged. ECF No. 105 at 36.

Experian does not dispute that "[m]ere voluntary cessation of allegedly illegal conduct does not moot a case.'" *FTC v. Affordable Media*, 179 F.3d 1228, 1238 (9th Cir. 1999). "Nonetheless, [a] case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *FTC v. Dluca*, 2018 WL 4794518, at *2 (S.D. Fla. Sept. 5, 2018) (citation omitted). For this reason, "various courts have refused to strike a mootness defense that was based upon defendants ceasing their actionable conduct," *Affiliate Strategies, Inc.*, 2010 WL 11470103, at *6 n.53 (collecting cases), which is precisely what Experian alleges here. *See also FTC v. Hang-Ups Art Enters., Inc.*, 1995 WL 914179, at *6 (C.D. Cal. Sept. 27, 1995) (denying motion to strike mootness defense give that "it is possible that the court finds no likelihood of recurrence").

Based on Experian's factual allegations, which must be accepted as true, Experian has sufficiently pled "that the alleged wrongful conduct is not reasonably be expected to recur." *Dluca*, 2018 WL 4794518, at *2. Consequently, because "there is a possibility that [Experian] could satisfy th[e] stringent standard" for mootness,

EIS'S OPPOSITION TO PLTF'S MTN. TO
STRIKE AFFIRMATIVE DEFENSES
Case No. 8:25-cv-00024-MWC-DFM

the motion strike should be denied. *Id.*; *see also Affordable Media*, 179 F.3d at 1238 ("It is possible, of course, that a defendant's conduct can moot the need for injunctive relief[.]"); *Affiliate Strategies, Inc.*, 2010 WL 11470103, at *6 ("Defendants might be able to demonstrate there is no likelihood of recurrence if they have stopped the allegedly actionable conduct."); *Consumer Fin. Prot. Bureau v. Moseley*, 2015 WL 12834015, at *2 (W.D. Mo. May 26, 2015).

### III.    The Motion Should Be Denied For Lack Of Prejudice

"Because of the disfavored status of motions to strike affirmative defenses, courts often require a showing of prejudice by the moving party before granting the requested relief." *Noh*, 2022 WL 3574284, at *1 (quotations and quoting source omitted); *see also Mary Pickford Found. v. Timeline Films, LLC*, 2013 WL 12131550, at *2 (C.D. Cal. Jan. 11, 2013) ("[C]ourts in this jurisdiction generally deny motions to strike when, as here, the moving party fails to show prejudice." (collecting cases)); *Boring v. Murillo*, 2024 WL 4002840 (C.D. Cal. Aug. 22, 2024) (same). The Bureau claims that it will be prejudiced if the affirmative defenses are not struck because it will be forced to engage in unnecessary discovery. ECF No. 106-1 at 12. But the Bureau's showing of prejudice rests entirely on the sufficiency of the defenses. That is, the Bureau's showing of "prejudice" can be distilled down to a request that if the Court deems Experian's affirmative defenses legally invalid, it should also find that it would be prejudicial to engage in discovery on "irrelevant material." *Id.*

But, for the reasons explained above, Experian's affirmative defenses are properly pled. And there is no dispute that discovery that Experian seeks is highly relevant to its affirmative defenses. In fact, as the Bureau notes, Experian seeks discovery related to the Bureau's policy statements regarding FCRA compliance during the early stages of COVID as well as discovery related the Bureau's Supervision Division's referral of its examination and investigation into Experian's dispute handling procedures. ECF No. 106-1 12. Such discovery is highly relevant to

EIS'S OPPOSITION TO PLTF'S MTN. TO
STRIKE AFFIRMATIVE DEFENSES
Case No. 8:25-cv-00024-MWC-DFM

Experian's affirmative defenses. Indeed, such discovery will inform, among other things, (1) when the Bureau could have known about the alleged violations, (2) why it determined that certain Experian practices that it had supervised for years now violated of the FCRA, (3) whether or not it intended to prosecute those that did not timely process disputes during COVID, and (4) whether its statements during supervision to Experian regarding FCRA compliance accurately represented the Bureau's views. Simply put, Experian seeks discovery to obtain facts necessary to establish that the Bureau engaged in "affirmative misconduct" as required to plead its affirmative defenses.

The Bureau's reliance on *FTC v. Am. Tax Relief, LLC* is misplaced. 2011 WL 13135578, at *1 (C.D. Cal. Oct. 19, 2011). There, the court struck each of the affirmative defenses—such as laches and estoppel—and then determined it would improper to have discovery focus on the FTC's actions related to the affirmative defenses. *Id*. But that is not the case here as the "Bureau's conduct and state of mind are . . . at issue." ECF No. 106-1 at 11-12. Experian's detailed allegations demonstrate as much. Experian alleges that the Bureau repeatedly informed Experian that it would not take action based on delays in processing disputes during COVID, but that was apparently not true. The Bureau also did not contest Experian's practices for more than a decade and even lauded them, but it changed its tune on that as well. In short, Experian's affirmative defenses centers on the Bureau's actions (or lack thereof) in exercising its supervisory role over Experian and discovery on those issues is therefore relevant to Experian's defenses.

## CONCLUSION

For the foregoing reasons, the Bureau's motion to strike Experian's affirmative defenses should be denied.

Dated: January 6, 2026

JONES DAY

By: */s/ Richard J. Grabowski*
    Richard J. Grabowski

Attorneys for Defendant
EXPERIAN INFORMATION
SOLUTIONS, INC.

EIS'S OPPOSITION TO PLTF'S MTN. TO
STRIKE AFFIRMATIVE DEFENSES
Case No. 8:25-cv-00024-MWC-DFM