Max Weinstein, Mass. Bar No. 600982
Email: max.weinstein@cfpb.gov
Admitted *Pro Hac Vice*
Tracy Hilmer, D.C. Bar No. 421219
Email: tracy.hilmer@cfpb.gov
Admitted *Pro Hac Vice*
CONSUMER FINANCIAL
PROTECTION BUREAU
1700 G Street, NW
Washington, DC 20552
Phone: (202) 435-9172 (Weinstein)
Phone: (202) 435-7459 (Hilmer)
Fax: (202) 435-5468

Chung H. Han, Cal. Bar No. 191757
Email: chung.han@usdoj.gov
U.S. ATTORNEY'S OFFICE
300 N. Los Angeles St., Suite 7516
Los Angeles, CA 90012
Phone: (213) 894-0474
Fax: (213) 894-7819

*Attorneys for Plaintiff*
*Consumer Financial Protection Bureau*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| Consumer Financial Protection Bureau, | Case Number: 8:25-cv-00024-MWC-DFM |
| *Plaintiff*, | |
| v. | **DECLARATION OF MAX WEINSTEIN IN SUPPORT OF PLAINTIFF'S MOTION FOR CONTINUANCE OF CASE DEADLINES** |
| Experian Information Solutions, Inc., | |
| *Defendant*. | |

DECLARATION OF MAX WEINSTEIN

I, Max Weinstein, having personal knowledge of the facts set forth below, declare:

1. I am an Enforcement Attorney employed by the Plaintiff, the Consumer Financial Protection Bureau (the "Bureau").

2. I submit this declaration to detail the Bureau's diligent efforts to prepare this case for trial and to offer good cause for the extension of the deadlines in this case.

*The Bureau's Discovery Demands*

3. The Bureau served its First Requests for the Production of Documents on June 20, 2025, consisting of thirty-six individual requests ("First Request for Production").

4. The first of the Bureau's requests demanded electronically stored information (ESI) relating to Experian's dispute resolution practices, namely, "[a] complete copy of the Consumer Assistance Processing System (CAPS) database, not limited to the Applicable Period, including all fields and other information contained therein."

5. The third request sought "[a]ll notices of the results of disputes sent by Experian to Consumers for disputes made during the Applicable Period."

6. The fourth request sought "[a]ll Documents uploaded into the NCAC Imaging System (NIS)," i.e., the system used by Experian to store documents submitted by consumers in connection with their dispute, "during the Applicable Period."

7. On August 4, 2025, Experian served responses and objections to the Bureau's First Request for Production. Experian objected to the entirety of Request No. 1 on numerous grounds.

8. Experian spent months simply re-producing the documents it had already produced to the Bureau prior to the lawsuit, despite the fact that the Bureau did not request such a re-production.

1

DECLARATION OF MAX WEINSTEIN

9.    On February 20, 2026, the Bureau moved to compel Experian's production of the data it sought in the first of its requests. Dkt. 117-1.

10.    On March 6, 2026, the Court directed Experian to produce by April 20, 2026 "the data contained in [Defendant Experian Information Solutions, Inc.'s] Dispute Response Log and the Disclosure Log within [EIS's] CAPS database for the period July 2, 2020 through the present." Dkt. 129 at 4.

11.    In addition to its First Request for Production, the Bureau served three sets of Interrogatories and three additional Requests for Production after the last of the present pleadings, Experian's Amended Answer and Affirmative Defenses, was served on November 24, 2025. The Bureau has also served Experian with two sets of Requests for Admissions.

12.    On May 1, 2026, the Bureau moved to compel the production of Experian's compliance audits, IT tickets and other quality control documents. Dkt. 168-1. On May 22, 2026, the Court granted the Bureau's motion. Dkt. 187.

13.    The Bureau served Experian with a notice of deposition pursuant to Rule 30(b)(6) on February 20, 2026. That deposition occurred and concluded on May 27, 2026.

*Experian's Discovery Demands*

14.    On September 12, 2025, the Bureau provided its responses and objections to Experian's First Request for Production of Documents and First Set of Interrogatories.

15.    The Bureau made its first production to Experian on September 12, 2025, and the Bureau considered its production substantially complete by November 13, 2025.

16.    The Bureau produced third-party materials on December 18, 2025, after completing the process required by Paragraph 8 of the Protective Order.

17.    The Bureau has supplemented its interrogatory responses four times.

18.    On April 6, 2026, Experian served on the Bureau its Requests for

2

DECLARATION OF MAX WEINSTEIN

Admissions and Second Set of Requests for Production of Documents. The Bureau responded to these requests on or about May 13, 2026.

19.    Experian served the Bureau with a Rule 30(b)(6) notice of deposition on February 25, 2026, which the Magistrate Judge substantially narrowed following a March 19, 2026 hearing on the Bureau's Motion for a Protective Order. *See* Dkt. 149, 155. That deposition occurred and concluded on May 28, 2026.

20.    Experian also took the deposition of a Bureau employee on May 26, 2026.

*The Bureau's Expert Statistician and Experian's Data Production*

21.    The Bureau has retained an expert statistician, Michael Petron and his firm Stout Risius Ross, LLC ("Stout"), to analyze the data that Experian was ordered to produce and offer expert testimony.

22.    In addition to the data that Judge McCormick ordered Experian to produce by April 20, 2026, Experian committed to produce all of the ACDV data for the same time period.

23.    Experian estimated that the data would encompass more than 90 million consumer disputes.

24.    Less than a week before its deadline, on April 14, 2026, Experian contacted the Bureau to inform the Bureau that Experian could not produce the data by April 20, but "can commit to an April 27, 2026 production date." Exhibit A, 4/14/26 Experian Email.

25.    The Bureau agreed to extend Experian's deadline to produce this data by one week, and on April 17, 2026 the parties jointly moved to extend Experian's deadline, as well as several other case deadlines. Dkt. 156.

26.    Experian informed the Court that it required the one-week extension to "conduct a short quality assurance review to ensure no errors exist in the data set." Dkt. 156-1, Declaration of Matthew Farnham, ¶ 8.

27.    The Court granted the parties' joint motion and ordered Experian to

DECLARATION OF MAX WEINSTEIN

produce its data by April 27, 2026. Dkt. 157.

28.     Experian produced data files to the Bureau on April 28 and May 1, 2026.

29.     Without delay, the Bureau proceeded to download and transmit that data to Stout, a process that itself took several days to complete.

30.     Stout proceeded to download and import the data as quickly as possible, as well as to address numerous import errors. *See* Third Supplemental Declaration of Michael J. Petron (Petron Decl.) ¶¶ 5-6.

31.     The size and complexity of the data files, as well as the import errors, resulted in the importation process taking more than 3 weeks. *Id.* ¶¶ 6-7.

32.     At the conclusion of this process Stout identified a serious discrepancy in Experian's data—there were far fewer rows of data (and thus a substantially smaller number of disputes represented) in the Dispute Response Log as compared to the Disclosure Log. *Id.* The Bureau alerted Experian's counsel immediately on May 22, 2026.

33.     On May 26, 2026, Experian confirmed that discrepancies existed in its data and informed the Bureau that it intended to re-produce four corrected data files out of the 12 data files it had previously produced to the Bureau. Exhibit B, 5/26/26 Experian Email. Experian had not previously alerted the Bureau that its initial data production had a substantial discrepancy in the number of disputes contained in the Dispute Resolution Log data as compared to the Disclosure Log data.

34.     On May 27, 2026, Experian produced three of the four files. On May 28, Experian produced the fourth file.

35.     On May 29, 2026, Experian represented that the number of disputes in the newly produced files "should equal the same as the Disclosure Log." Exhibit C, 5/29/26 Experian Email.

36.     The Bureau and Stout have begun the process of importing,

4

DECLARATION OF MAX WEINSTEIN

transferring, and reviewing the updated data. Stout has not yet confirmed that the updated data is complete or corrects the discrepancies.

37. Mr. Petron and Stout have conveyed to the Bureau that the processing and importation of Experian's newly produced data will be another substantial undertaking, which will likely require an additional four weeks. Petron Decl. ¶¶ 8-10.

38. Once processed, the Experian data will form the basis of a statistical analysis conducted by Mr. Petron, to determine the full scope of the violations identified in the Bureau's Second Amended Complaint. *See, generally*, Declaration of Michael Petron in Support of Plaintiff's Motion to Compel, Dkt. 120, attachment 19.

39. The Bureau has directed Mr. Petron both (1) to conduct queries of all disputes represented in Experian's dataset to identify all violations of law in the full population when feasible; and (2) to design statistically valid random samples to determine the frequency of violations that cannot be feasibly identified by a simple query. *See id.* ¶ 4.

40. Once Mr. Petron has identified statistically valid random samples, the Bureau will require full documentation of those disputes from Experian, including the results notices Experian sends to consumers and any documentation submitted by consumers in support of their dispute. The Bureau already requested this documentation in its First Request for Production, served on June 20, 2025. *See* ¶¶ 5-6 *supra*.

41. The Bureau had prepared to request samples from Experian's full dataset and was planning to do so on or about May 22, 2026. Before the Bureau made that request, however, Stout identified the discrepancy and incompleteness of Experian's data. It is not possible to draw a statistically valid random sample from a population if data regarding that population is incomplete.

42. The Bureau thus has not obtained full documentation regarding a

5

DECLARATION OF MAX WEINSTEIN

sample of disputes identified in Experian's data production in this litigation.

43.    The Bureau has obtained documentation relating to samples drawn from an older, partial selection of Experian data. This data, obtained during the Bureau's civil investigation that preceded this lawsuit, relates to only 6 dispute codes out of a possible 27 and dates to the period between April 2020 and February 2022. The Bureau has alleged continuing violations of law beyond February 2022. Dkt. 77 ¶¶ 129, 136, 141, 147, 171 and 176. Moreover, the Bureau and Experian dispute whether the entire period encompassed by the investigative production is within the statute of limitations applicable to this case.

44.    Based on Experian's past productions, the Bureau believes that Experian is able to produce full documentation of the samples identified by the Bureau in no more than four weeks. The Bureau anticipates requesting full documentation for no more than 500 sample disputes.

45.    After receiving full documentation for sample disputes, the Bureau will require additional time to review the sample disputes and convey that information to Stout for inclusion in its report. Based on the Bureau's experience reviewing Experian's dispute files, the Bureau estimates that this process will require an additional four weeks.

46.    If the current deadline for expert discovery is not extended, the Bureau would be highly and unduly prejudiced. The Bureau would be unable to present evidence, to which it is entitled by Court order, regarding the full population of Experian's disputes from July 2, 2020 to present.

Dated: June 1, 2026                    Respectfully submitted,

                                       /s/ Max Weinstein

                                       Max Weinstein
                                       *Consumer Financial Protection Bureau*

DECLARATION OF MAX WEINSTEIN