Max Weinstein, Mass. Bar No. 600982
Email: max.weinstein@cfpb.gov
Admitted *Pro Hac Vice*
Tracy Hilmer, D.C. Bar No. 421219
Email: tracy.hilmer@cfpb.gov
Admitted *Pro Hac Vice*
Nicholas Lee, D.C. Bar No. 1004186
Email: nicholas.lee@cfpb.gov
Admitted *Pro Hac Vice*
Chelsea Peter, D.C. Bar No. 1007462
Email: chelsea.peter@cfpb.gov
Admitted *Pro Hac Vice*
CONSUMER FINANCIAL
PROTECTION BUREAU
445 12th Street, SW
Washington, DC 20024-2101
Phone: (202) 435-9172 (Weinstein)
Phone: (202) 435-7459 (Hilmer)
Fax: (202) 435-5468

Chung H. Han, Cal. Bar No. 191757
Email: chung.han@usdoj.gov
U.S. ATTORNEY'S OFFICE
300 N. Los Angeles St., Suite 7516
Los Angeles, CA 90012
Phone: (213) 894-0474
Fax: (213) 894-7819

*Attorneys for Plaintiff*
*Consumer Financial Protection Bureau*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| Consumer Financial Protection Bureau, <br><br> Plaintiff, <br><br> v. <br><br> Experian Information Solutions, Inc., <br><br> Defendant. | Case No. 8:25-cv-00024-MWC-DFM <br><br> **PLAINTIFF'S PROPOSED MOTION FOR CLARIFICATION OF THE COURT'S JUNE 8, 2026 ORDER** <br><br> Judge: Hon. Michelle Williams Court |

Plaintiff Consumer Financial Protection Bureau (the "Bureau"), by and through counsel of record, pursuant to Local Rule 7-1, moves for clarification of the Court's order dated June 8, 2026 (the "June 8, 2026 Order"), which extended the deadlines in this matter by 45 days and held that the Bureau should "suffer no prejudice stemming from [Experian's] faulty data" and should be "in the same position it would have been in had [Experian's] data production been correct." Dkt. 191 at 4. The Bureau moved for an extension because Defendant Experian Information Solutions, Inc. ("Experian") produced faulty data regarding the consumer disputes that are the subject of this case, which it only corrected one day before the close of fact discovery. That last-minute production left insufficient time before the deadline for expert disclosures for the Bureau's expert statistician to identify statistically valid random samples of consumer disputes, obtain certain supplemental documentation associated with those disputes from Experian, and perform analyses of this material. Dkt. 188-1 at 3-4. The Bureau first requested this supplemental dispute documentation for all of Experian's disputes on June 20, 2025, but had long agreed to limit its requests to a random sample of disputes to be identified by the Bureau upon receipt of the data from Experian. Had Experian produced accurate data in the first place and not required additional time to produce corrected data, the Bureau would have identified the at-issue sample documentation no later than May 22, 2026. After uploading, validating and sampling Experian's corrected data as quickly as possible, the Bureau identified 423 sample disputes to Experian and requested the supplemental documentation on June 18 and June 23, 2026.

Experian now refuses to produce the sample documentation for these 423 disputes, claiming that the Bureau's identification of the samples was untimely because the Bureau did not identify them during fact discovery. But the Bureau's requests for production applicable to the at issue sample documentation were served on Experian more than a year ago, and Experian, having only produced

accurate data on the day before fact discovery ended, caused the delays that made identification of the samples during fact discovery *impossible*.

The parties disagree as to the import of this Court's statements that the Bureau should suffer no prejudice stemming from Experian's faulty data. Experian contends that the Bureau should be barred from receiving any documentation in support of its expert's sample of consumer disputes because the Bureau was unable to identify them within 24 hours of receiving Experian's corrected data. The Bureau contends that the only way to avoid prejudice and ensure that the Bureau is in the same position it would have been in had Experian's data production been correct is for Experian to produce the sample documents now. Any other reading of the Court's Order would reward Experian for its failure to timely produce usable data and deprive the Bureau of highly valuable evidence.

At the Bureau's request, the parties met and conferred regarding this issue on June 25, 2026. In order to resolve the disagreement quickly and with the most efficient expenditure of the parties' and the Court's resources, the Bureau proposed an informal resolution by Judge McCormick. Experian agreed. The Court set a hearing date of July 7, 2026, and the parties submitted two-page letter briefs. At the hearing, Experian withdrew its consent to proceed before Judge McCormick.[1]

The Bureau therefore seeks guidance from the Court on whether its June 8, 2026 Order contemplated that the Bureau would still be able to promptly identify and obtain the documentation needed for a full review by the Bureau's expert of a statistically valid random sample of Experian's disputes.

## I.   BACKGROUND

The Bureau served discovery requests sufficient to allow it to analyze a statistically valid random sample of Experian disputes at the outset of this litigation. On June 20, 2025, the Bureau requested from Experian "[a] complete

---

[1] The Bureau has requested the transcript of the proceedings, and will file it as supplemental support for this motion as soon as the Bureau receives it.

PLAINTIFF'S PROPOSED MOTION FOR
CLARICATION OF THE COURT'S JUNE 8, 2026
ORDER

2

copy of the Consumer Assistance Processing System (CAPS) database." Weinstein Decl. ¶¶ 3-4. This is the data that is necessary for an expert to generate a statistically valid random sample. After extensive efforts to meet and confer and to obtain additional technical information about Experian's systems, the Bureau moved to compel. Dkt. 120. On March 6, 2026, Judge McCormick directed Experian to produce the requested data for all relevant consumer disputes by April 20, 2026. Dkt. 129.

Experian maintains certain highly relevant documentation regarding each dispute that is not captured in the CAPS database, namely, the results letters Experian sent to consumers and documentation submitted by consumers in support of their dispute, if any. Weinstein Decl. ¶ 5. This information is critical to understanding what information Experian had available to it when assessing consumers' disputes and how Experian ultimately resolved the disputes. The Bureau requested this critical documentation on June 20, 2025, in Request Nos. 3 and 4 of its First Request for the Production of Documents. *Id.* ¶¶ 5-7. Request No. 3 sought "[a]ll notices of the results of disputes sent by Experian to Consumers for disputes made [on or after January 1, 2018]." *Id.* ¶ 6. Request 4 sought "[a]ll Documents uploaded into the NCAC Imaging System (NIS) [on or after January 1, 2018]," *Id.* ¶ 7, which the Bureau understands to consist predominantly or entirely of documentation submitted by consumers in connection with their disputes. In response to these requests, Experian averred that, subject to its stated objections:

> EIS agrees to reproduce all documents produced to the Bureau during the Dispute Resolution Examination and subsequent investigation. EIS is also willing to meet and confer with the Bureau to identify what additional documents, if any, are relevant to the Bureau's claims.

*Id.* ¶ 9.

Together, the data in the CAPS database along with the dispute result notices and consumer-submitted documentation provide the most complete understanding

of what consumers were disputing and how Experian handled the disputes. Not only did the Bureau serve requests to secure this information in June 2025, but it has repeatedly advertised why it needs the information. The Bureau has long stated that its expert statistician would use Experian's data to identify a statistically valid random sample, since a review of 94 million disputes would otherwise be impractical. *See, e.g.*, Bureau's Motion for Continuance of Case Deadlines, Dkt. 188-1 at 3-4 ("The Bureau alerted Experian long ago that it intends to analyze one or more statistically valid random samples of consumer disputes, since Experian receives millions of disputes each year and they are therefore too numerous to review in their entirety.") (dated June 1, 2026); Joint Stipulation regarding Bureau Request No. 1, Dkt. 120 at 17 ("Given the volume of Experian's disputes, the Bureau will likely need to review a statistically valid random sample to determine the prevalence of [Fair Credit Reporting Act] violations.") (dated February 20, 2026).

Likewise, the Bureau has repeatedly explained that it requires production of the documentation that Experian maintains regarding each identified sample dispute, namely, the notice Experian sent to consumers to inform them of the result of the dispute, and any documentation consumers submitted in support of their dispute. Dkt. 188-1 at 3-4 (explaining that the Bureau would identify no more than 500 disputes and request documentation from Experian) (dated June 1, 2026); *see also* Dkt. 120 at 16-17, 20 n.8 (noting that the Bureau seeks electronically stored documents "such as .pdf files and images of documents supplied by consumers or other sources . . . . But the Bureau anticipates limiting its requests for those materials based on a statistical sample of disputes drawn by its expert from the Dispute Response and Disclosure Logs.") (dated February 20, 2026); *see also* Dkt. 145-1 at 2-3, 6 (seeking continuance of case deadlines to "permit the production and review of Experian's dispute data and the additional documentation related to sample disputes") (dated March 18, 2026); *see also* Dkt. 113 at 4 ("[T]he Bureau

intends to use the requested data in part to create a sample that can be used to narrow other requests for certain dispute-related materials, e.g. consumer letters and phone calls.") (dated February 12, 2026).

On April 14, 2026, less than a week before the deadline for Experian to produce the data in its CAPS database, Experian informed the Bureau that it would not produce the data by April 20, but "can commit to an April 27, 2026 production date." Weinstein Decl. ¶ 15, Exhibit A. The Bureau agreed to Experian's request and submitted a joint motion seeking approval for this extension. Dkt. 156. Experian informed the Court that it required the one-week extension to "conduct a short quality assurance review to ensure no errors exist in the data set." Dkt. 156-1, Declaration of Matthew Farnham ¶ 8. The Court granted the parties' motion and ordered Experian to produce its data on April 27, 2026. Dkt. 157.

Experian made partial production of the data in its CAPS database on April 28, 2026 and later supplemented that production on May 1, 2026. Weinstein Decl. ¶ 19. The Bureau immediately began transmission of Experian's data to its statistical expert, Michael Petron at Stout Risius Ross, LLC ("Stout"), *id*. ¶¶ 20-21, so that he could identify a statistically valid random sample from the tens of millions of disputes represented in Experian's CAPS database, which could then be provided to Experian for production of the underlying documents—any consumer-supplied documentation and the notices that Experian sent consumers to report the results of disputes. *Id.* ¶ 24.

Stout uploaded and imported Experian's data as quickly as possible. But this process involved addressing and resolving hundreds of import errors. *Id.* ¶ 22. *See* Dkt. 118-6, Third Supplemental Declaration of Michael J. Petron ¶ 6. After addressing these import errors, by May 22, 2026, Stout had identified random samples of Experian's disputes. Weinsten Decl. ¶ 24; Fourth Supplemental Declaration of Michael Petron ("Petron Decl."). However, Stout then identified

additional serious errors—including missing data—in Experian's data production that rendered those samples invalid. Petron Decl.¶ 5.

Put simply, Stout could not identify a statistically valid random sample without full and accurate data regarding the population of Experian's disputes, which Experian had failed to provide. *Id.* The Bureau immediately informed Experian regarding the discrepancy in its data. Weinstein Decl. ¶ 25. Experian ultimately acknowledged the error in its data and, over the course of the following week, produced supplemental files, the last of which Experian transmitted to the Bureau on May 28, 2026, the day before the close of fact discovery. *Id.* ¶¶ 26-27. Had Experian timely produced complete, error-free datasets by the April 27 deadline set by the Court (Dkt. 157), the Bureau was prepared to identify sample disputes and request documentation no later than May 22, 2026. Weinstein Decl. ¶ 24.

Because of Experian's belated production of complete and accurate data, the Bureau moved to extend the deadline for expert disclosures, which was then scheduled for June 12, 2026 and requested a continuance of all remaining case deadlines by 90 days. Experian opposed the Bureau's motion and indicated that it would agree, at most, to a 45-day continuance. In its motion, the Bureau explained that its expert would identify no more than 500 disputes which would require production of the underlying documentation from Experian. Dkt. 188-1 at 3-4. The Court extended the case deadlines, starting with expert disclosures, by 45 days. In doing so, the Court expressly held that the Bureau should "suffer no prejudice stemming from [Experian's] faulty data" and should be "in the same position it would have been in had [Experian's] data production been correct." Dkt. 191 at 4.

After receiving Experian's corrected data, Stout again worked as expeditiously as possible to upload and validate the corrected data and to identify a total of 423 sample disputes. Weinstein Decl. ¶ 30. The Bureau provided these

sample disputes to Experian on the same days it received them from Stout, June 18 and June 23, 2026, respectively. *Id.* ¶ 31.

But on June 22, 2026, Experian refused to produce any of the requested documentation on the ground that fact discovery is now closed, despite the fact that these documents were responsive to the Bureau's First Request for Production served a year prior, on June 20, 2025. *Id.* ¶ 33. Because of Experian's failure to produce a complete and accurate dataset until the day before fact discovery closed, the Bureau was unable before that deadline to identify a statistically valid sample from Experian's full dataset or to request the corresponding notices Experian sent to consumers and any consumer-submitted documentation.

The parties met and conferred regarding this issue on June 25, 2026, at which time the Bureau proposed an informal resolution by Judge McCormick. *Id.* ¶¶ 34-35. In an email the following day, Experian agreed to proceed before Judge McCormick. *Id.* ¶ 36, Exhibit G, 6/26/26 Experian E-Mail. The parties contacted Judge McCormick's chambers, selected a hearing date of July 7, 2026 at 11 a.m. and submitted two-page letter briefs. Weinstein Decl. ¶ 37. However, during the hearing, Experian withdrew its consent to proceed before Judge McCormick. *Id.* ¶ 38.

## II. THE BUREAU PERMISSIBLY SEEKS CLARIFICATION OF THE COURT'S JUNE 8, 2026 ORDER

"While there is no specific Federal Rule of Civil Procedure governing motions for clarification, such motions have been made and, when appropriate, granted." *Yellow Rose Prods., Inc. v. Pandora Media, LLC*, No. 2:22-cv-809-MCS-MAR, 2023 WL 6932560, at *2 (C.D. Cal. Sep. 29, 2023) (citing *N. Alaska Env't Ctr. v. Haaland*, No. 3:20-cv-00187-SLG, 2023 WL 3661998, at *3 (D. Alaska May 25, 2023)). The Ninth Circuit "allow[s] courts to clarify previous orders to reflect the necessary implications of the original order provided that the

clarification adheres to the intent behind the original judgment." *Yellow Rose Prods., Inc.*, 2023 WL 6932560, at *2 (quotations omitted). "Motions for clarification are appropriate when parties are uncertain about the scope of a ruling or when the ruling is reasonably susceptible to differing interpretations." *Id.* (quotations omitted).

Clarification of the Court's June 8, 2026 Order is appropriate because the parties have conflicting understandings of its intent and implications, and the Bureau does not seek to alter or amend the June 8, 2026 Order. The Court has acknowledged the importance of Experian's data to this case. Dkt. 129 at 3 ("The relevance of the D/R Log and Disclosure Log data is self-evident. . . . [T]he Bureau is entitled to examine the full population of disputes within the actionable period to identify violations through queries and statistical sampling."). Had Experian's data been free of error and complete from the outset, the Bureau and its expert would have drawn the 423 sample disputes and requested the relevant documentation before the close of fact discovery. The Bureau's understanding is that the Court, in holding that the Bureau should "suffer no prejudice stemming from [Experian's] faulty data" and should be "in the same position it would have been in had [Experian's] data production been correct," Dkt. 191 at 4, intended that the Bureau would be afforded an opportunity to identify statistically valid random samples from the 95 million disputes represented in that data and obtain full documentation regarding that sample for analysis to be included in the Bureau's expert's report.

Experian's refusal to produce the documentation associated with the 423 sample disputes contradicts its own acknowledgements that the Bureau should not be prejudiced by Experian's delays in producing complete, error-free datasets. Significantly, when Experian asked to extend the deadline for its compelled data production by a week (to which the Bureau agreed), the parties filed a joint motion seeking a continuance of the expert discovery and later deadlines. Dkt. 156. That joint motion expressly referenced the Bureau's intention to supply Experian with

statistically valid random samples of disputes. *Id.* at 10 ("Once the Bureau obtains this data, the Bureau intends both to identify alleged violations of certain provisions of law in the entire populations of disputes represented in EIS database, and to use that data to select a statistically valid sample of disputes to identify certain other violations of law."). Further, the supporting documentation for the joint motion pointed to Mr. Petron's February 2, 2026 declaration explaining: (1) the Bureau's plan to develop statistically valid random samples of certain dispute types; (2) the need for a "more robust manual review process of the related documentation/data to gain a complete picture of the unique dispute and its outcome"; and (3) the expert's plan to utilize "sampling and extrapolation techniques . . . to help draw conclusions on the entirety of the population . . . ." Dkt. 120-19 ¶¶ 4, 24, *cited by* 156-2 (Decl. of Max Weinstein) ¶¶ 23, 24. Experian thus cannot claim it was somehow unaware of the Bureau's plan to draw sample disputes from the compelled datasets and then to seek the documentation associated with those samples. Indeed, Experian never stated any objection to the Bureau's sampling plan, which constituted part of the justification for the jointly-requested continuance. And although Experian later claimed that it would need "weeks" to produce the documents for a sample pool of 500 or fewer disputes, it opposed the Bureau's request for a longer continuance of the expert deadlines to afford Experian more time to make that production. Dkt. 190 at 7. Even in that filing, though, Experian acknowledged that the Court should grant the Bureau "a continuance [that] would place the Bureau in the exact same position [as] under the Court's prior scheduling order," which was also intended by the parties' joint motion. *Id.* at 6.

Experian refuses to produce documents relating to 423 sample disputes on one basis alone: that the fact discovery deadline has now passed. Experian has cited no other objection. But the Bureau is not making a new discovery demand to Experian after the discovery deadline; rather it is only limiting the demands it

made in its First Request for the Production of Documents to the 423 sample disputes its statistician identified. The Bureau identified those disputes for Experian immediately—any delay was the necessary consequence of Experian's own erroneous production.

Experian also claims that the Bureau should have filed a motion to compel before the fact discovery deadline, but before that deadline, the Bureau's requests for sample documents were essentially unopposed. Because Experian has never stood on any objection to producing sample documents, no motion to compel before the discovery deadline would have been necessary. If Experian had required additional time to produce the sample documents, the Bureau would have agreed. Moreover, it would have been nonsensical for the Bureau to file a motion to compel the sample documents when identification of the sample was not possible (due to Experian's faulty data).

In fact, Experian has been ordered to produce, and has produced, documents after the discovery deadline. Most recently, Judge McCormick ordered Experian to produce its internal audits and similar documents by June 12, several weeks after the discovery deadline. Dkt. 187 at 7.

Through no fault of its own, the Bureau will suffer substantial and undue prejudice absent access to these documents. The Bureau alleges continuing violations of law to which this evidence is directly relevant, including ongoing deficiencies in Experian's dispute resolution notices, overreliance on furnishers' dispute responses, and failures to submit consumer-supplied documentation to furnishers. Dkt. 77 ¶¶ 128-29 (Count I), ¶¶ 131-37 (Count II), ¶¶ 140-41 (Count III). Experian, for its part, has asserted a statute of limitations affirmative defense. But Experian has produced no consumer dispute documents regarding disputes it received after February 2022. Limiting this documentary record to disputes made no later than February 2022 would unfairly constrain the evidence the Bureau can present in support of its case. Experian would thereby receive an unfair windfall

from its own faulty data production, which the Bureau respectfully submits would be inconsistent with the Court's June 8, 2026 Order.

## CONCLUSION

For the foregoing reasons, the Court should grant the Bureau's motion and clarify that its June 8, 2026 Order allows the Bureau to obtain the full documentation associated with the 423 sample disputes that the Bureau has already identified to Experian.

Dated: July 9, 2026                     Respectfully submitted,

                                        */s/ Max Weinstein*
                                        Max Weinstein, Mass. Bar No. 600982
                                        CONSUMER FINANCIAL
                                        PROTECTION BUREAU
                                        445 12th Street, SW
                                        Washington, DC 20024-2101
                                        Phone: (202) 435-9172
                                        Fax: (202) 435-5468
                                        Email: max.weinstein@cfpb.gov

                                        *Attorney for Plaintiff Consumer Financial Protection Bureau*