Max Weinstein, Mass. Bar No. 600982
Email: max.weinstein@cfpb.gov
Admitted *Pro Hac Vice*
Tracy Hilmer, D.C. Bar No. 421219
Email: tracy.hilmer@cfpb.gov
Admitted *Pro Hac Vice*
Nicholas Lee, D.C. Bar No. 1004186
Email: nicholas.lee@cfpb.gov
Admitted *Pro Hac Vice*
Chelsea Peter, D.C. Bar No. 1007462
Email: chelsea.peter@cfpb.gov
Admitted *Pro Hac Vice*
CONSUMER FINANCIAL
PROTECTION BUREAU
445 12th Street, SW
Washington, DC 20024-2101
Phone: (202) 435-9172 (Weinstein)
Phone: (202) 435-7459 (Hilmer)
Phone: (202) 425-7059 (Lee)
Phone: (202) 435-7224 (Peter)
Fax: (202) 435-5468

Chung H. Han, Cal. Bar No. 191757
Email: chung.han@usdoj.gov
U.S. ATTORNEY'S OFFICE
300 N. Los Angeles St., Suite 7516
Los Angeles, CA 90012
Phone: (213) 894-0474
Fax: (213) 894-7819

*Attorneys for Plaintiff*
*Consumer Financial Protection Bureau*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| Consumer Financial Protection Bureau, ) | Case Number: 8:25-cv-00024-MWC-DFM |
| *Plaintiff,* ) | |
| v. ) | **DECLARATION OF MAX WEINSTEIN IN SUPPORT OF PLAINTIFF'S MOTION TO CONTINUE DEADLINES** |
| Experian Information Solutions, Inc., ) | |
| *Defendant.* ) | |

DECLARATION OF MAX WEINSTEIN

I, Max Weinstein, having personal knowledge of the facts set forth below, declare:

1.      I am an Enforcement Attorney employed by the Plaintiff, the Consumer Financial Protection Bureau (the "Bureau").

2.      I submit this declaration in support of the parties' joint motion to continue the case deadlines in this matter.

3.      The Bureau has diligently prepared this case for trial. It has obtained by court order data pertaining to for 94 million consumer disputes received by Experian since July 2, 2020, reviewed and analyzed that data, and reviewed static image files relating to hundreds of disputes. In this process, the Bureau discovered that the data produced by Experian pursuant to the Court's order lacks critical information relating to those 94 million disputes and lacks data entirely for tens of millions of disputes received by Experian since July 2, 2020. This missing information and these missing disputes are critical for proving the Bureau's allegations in its Second Amended Complaint.

4.      After the Bureau brought these omissions to Experian's attention by emails dated July 16 and 21, 2026, Experian agreed to supplement its data production, but represented that the volume of the supplementation would require approximately 45 days to extract, quality-check and produce to the Bureau.

5.      As with Experian's existing data productions, the Bureau must rely on an expert statistician to query and analyze the data, which arise far too voluminous to review on a dispute-by-dispute basis. The Bureau's expert has required approximately four weeks to ingest and clean each of the court-ordered productions the Bureau has previously received from Experian. The expert must perform these processes before he can even begin to query the data and analyze the results. The Bureau therefore anticipates that the extremely large size of Experian's additional data production will also require a substantial amount of time for the Bureau's expert to import, process, query and analyze.

DECLARATION OF MAX WEINSTEIN

6. Because there is insufficient time for the Bureau and its expert statistician to obtain, process and review the missing data before the current initial expert disclosure deadline of July 31, 2026, there is good cause to extend the case deadlines in this matter.

7. The Bureau is not at fault for the incompleteness of Experian's existing data production and promptly brought the omissions to Experian's attention after discovering them.

**The Bureau has Diligently Prepared This Case For Trial**

8. A review of the timeline of the Bureau's affirmative discovery efforts shows that the Bureau has been diligently working to move this case toward resolution.

9. The Bureau served its First Request for the Production of Documents on June 20, 2025, consisting of thirty-six individual requests ("First Request for Production").

10. Request No. 1 of the First Request for Production sought electronically stored information (ESI) relating to Experian's dispute resolution practices, namely, "[a] complete copy of the Consumer Assistance Processing System (CAPS) database, not limited to the Applicable Period, including all fields and other information contained therein."

11. Experian has represented that it maintains certain highly relevant documentation regarding each dispute only as static image files and not in text or data format, namely, the results letters Experian sent to consumers and documentation submitted by consumers in support of their dispute, if any. The Bureau requested these documents in Request Nos. 3 and 4 of the First Request for Production.

12. Request No. 3 sought "[a]ll notices of the results of disputes sent by Experian to Consumers for disputes made during the Applicable Period."

13. Request No. 4 sought "[a]ll Documents uploaded into the NCAC

DECLARATION OF MAX WEINSTEIN

Imaging System (NIS)," i.e., the system used by Experian to store documents submitted by consumers in connection with their dispute, "during the Applicable Period."

14. On August 4, 2025, Experian served responses and objections to the Bureau's First Request for Production. Experian objected to the entirety of Request No. 1 on numerous grounds.

15. Experian made rolling productions in response to other requests on September 24, October 7, October 23, November 18, 2025, and February 6, 2026.

16. On February 20, 2026, the Bureau moved to compel Experian's production of the data it sought in Request No. 1. Dkt. 120.

17. On March 6, 2026, the Court directed Experian to produce by April 20, 2026 "the data contained in [Defendant Experian Information Solutions, Inc.'s] Dispute Response Log and the Disclosure Log within [Experian's] CAPS database for the period July 2, 2020 through the present." Dkt. 129 at 4.

18. Less than a week before its deadline, on April 14, 2026, Experian informed the Bureau that Experian could not produce the data by April 20, but "can commit to an April 27, 2026 production date."

19. The Bureau agreed to extend Experian's deadline to produce this data by one week, and on April 17, 2026 the parties jointly moved to extend Experian's deadline, as well as several other case deadlines. Dkt. 156.

20. Experian informed the Court that it required the one-week extension to "conduct a short quality assurance review to ensure no errors exist in the data set." Dkt. 156-1, Declaration of Matthew Farnham ¶¶ 8-9.

21. The Court granted the parties' joint motion and ordered Experian to produce its data by April 27, 2026. Dkt. 157.

22. Experian produced data files to the Bureau on April 28 and May 1, 2026.

23. The Bureau has retained an expert statistician, Michael Petron and his

3

DECLARATION OF MAX WEINSTEIN

firm Stout Risius Ross, LLC ("Stout"), to analyze the data produced by Experian pursuant to Judge McCormick's March 6, 2026 Order (Dkt. 129) and to offer expert testimony. Once analyzed, the Experian data will form the basis of a statistical analysis conducted by Mr. Petron, to determine the full scope of the violations identified in the Bureau's Second Amended Complaint. *See, generally*, Dkt. 120-19, Declaration of Michael Petron in Support of Plaintiff's Motion to Compel.

24. Without delay, the Bureau proceeded to download and transmit the Experian data to Stout, a process that itself took several days to complete.

25. Stout proceeded to download and import the data as quickly as possible, as well as to address numerous import errors. *See* Dkt. 188-6, Third Supplemental Declaration of Michael J. Petron (Petron Decl.) ¶¶ 5-6.

26. The size and complexity of the data files, as well as the import errors, resulted in the importation process taking more than three weeks. *Id.* ¶¶ 6-7.

27. In accordance with the Bureau's longstanding plan, Stout proceeded to identify statistically valid random samples from the full population of disputes in Experian's original data production as expeditiously as possible. Stout was prepared to identify samples by May 22, 2026.

28. But during the process of selecting sample disputes, Stout identified a serious discrepancy in Experian's data—there were far fewer rows of data (and thus a substantially smaller number of disputes represented) in the Dispute Response Log ("DR Log") as compared to the Disclosure Log. *Id.* The Bureau alerted Experian's counsel immediately on May 22, 2026. Experian had not previously alerted the Bureau about the discrepancies that Stout identified.

29. On May 26, 2026, Experian confirmed that discrepancies existed in its data and informed the Bureau that it intended to produce four corrected data files out of the 12 data files it had previously produced to the Bureau.

30. On May 27, 2026, Experian produced three of the four files. Experian

4

DECLARATION OF MAX WEINSTEIN

produced the fourth file on May 28, 2026, one day before the fact discovery deadline. The production consisted of approximately 94 million rows of data, each corresponding to a different consumer dispute.

31.    The Bureau and Stout immediately began the process of importing, transferring, uploading and validating the corrected data. Importing and processing this substantial production to ready it for analysis required nearly four weeks of work by the Bureau's expert statistician.

32.    Stout once again worked as expeditiously as possible to identify sample disputes from the full population of disputes in Experian's corrected data. Stout identified a total of 423 sample disputes and communicated them to the Bureau in two batches on June 18 and June 23, 2026, respectively.

33.    The Bureau identified these samples in letters to Experian on the same days that the Bureau received them, June 18 and June 23.

34.    On July 9, 2026, the Bureau moved the Court for clarification of its order of June 8, 2026, respectfully requesting that the Court clarify whether that order required Experian to produce all documentation relating to the 423 samples identified by the Bureau. The Court granted the Bureau's motion and directed Experian to produce the documentation at issue by July 17, 2026. Experian made production pursuant to the Court's order on July 17, 2026.

35.    The Bureau immediately began reviewing Experian's production on July 18, 2026. The Bureau's review of these documents is continuing.

36.    In addition to identifying random samples of Experian's consumer disputes, the Bureau's expert statistician, Stout, has also been working diligently to conduct numerous queries of the 94 million-row dataset Experian produced on May 28, 2026. This work included writing code to execute numerous queries that relate to the Bureau's allegations. Substantial time was required to formulate and execute the queries and validate the results.

37.    During the week of July 13, 2026, in the course of its review of the

5

DECLARATION OF MAX WEINSTEIN

Experian data production, the Bureau compared printed screenshots of the DR Log report to the DR Log data Experian had extracted and produced in response to Judge McCormick's order.

38.     It was then that the Bureau discovered that Experian's data production did not include certain internal remarks made by Experian agents that appear on screenshots of the DR Log. These internal remarks on certain DR Log screenshots indicated, among other things, whether Experian agents had concluded that certain consumer-submitted documentation was insufficient proof of the consumer's claims and whether Experian agents had contacted furnishers or third parties by phone to verify the accuracy or authenticity of the consumer's claims or documentation.

39.     At approximately the same time, the Bureau also discovered that Experian's dataset did not include consumer disputes received by Experian on or after July 2, 2020, that Experian had resolved internally—that is, without contacting the furnisher of the disputed information. These disputes may theoretically have been resolved by, for example, an Experian agent either concluding that the consumers had submitted sufficient proof of their claims or calling a third party to verify or clarify pertinent information. These missing disputes likely number in the tens of millions.

40.     Immediately after identifying these omissions, the Bureau contacted Experian by email on July 16 and 21, 2026. The parties met and conferred about the matter on July 22.

41.     Experian has confirmed that the dataset it produced does not include these internal remarks and does not include any of the disputes that Experian resolved internally.

42.     The internal remarks appearing on the DR Log and the internally-resolved consumer disputes in the DR Log and Disclosure Log are plainly encompassed by Judge McCormick's order compelling the production of

6

DECLARATION OF MAX WEINSTEIN

Experian's dispute data. In its motion to compel, the Bureau sought "the information contained in two text-based reports within Experian's CAPS database: the Dispute Response or 'D/R' Log and the Disclosure Log." Dkt. 120 at 5-6. Judge McCormick ordered Experian to "produce the data contained in the Dispute Response Log and the Disclosure Log within the CAPS database for the period July 2, 2020 through the present." Dkt. 129 at 4. Judge McCormick's order did not identify any exclusions or carve-outs from the datasets.

43. The omitted data is highly relevant to the Bureau's claims in its Second Amended Complaint (SAC) (Dkt. 77), which include allegations that Experian gave insufficient weight to documents submitted by consumers in support of their disputes and failed to employ sufficient investigative measures, such as contacting furnishers by phone to correct illogical furnisher responses regarding disputed accounts or to verify the accuracy or authenticity of consumers' claims or documentation in connection with consumer disputes. SAC ¶¶ 52-66, 131-37 (Count II).

44. If produced, the omitted data from Experian will contain additional information regarding disputes in the existing dataset, which will require the Bureau's expert to re-perform or augment existing analyses to account for the missing data.

45. The Bureau's expert statistician has required approximately four weeks to import and process Experian's last two data productions made in response to Judge McCormick's March 6 Order, which have similarly consisted of data for many tens of millions of disputes.

46. In addition to its First Request for Production, the Bureau has served three sets of Interrogatories and three additional Requests for Production. The Bureau has also served Experian with two sets of Requests for Admission, to which Experian responded on April 10, 2026, and May 29, 2026.

47. The Bureau also served Experian with a notice of deposition pursuant

7

DECLARATION OF MAX WEINSTEIN

to Rule 30(b)(6) on February 20, 2026. The Bureau took that deposition on May 27, 2026.

48.     Experian has also served substantial discovery requests on the Bureau.

49.     On September 12, 2025, the Bureau provided its responses and objections to Experian's First Requests for Production of Documents and First Set of Interrogatories. The Bureau made its first production to Experian on September 12, 2025, and the Bureau advised Experian that its production was substantially complete by November 13, 2025. The Bureau produced third-party materials on December 11, 2025, after completing the process required by Paragraph 8 of the Protective Order. And the Bureau has since supplemented its interrogatory responses four times.

50.     On March 26, 2026, Experian provided the Bureau with a Local Rule 37-1 Letter and requested to meet and confer regarding the Bureau's discovery responses. Experian raised two issues: (1) the Bureau's objections to the production of internal Bureau documents and communications in response to Experian's Document Request Nos. 2, 35, 36, 40, 41, and 42, and (2) the Bureau's use of a categorical privilege log. The parties submitted a joint stipulation to the Court relating to these issues, which the Court resolved on May 22, 2026. Dkt. 187.

51.     On April 7, 2026, Experian also served on the Bureau its Requests for Admissions and Second Set of Requests for Production of Documents. The Bureau responded to these additional requests on May 12 and 13, 2026.

52.     Finally, Experian served the Bureau with a Rule 30(b)(6) notice of deposition covering 30 topics for which the Bureau filed a Motion for a Protective Order. That motion was heard by Judge McCormick on March 19, 2026, during which he granted, in part, and denied, in part, the Bureau's motion. Dkts. 149, 154. That deposition occurred on May 28, 2026.

53.     Experian also took the deposition of a Bureau employee on May 26,

8

DECLARATION OF MAX WEINSTEIN

2026.

54.    In sum, the Bureau has diligently propounded numerous discovery demands to Experian, repeatedly enforced those demands through judicial intervention when appropriate, and expended substantial time and effort reviewing Experian's production, especially its data production, in a prompt fashion. After reviewing Experian's 94 million-row dataset with the aid of an expert statistician, the Bureau has discovered that this dataset is incomplete, through no fault of the Bureau's. There is insufficient time before the current July 31, 2026 initial expert disclosure deadline in this case for the Bureau to obtain complete data and for its expert statistician to review it. The Bureau would be highly and unduly prejudiced without access to this data, which is critical for proving its allegations. The Bureau therefore submits that good cause exists for extending the deadlines to permit the Bureau to obtain the data at issue, analyze it, and present that evidence by means of the report of its expert statistician.

Dated: July 24, 2026                    Respectfully submitted,

                                        /s/ Max Weinstein

                                        Max Weinstein
                                        *Consumer Financial Protection Bureau*

9

DECLARATION OF MAX WEINSTEIN